1   OFFICE OF THE MONTEREY COUNTY COUNSEL
    CHARLES J. MCKEE (SBN 152458), COUNTY COUNSEL
2   LEROY W. BLANKENSHIP (SBN 065233), ASSISTANT COUNTY COUNSEL
    EFREN N. IGLESIA (SBN 71309), SENIOR DEPUTY COUNTY COUNSEL
3   168 W. ALISAL, 3RD FLOOR
    SALINAS, CA  93901-2680
4   Telephone:  (831) 755-5045
    Facsimile:  (831) 755-5283
5
    NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
6   STEPHEN N. ROBERTS (SBN 062538)
    NICOLE A. TUTT (SBN 179244)
7   50 CALIFORNIA STREET, 34TH FLOOR
    SAN FRANCISCO, CALIFORNIA 94111-4799
8   Telephone: (415) 398-3600
    Facsimile: (415) 398-2438
9   Email: montereycase@nossaman.com

10  NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
    JOHN J. FLYNN (SBN 076419)
11  18101 VON KARMAN AVENUE
    IRVINE, CA  92612-0177
12  Telephone: (949) 833-7800
    Facsimile: (949) 833-7878
13  Email: montereycase@nossaman.com

14  Attorneys for Defendants/Respondents
    BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY;
15  TONY ANCHUNDO, IN HIS CAPACITY AS MONTEREY COUNTY
    REGISTRAR OF VOTERS; AND THE COUNTY OF MONTEREY
16

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                        SAN JOSE DIVISION

20  WILLIAM MELENDEZ; KEN GRAY; JYL          )  Case No:  C 06-1730 JW
    LUTES; CAROLYN ANDERSON; AND             )
21  LANDWATCH MONTEREY COUNTY,               )      ASSIGNED FOR ALL PURPOSES TO:
                                             )            HON. JAMES WARE
22            Plaintiffs/Petitioners,        )
                                             )
23        vs.                                )  **DEFENDANTS/RESPONDENTS'**
                                             )  **OPPOSITION TO EX PARTE**
24  BOARD OF SUPERVISORS OF THE COUNTY )      **APPLICATION FOR TEMPORARY**
    OF MONTEREY; TONY ANCHUNDO, IN HIS )     **RESTRAINING ORDER**
25  CAPACITY AS MONTEREY COUNTY              )
    REGISTRAR OF VOTERS; COUNTY OF           )
26  MONTEREY; AND DOES 1 THROUGH 10,         )  Date:    March 16, 2006
    INCLUSIVE,                               )  Time:    1:00 p.m.
27                                           )  Dept:    8
              Defendants/Respondents.        )
28  _____)

200283_1.DOC                                                    Case No:  C 06-1730 JW

DEFENDANTS/RESPONDENTS' OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER

**1.      INTRODUCTION.**

Defendants/Respondents (hereafter "Defendants") agree this matter needs to be handled expeditiously.  However, there is no need for a TRO so long as the Court is able to act on the preliminary injunction in the time frame proposed by Plaintiffs—March 28.  Indeed, the County can still include the matter on a supplemental ballot, so long as the Court is able to rule on the preliminary injunction by April 6.  Thus the Plaintiffs (Petitioners/Plaintiffs in the Superior Court), will not be prejudiced by the lack of a TRO.  The Defendants will cooperate fully in an expedited briefing schedule in seeing that the matter can be resolved by March 28.

On the other hand, were a TRO to issue, and then the Court later determine an election should not go forward, the County to its prejudice would have expended needless funds and would have confused the public.  As the County will demonstrate at the preliminary injunction hearing, the County Board of Supervisors rightly voted to keep this Initiative off the ballot, because of its fatal procedural and substantive defects -- defects the Plaintiffs have largely not addressed in their moving papers.  To impose Plaintiffs' TRO would result in "the useless expenditure of money and creation of emotional community divisions."  *Citizens for Responsible Behavior v. Superior Court*, 1 Cal. App. 4th 1013, 1023 (1991).

Defendants request the Court deny the Plaintiffs' request for a TRO, and set this matter for a shortened briefing schedule on the merits of the Plaintiffs' claims.

**2.      CONTRARY TO THE PLAINTIFFS' CLAIM, THIS MATTER CAN BE DECIDED AND RESOLVED ON ITS MERITS AS LATE AS APRIL 6, 2006.**

Elections Code section 9163 governs the timeline for the actions that must take place prior to the printing of elections materials.  The County elections official determines the timeframe for submittal of ballot arguments for and against the measure (Cal. Elect. Code, § 9162); submittal of rebuttal arguments (*id.* at § 9167) and the ten-day public examination period (*id.* at § 9190).  *See* Cal. Elec. Code, § 9163.  The County elections official determines the deadlines for those events, "[b]ased on the time reasonably necessary to prepare and print the argument, analysis, and sample ballots and to permit the 10-calendar-day public examination … ."  Cal. Elec. Code, § 9163.

200283_1.DOC                                    -1-                          Case No:  C 06-1730 JW
DEFENDANTS/RESPONDENTS' OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1    While the Plaintiffs correctly note that the deadline for submittal of ballot materials to the printer

2    is March 28, 2006, the County is able to work with its printer to accommodate a slightly later date, April

3    12.  Declaration of Tony Anchundo ("Anchundo Decl.") at ¶5.  This will result in the materials being

4    included on the same ballot as all other measures, the "composite" ballot.

5    Further, the County can instead place the matter on a "supplemental" ballot.  The supplemental

6    ballot election materials need to be at the printer  by April 21, 2006, and still have the supplemental

7    materials ready for the June 6, 2006, general election.  *Id.* at ¶6.  Backing these dates up to account for

8    what must be done before, the basic tasks can be accomplished so long as the County knows the Court's

9    decision by March 28, to make the composite ballot, or April 6, to make the supplemental ballot.  *Id.* at

10   ¶¶8-9.

11   Election Code § 9190 allows 10 days public examination before the County "submits" the

12   "official" election materials to the printer.  The setting of such dates is within the discretion of the

13   County Elections official.  Cal. Elec. Code § 9163.  In this case, so as not to deprive the public of its

14   rights, the submission date and the inspection period would have to be deemed ordered to extend after

15   the physical date when the County delivers the materials.  But that is true even were the Court to grant

16   the TRO, because the various materials could not be prepared even if the County began March 16.[1]

17   **3.      THE PLAINTIFFS' PROPOSED TIMELINES WOULD WREAK HAVOC WITH THE**

18   **ELECTIONS PROCESS IN THE COUNTY AND WOULD ONLY RESULT IN VOTER**

19   **CONFUSION.**

20   Aside from the lack of urgency Plaintiffs suggest, the TRO application is without merit for

21   another reason:  it seeks an order from this Court directing the County to process a ballot measure that

22   does not exist.  In a public session on February 28, 2006, the County Board of Supervisors voted not to

23

24   _____

25

26   [1] Section 9190 provides that a member of the public who believes the election materials are false or
     misleading may bring a writ or injunction proceeding within 10 days.  Mathematically that might happen
     after the County sent the materials to the printer.  However, the risk of additional cost would be

27   minimal, since no writ of injunction proceeding would be determined in court until after the printing
     process began anyway.

28
DEFENDANTS/RESPONDENTS' OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER

1    submit the Initiative to the voters, because of its numerous procedural and substantive flaws, discussed

2    in summary fashion below.

3        The Plaintiffs nevertheless want this Court to direct the County to:  (a) solicit public submittal of

4    ballot arguments for and against the measure (Cal. Elect. Code, § 9162); (b) solicit public submittal of

5    rebuttal arguments (*id.* at § 9167); (c) prepare an impartial ballot measure analysis (§9160); and (d)

6    employ the ten-day public examination period (*id.* at § 9190).

7        Each of those actions presupposes the existence of a measure that has been submitted to the

8    voters on the ballot.  Aside from turning the statute on its head, granting the TRO would force the

9    County to act as if it had done the opposite of what it did -- and thereby force the County to undertake

10   actions inherently contradictory to its decision of February 28, 2006.  Such an outcome would create

11   inevitable and unnecessary confusion among the voters of the County.

12   **4.     A MANDATORY TRO WOULD NOT PRESERVE THE STATUS QUO; DEFENDANTS**

13   **WOULD BE PREJUDICED BY INCURRING UNNECESSARY EXPENSE.**

14       The basic function of a preliminary injunction is to preserve the *status quo* pending a

15   determination of the action on the merits.  *Chalk v. United States Dist. Ct*., 840 F.2d 701, 704 (9th Cir.

16   1988).  A preliminary injunction is appropriate if the moving party demonstrates either (1) a probability

17   of success on the merits and a possibility of irreparable injury, or (2) serious questions going to the

18   merits and the balance of hardships tipping sharply in his favor.  *Id*.  These are not discrete tests, but are

19   instead "outer reaches 'of a single continuum.'" *Id*. (citations omitted).  The standard is identical for a

20   temporary restraining order.  *See, e.g*., William W. Schwarzer et al., *California Practice Guide, Federal*

21   *Civil Procedure Before Trial* (Rutter 2005), ¶ 13.7 at 13-3, *citing Granny Goose Foods, Inc. v.*

22   *Brotherhood of Teamsters and Auto Truck Drivers* (1974) 415 U.S. 423, 439 (A temporary restraining

23   order is a form of preliminary injunctive relief that can be issued, *under narrow circumstances*, without

24   notice to the other party or that party's attorney.  Its sole purpose is to preserve the status quo pending

25   hearing on the … preliminary injunction) (emphasis added).

26       Although both mandatory and prohibitory injunctions are governed by the same criteria, courts

27   are generally more cautious about issuing mandatory injunctions that would alter the status quo by

28
DEFENDANTS/RESPONDENTS' OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER

1   commanding some positive act.  *Schwarzer et al.*, *supra*, ¶13:79.5 at 13-39.  *See, also*, *Dahl v. HEM*

2   *Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) ("[T]his injunction required affirmative

3   conduct by *Ampligen* … Such 'mandatory preliminary relief' is subject to heightened scrutiny and

4   should not be issued unless the facts and law clearly favor the moving party.")

5          As set forth in Mr. Anchundo's declaration the County will incur numerous expenses if it has to

6   go forward with the items requested in the TRO application.  It would have to key (type) in the

7   Initiative, the arguments in favor of, and the arguments against.  It would have to obtain a certified

8   translator and translate them all into Spanish.  The translations would have to be keyed in.  County

9   Counsel would have to prepare a summary.  That would have to be translated and keyed in.  Not

10  mentioned in the declaration is the newspaper advertising for ballot arguments, which would have to be

11  paid for.  In sum, the County would incur numerous expenses.  Offsetting that is the fact the Plaintiffs

12  will not be prejudiced by the lack of a TRO, were the Court to decide on March 28 the election should

13  go forward, because it could do so on a timely basis.  Especially with the heightened scrutiny created by

14  this being a mandatory injunction, the balance of hardships tips strongly in the Defendants' favor.

15  **5.      THE PLAINTIFFS HAVE NOT EVEN TRIED TO ADDRESS THE NUMEROUS,**

16  **         FATAL FLAWS THAT REQUIRED THE COUNTY TO KEEP IT OFF THE BALLOT.**

17         In view of the nature of a TRO proceeding, Defendants have not provided a full blown brief on

18  the merits of Plaintiffs' claims, as will be done in response to the preliminary injunction.  The Plaintiffs'

19  papers address the Initiative's probable violations of the Voting Rights Act of 1964, but completely

20  overlook the numerous other procedural and substantive infirmities of the Initiative.  Although

21  Defendants do not address the points fully, a summary follows:

22         **(a)     The Initiative Petition Was Not Circulated in Spanish, Resulting in Probable**

23  **Violations of the Federal Voting Rights Act:**  The Ninth Circuit very recently held that failure to

24  circulate a recall petition in the minority language constitutes a violation of section 203 of the Voting

25  Rights Act of 1964.  *See Padilla v. Lever*, 429 F.3d 910 (9th Cir. 2005).[2]  The proponents of the

26

27

28  [2]     We understand that a petition for an en banc rehearing has been filed by the appellees in *Padilla*

DEFENDANTS/RESPONDENTS' OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER

1  Initiative petition failed to circulate the Initiative petition in Spanish.  On the basis of that potential

2  violation, three voters of the County have filed an action in declaratory and injunctive relief against the

3  County.  *See Madrigal v. County of Monterey*, No. C06-01407 (N.D. Cal. 2006).  That action is pending

4  in this Court.[3]

5      **(b)      The Initiative Did Not Contain the Full Text of the County Land Use Documents It**

6  **Purports to Amend.  On that Basis, It Violates the Full-Text Rule:**  Compliance with the "Full-Text

7  Rule" has been held to be essential to the integrity of elections in California.  *Mervyn's v. Reyes*, 69 Cal.

8  App. 4th 93, 101 (1998).  The Initiative did not contain the full text of the documents it purports to

9  amend -- thereby precluding full disclosure of the Initiative's effects, and foreclosing informed decision-

10  making by the electorate.  On that basis alone, the County had a ministerial duty to reject the Initiative.

11  *Id.,* at 104-105.

12      **(c)      The Initiative Violates the Single-Subject Rule by Containing a Right-of-First**

13  **Refusal Clause That Is Unrelated to the Initiative's Growth-Control Goals:**  The Initiative's right-

14  of-first refusal for residents to purchase new affordable housing has nothing to do with the Initiative's

15  growth control objectives.  The joining of such disparate enactments violates the Single-Subject Rule.

16  *Senate of the State of California v. Jones*, 21 Cal. 4th 1142, 1158 (1999).

17      **(d)      The Initiative Directly Collides With the State's Legislative Scheme for Addressing**

18  **Housing Needs in California -- an Area of Statewide Concern:**  The Legislature has enacted a

19  comprehensive statutory scheme for the amendment of housing elements.  The Initiative nevertheless

20  purports to amend the County Housing Element and subject all future amendments of that document to a

21  vote of the electorate -- a process that conflicts with the State statutory scheme.  The Initiative therefore

22  would force the County to violate State law.  On that basis, the Initiative is void ab initio.

23

24  and is currently pending in this case.

25

26  [3]      Defendants here will move to consolidate the two cases, which so far have been "related" under
the Rules.  Defendants' counsel have been informed by the attorneys for the *Madrigal* plaintiffs that on

27  Friday they will file a motion for a preliminary injunction asking that the Court enjoin the election from
taking place.  These conflicting cases need to be addressed jointly.  A TRO in this case would only

28  exacerbate the conflict between these two cases.

DEFENDANTS/RESPONDENTS' OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER

**(e)    The Initiative Intrudes on State Law Governing the Annexation of Unincorporated Territories:**  The Initiative subjects development outside of city boundaries and defined community area urban limit lines to a vote of the County electorate.  The movement of city boundaries and annexation of unincorporated territories therefore is subject to the fiat of the voters of the County.  Such a scheme conflicts with the carefully crafted state scheme for annexing unincorporated land -- an area of statewide concern.  On that basis, the Initiative is void.

**(f)    The Initiative Conflicts With the Subdivision Map Act:**  The Initiative exempts vesting tentative maps -- and only vesting tentative maps -- from its growth control restrictions.  The scope of the Initiative's protections ignores the broader legislative protections afforded by the Subdivision Map Act.  The Initiative conflicts with state subdivision law, and impermissibly intrudes into areas of statewide concern, rendering the Initiative void.

**6.    CONCLUSION.**

For the foregoing reasons, this Court should deny the Plaintiffs' ex parte application for a temporary restraining order and set a hearing date on the merits of the Plaintiffs' claims in such a manner that allows the County a reasonable period of time to file its opposition.

Dated: March 15, 2006                    NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP


                                               / S /
                                         By: _____
                                               STEPHEN N. ROBERTS

                                         Attorneys for Defendants/Respondents
                                         BOARD OF SUPERVISORS OF THE COUNTY OF
                                         MONTEREY; TONY ANCHUNDO, IN HIS CAPACITY AS
                                         MONTEREY COUNTY REGISTRAR OF VOTERS; AND
                                         THE COUNTY OF MONTEREY

DEFENDANTS/RESPONDENTS' OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER