1  Joaquin G. Avila (State Bar No. 56484)
   634 South Spring Street, 11th Floor
2  Los Angeles, California  90014
   Telephone:  206-398-4117
3  Facsimile:   206-398-4036

4  RUTAN & TUCKER, LLP
   John A. Ramirez, jramirez@rutan.com (State Bar No. 184151)
5  Mark J. Austin, maustin@rutan.com (State Bar No. 208880)
   611 Anton Boulevard, Fourteenth Floor
6  Costa Mesa, California  92626-1931
   Telephone:  714-641-5100
7  Facsimile:   714-546-9035

8  Attorneys for Plaintiffs
   ROSARIO MADRIGAL, SABAS RANGEL, and MARIA BUELL
9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                       SAN JOSE COURTHOUSE
12

| | |
|---|---|
| 13  ROSARIO MADRIGAL; SABAS RANGEL; and MARIA BUELL, | Case No. C06-01407 RS |
| 14              Plaintiffs, | **Consolidated with:**<br>**Case No.  C 06-1730 JW** |
| 15          vs. | Assigned for all purposes to:<br>Hon. James Ware |
| 16  THE COUNTY OF MONTEREY, a governmental corporation formed under the | |
| 17  laws of the State of California; THE BOARD OF SUPERVISORS OF THE COUNTY OF | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF** |
| 18  MONTEREY; and TONY ANCHUNDO, in his official capacity as the Registrar of Voters for | **POINTS AND AUTHORITIES IN SUPPORT THEREOF; IN THE ALTERNATIVE,** |
| 19  the County of Monterey, | **OPPOSITION BRIEF TO THE *MELENDEZ* PLAINTIFFS' REQUEST FOR A** |
| 20              Defendants. | **PRELIMINARY INJUNCTION** |
| 21  WILLIAM MELENDEZ; *et al.*, | **[Filed Concurrently with Declarations of Buell, Madrigal, Rangel, and Ramirez;** |
| 22              Plaintiffs/Petitioners, | **[Proposed] Order re Preliminary Injunction; and *Ex Parte* Application for an Order** |
| 23          vs. | **Shortening Time]** |
| 24  BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY; *et al.*, | **Hearing:**<br>Date:      March 21, 2006 |
| 25 | Time:     10:00 a.m.<br>Dept.:    8 |
| 26              Defendants/Respondents. | |
| 27 | Date Action Filed:  February 24, 2006<br>Trial Date:  None Set |

28

Rutan & Tucker LLP
*attorneys at law*

972/024930-0001
682401.04 a03/17/06

1    **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**

2    **(ALTERNATIVELY FILED AS OPPOSITION TO *MELENDEZ* PLAINTIFFS' REQUEST**

3    **FOR PRELIMINARY INJUNCTION)**

4    **TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:**

5    **PLEASE TAKE NOTICE THAT**, on March 21, 2006, at 10:00 a.m., in Courtroom 8 of

6    the above-referenced court, located at 280 South First Street, #2112, San Jose, California, Plaintiffs

7    ROSARIO MADRIGAL, SABAS RANGEL, and MARIA BUELL (collectively, "Plaintiffs") will,

8    and hereby do, move this Court for an order issuing a preliminary injunction against Defendants

9    THE COUNTY OF MONTEREY ("County"), THE BOARD OF SUPERVISORS OF THE

10   COUNTY OF MONTEREY, and TONY ANCHUNDO (collectively, "Defendants"), enjoining

11   Defendants from further processing, certifying, and/or placing the so-called Monterey County

12   "Quality of Life, Affordable Housing, and Voter Control Initiative" (the "Initiative") on any

13   election ballot, without first circulating the Initiative and its statutorily-required title and summary

14   in Spanish in compliance with the Voting Rights Act of 1965.

15       This Motion is made on the ground that the Initiative was required to be circulated to the

16   County public in both English and Spanish under Section 203 of the federal Voting Rights Act of

17   1965, codified at 42 U.S.C. § 1973aa-1a, and the Ninth Circuit case of *Padilla v. Lever*, 429 F.3d

18   910 (9th Cir. 2005), but was only circulated in English.  As a result of the failure to print and

19   circulate the Initiative in Spanish, the Initiative is *per se* invalid, and cannot be further processed,

20   certified, adopted, and/or submitted to the County voters without violating the Voting Rights Act,

21   as well as the statutory and constitutional rights of Plaintiffs and others.

22       The Motion is based on the concurrently filed *ex parte* application for an order shortening

23   time, this Notice of Motion and Motion, the Memorandum of Points and authorities attached

24   hereto, the Complaint on file in this action, and the declarations of Rosario Madrigal, Sabas

25   Rangel, Maria Buell, and John A. Ramirez, and the exhibits attached thereto.

26   Dated:  March 17, 2006             RUTAN & TUCKER, LLP

27

28                          By:/s/  John A. Ramirez
                              John A. Ramirez
                              Attorneys for Plaintiffs

Rutan & Tucker LLP
*attorneys at law*

1           **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.**    **INTRODUCTION:  UNDER ON-POINT NINTH CIRCUIT LAW, THE**

3       **INITIATIVE IS INVALID BECAUSE IT WAS NOT CIRCULATED IN SPANISH.**

4       This case involves a single core issue—whether an initiative petition recently circulated for

5 public signature in the County of Monterey ("County") is invalid because the petition, including

6 the statutorily-required ballot Title and Summary which is drafted by the County and is required to

7 appear on multiple pages of the initiative, was circulated to the public solely in English, and not in

8 Spanish.  Under recent, directly on-point authority from the Ninth Circuit, it is beyond doubt that

9 the initiative is invalid on this basis, thereby necessitating the injunctive relief sought herein.[1]

10       The controlling case is *Padilla  v. Lever*, 429 F.3d 910 (9th Cir. 2005), wherein the Ninth

11 Circuit held that a recall petition circulated in connection with a California school district election

12 was invalid under Section 203 of the federal Voting Rights Act of 1965 because the petition was

13 presented to the public in English only, and not in Spanish.  *Id.* at 912, 924.  The rule under *Padilla*

14 is simple and bright-line:  If a political subdivision is covered by Section 203 of the Voting Rights

15 Act, such that it must provide all voting-related materials to the public in the specified non-English

16 languages in addition to English, this requirement ***applies fully to all publicly-circulated petitions***

17 ***such as recall and initiative petitions***.  *Id.* at 918-924.

18       As recently as January of 2006, Judge Klausner of the U.S. District Court for the Central

19 District of California applied *Padilla* and issued a preliminary injunction enjoining the City of

20 Rosemead from proceeding with a recall election because the recall petition in support thereof was

21 not circulated in Spanish, but only in English.  Order on Preliminary Injunction, *Imperial v.*

22 *Castruita*, CV 05-8940-RGK (CWx) (C.D. Cal. Jan. 17, 2006), attached to Declaration of John A.

23 Ramirez ("Ramirez Dec."), Ex. B.[2]  Indeed, so strong was Judge Klausner's conviction that the

---

[1]   As set forth in the concurrently filed *ex parte* application for an order shortening time, this motion was precipitated by the *Melendez* Plaintiffs in the now consolidated case No. C 06-1730 JW seeking an injunction to place the Initiative on the June 2006 Monterey County ballot.  The *Melendez* Plaintiffs seek relief that will directly violate the constitutional rights of the Plaintiffs herein, which Plaintiffs here seek to enjoin.

[2]   Plaintiffs recognize that the *Imperial* decision is not binding authority on this court.  However, Plaintiffs believe the Court would find it useful and relevant, and submit it in furtherance of judicial economy.

1  *Padilla* case mandated the invalidated the petition that he issued the preliminary injunction ***less***

2  ***than three weeks*** before the recall election was scheduled to occur.  *Id.*

3        Here, it is undisputed that the County is a political subdivision covered by Section 203 of

4  the Voting Rights Act, such that all voting-related materials must be presented to the public in

5  Spanish as well as English.  *See* 28 C.F.R., Part 55, App. (2005).  Moreover, it is also undisputed

6  that the initiative petition challenged herein—***including the Title and Summary that was drafted***

7  ***by the County pursuant to state law, and which is statutorily-required to be on multiple pages of***

8  ***the petition***—was not circulated or presented to the public in any language other than English.  In

9  light of these facts, there can be no doubt that *Padilla*'s holding applies squarely to the challenged

10  initiative, and that the Plaintiffs therefore have a very high likelihood of success on the merits of

11  their claims.

12        Additionally, it is also beyond doubt that the Plaintiffs, all of whom are Spanish-speaking

13  registered voters of Monterey County, and some of whom speak little-to-no English ***and were***

14  ***expressly mislead concerning the purpose of the challenged initiative***, and those similarly

15  situated, will be irreparably harmed if the injunction sought herein is not granted.  Because the

16  initiative was not circulated in Spanish, all limited-English-speaking County voters were

17  effectively excluded from the electoral and public-debate process relating to the qualification of the

18  initiative for adoption, and now stand to be subject to an illegal election if the initiative is either

19  adopted or allowed to proceed to a public vote in June of 2006.  The United States Supreme Court

20  and the California Supreme Court have repeatedly held that the circulation process is at the core of

21  the right to petition and is part and parcel with the exercise of the right to vote.  *Buckley v.*

22  *American Const. Law Foundation*, 525 U.S. 182, 186 (1999).

23        Moreover, making matters particularly egregious, ***the initiative challenged herein could***

24  ***drastically affect development patterns and economic development and growth in the County***,

25  which is an issue that particularly affects Spanish-speaking County citizens, many of whom are

26  affected by the ranching, vintner and development segment of the County economy for their

27  livelihoods.

28        Because the Plaintiffs can demonstrate a high likelihood of success on the merits of their

1  case under *Padilla*, and they will suffer immediate irreparable injury if the initiative is allowed to

2  proceed, the Plaintiffs are entitled to the injunctive relief that they seek herein, enjoining the

3  Defendants from further processing the initiative for the June 2006 Monterey County election or

4  any future election.

5  **II.    STATEMENT OF FACTS.**

6       **A.    The Initiative Challenged Herein Would Effect Significant Changes to the**

7            **County's General Plan, Including the Housing Element.**

8       The initiative challenged herein is self-entitled as the Monterey County "Quality of Life,

9  Affordable Housing, and Voter Control Initiative" (hereinafter, the "Initiative").   The proponents

10  of this Initiative seek to have the measure placed on the County election ballot currently scheduled

11  for June 6, 2006.  Declaration of Maria Buell ("Buell Decl."), ¶¶ 14-15.

12       If enacted, the Initiative would effect significant changes to the County's General Plan that

13  would impact all citizens of the County.  Through a number of mechanisms—including the

14  redefinition of the General Plan's major land use classifications and the creation of various "urban

15  development boundaries"—the Initiative would severely limit future development in the County by

16  directing such development only to certain limited areas, and requiring that any increase in the

17  number of parcels outside of those limited areas be put to a vote of the entire citizenry of the

18  County.  Buell Decl., ¶ 10, Ex. A, pp. 6 -- 65.

19       In addition, the Initiative would also effect major modifications to the Housing Element of

20  the County's General Plan, with approximately 50 pages of the Initiative's text being devoted

21  solely to making substantive changes to this Element.  *Id*.  Under California housing law, a local

22  agency's Housing Element must provide a plan for the accommodation of that agency's regional

23  share of affordable housing, including housing for low-income and farm-worker residents.  Cal.

24  Gov. Code § 65580.  Under the modifications proposed by the Initiative, however, the County's

25  ability to accommodate this affordable housing could be dramatically limited by virtue of the

26  Initiative's significant reduction of the land available for future development; without available

27  land, the production of low-income housing becomes infeasible.  Buell Decl., ¶ 10, Ex. A, pp. 6 --

28  65.  Additionally, the Initiative will also affect the ranching, vintner and low-wage development

1   industry in the County, which disproportionately impact Latino and Spanish speaking voters.

2   **B.**   **Overview of the California Initiative Process.**

3   The procedures governing the adoption of countywide initiatives in California are set forth

4   in California Elections Code sections 9100 *et. seq.*  Pursuant to those provisions, the proponent of a

5   proposed initiative must first file with the relevant county a "notice of intention" to circulate a

6   petition relating thereto, with a full copy of the initiative attached.  Cal. Elec. Code § 9103.

7   Following this filing, the county then has fifteen days to prepare and provide an impartial

8   "ballot Title and Summary" for the measure.  *Id.* at § 9105(a)-(c).  Under the law, the ballot Title

9   and Summary is the means by which the County provides to the public ***an unbiased summary*** of

10  the proposed measure, which can be utilized by the voting public, including members of the public

11  who desire to inform themselves as to the purpose and effect of the Initiative when it is circulating,

12  as a means of determining the measure's true nature, purpose and effect.  In discussing such Titles

13  and Summaries in the context of statewide initiatives, the court in *Lungren v. Superior Court*

14  described their purpose as follows:

15      "The title and summary inform the public of the general purpose of the [measure]."

16      [Citations.]

17                                              * * *

18      "[t]he [] statement [in the title and summary] must be true and impartial, and not

19      argumentative or likely to create prejudice for or against the measure.  [Citation.]

20      The main purpose of these requirements is to avoid misleading the public with

21      inaccurate information.  [Citations.]"  [Citation.]  The ballot title and summary

22      ***must reasonably inform the voter of the character and purpose of the proposed***

23      ***measure."***  [Citations.]

24  *Lungren v. Superior Court*, 48 Cal.App.4th 435, 439-40 (1996) (emphasis added).  Indeed, so

25  important is the ballot Title and Summary to the public's understanding of a proposed initiative

26  that the California Legislature has deemed that, when a petition in support of an initiative is

27  circulated to the public, ***the Title and Summary must appear on the first page, and on each page***

28  ***on which signatures will be gathered, to ensure that the public sees it***.  Cal. Elec. Code § 9105(c).

1   Initiative measures that do not contain the Title and Summary when they are turned in, may not be

2   processed by the County at all, and are deemed "void" for all purposes.  *See Mervyn's v. Reyes,* 69

3   Cal.App.4th 93, 104 (1998); *Hebard v. Bybee,* 65 Cal.App.4th 1331, 1339 (1998) [omission of three

4   words from Title and Summary prepared by city attorney requires the city to reject the petition and

5   take no further action]; *Clark v. Jordan,* 7 Cal.2d 248 (1936); *Myers v. Patterson*, 196 Cal.App.3d

6   130 (1987); *Billig v. Voges,* 223 Cal.App.3d 962, 969 (1990) ("[T]he offices of [elections officials]

7   throughout the state are mandated by the constitution to implement and enforce [the Elections

8   Code's] procedural requirements.  In the instant case, respondent had a clear and present

9   ministerial duty to refuse to process appellant's petition because it did not comply with the

10  procedural requirements of [the Elections Code].")

11          After receipt of the Title and Summary from the county, the proponents of the initiative

12  must publish a copy of the notice of intention, as well as a copy of the Title and Summary, in a

13  "newspaper of general circulation" in the county.  *Id.* at § 9105(b).  Once that publication is

14  complete, the proponents then have until 180 days -- a full six months -- after their receipt of the

15  Title and Summary to circulate the initiative petition to the public and obtain the requisite number

16  of signatures in support of the measure.  *Id.* at §§ 9108, 9110.  During this circulation process, in

17  addition to including the Title and Summary on multiple pages of the petition, the proponents must

18  also attach a full copy of the notice of intention and a copy of the initiative itself.  *Id.* at §§ 9102;

19  9105(c).

20          Once the requisite number of signatures has been obtained, and the signed petitions have

21  been returned to the county, the county then has a ministerial duty to review the Initiative to ensure

22  that it complies with all of the procedural requirements attendant to the circulation of the Initiative

23  prior to commencing the counting of the signatures, including ensuring that (1) ***each section of the***

24  ***Initiative contained the Title and Summary prepared by the county counsel where statutorily-***

25  ***required***; (2) each section contained the full text of the measure; (3) each section contained the

26  notice of intent, and (4) each section contains all of the other numerous statutorily-required content,

27  including substantive "***WARNINGS TO VOTERS***" and all of the other requirements those set

28  forth in Elections Code sections 9105(c), 9101, 100, 101, and 104.  If these requirements are not

1    met, as set forth above, then the County has a ministerial, non-discretionary duty not to verify the

2    Initiative and can take *no* further action on the petitions.  For all intensive purposes, the Initiative is

3    deemed "void."  *See Mervyn's,* 69 Cal.App.4th at 104; *Hebard,* 65 Cal.App.4th 1331 [omission of

4    three words from Title and Summary prepared by city attorney requires the city elections official to

5    reject the petition and take no further action]; *Clark,* 7 Cal.2d 248; *Myers,* 196 Cal.App.3d 130;

6    *Billig,* 223 Cal.App.3d 962, 969; Ballot Box Navigator, Durkee (2003, Solano Press), at p. 108

7    attached to Ramirez Dec. as Ex. C, (emphasis added) (summarizing cases and stating, "*If such*

8    *procedural requirements are not satisfied, the city or county has a legal duty to reject the*

9    *petition*.")  Because of this extensive content-based regulation, initiative petitions are "limited

10   public forums" controlled by the State.  (*San Francisco 49ers v. Nishioka*, 75 Cal.App.4th 637, 648

11   (1999).

12        Assuming the proposed measure complied with the procedural requirements, the county

13   then has approximately 30 days to examine the signatures for validity.  *Id.* at §§ 9113-9115.  If this

14   examination reveals that a sufficient number of valid signatures has been obtained, the county

15   elections official must then certify the results of the examination at the next regular meeting of the

16   county's board of supervisors.  *Id.* at § 9115(f).

17        Following this certification, the board of supervisors of the county has three options.  First,

18   the board may simply adopt the initiative outright without submitting it to a public vote.  *Id.* at

19   §§ 9116(a), 9118(a).  Alternatively, it may submit the matter to a vote of the public at either a

20   general election (if the base threshold of signatures is obtained) or a special election (if a higher

21   threshold of signatures is obtained).  *Id.* at §§ 9116(b), 9118(b).[3]  Finally, it may postpone its

22   decision between these options for approximately 40 days by requesting a report analyzing the

23   impact of the measure pursuant to Elections Code section 9111.  *Id.* at §§ 9116(c), 9118(c), 9111.

24   In that instance, the board must receive the requested report within 30 days of the election official's

25

26   [3]    The number of required signatures is based on of the number of votes cast within the county in
     the most recent gubernatorial election preceding the publication of the Notice of Intention.  Cal.
27   Elec. Code §§ 9107, 9116, 9118.  If signatures on the petition are equal to ten percent of this
     number, the county may submit the measure to vote at a general county election.  *Id.* at § 9118.  If
28   signatures on the petition are equal to twenty percent of this number, the county may submit it at a
     special election (assuming one is requested).  *Id.* at § 9116.

1   certification of the petition.  *Id.* at § 9111(a).  After that receipt, it then has 10 additional days to

2   process the measure and call an election.  *Id.* at §§ 9116(c), 9118(c).  In virtually all initiative

3   settings, an election is called.

4        **C.      The Initiative, Including the Ballot Title and Summary, Was Prepared and**

5                 **Circulated in English Only, and Not In Spanish.**

6        On October 20, 2005, the proponents of the Initiative filed with the County a notice of

7   intention to circulate a petition relating to the Initiative.  Buell Decl., ¶ 7.  This notice of intention

8   was printed and filed with the County solely in English, and not in Spanish.  *Id.*

9        In response to the notice of intention, the County prepared a ballot Title and Summary for

10  the Initiative pursuant to state law, and provided it to the measure's proponents.  *Id.* at ¶ 10., Ex. A.

11  Like the notice of intention filed by the Initiative's proponents, however, ***this ballot Title and***

12  ***Summary was drafted and provided by the County solely in English, and not in Spanish and was***

13  ***not translated into Spanish when it was placed on the Initiative***.  *Id.*  In or about November of

14  2005, following receipt of the ballot title and summary, the proponents of the Initiative caused a

15  copy of the notice of intention and the Title and Summary to printed in a "newspaper of general

16  circulation" in the County.  This publication was completed in English only, and not in Spanish.

17  Buell Decl., ¶ 8.

18       Once this publication was completed, in or about November and December of 2005, the

19  Initiative proponents undertook a "paid bounty hunter" signature-gathering effort for the Initiative

20  petition.  Buell Decl., ¶¶ 16-17.  To this end, the proponents stationed signature gatherers at several

21  places throughout the County, where these agents presented the Initiative petition, including the

22  County-prepared title and summary, to members of the public.  *Id.* at ¶ 6.  As with the other

23  components of the Initiative, all copies of the petition that were circulated to the public were

24  presented only in English, and not in Spanish.  Buell Decl., ¶ 10, Ex. A.

25       Ultimately, in or about January of 2006, the Initiative proponents filed the petition with the

26  County Election Department, claiming that they had obtained the requisite number of signatures to

27  qualify the measure for the June 2006 ballot.  Buell Decl., ¶ 11, Ex. B.  In response, Defendant

28  Anchundo, as the Registrar of Voters for the County, reviewed the petition signatures and

1    ultimately certified the Initiative as having a sufficient number of signatures to call an election.  *Id.*

2          **D.**      **Plaintiffs Are Limited-English County Voters Who Were Excluded from the**

3          **Initiative Process.**

4          **1.**      **Plaintiff Rosario Madrigal.**

5    Plaintiff Rosario Madrigal ("Madrigal") is a citizen of the United States, and a citizen,

6    resident, and registered voter of the County of Monterey.  Madrigal's primary language is Spanish,

7    and she speaks very limited English.  She does not speak English well enough to understand the

8    complexities of the Initiative when presented solely in that language.  Declaration of Rosario

9    Madrigal ("Madrigal Decl."), ¶ 2.  Madrigal is "limited-English proficient" under section 203 of

10   the federal Voting Rights Act of 1965, 42 U.S.C. § 1973aa-1a(b)(3)(B).

11   Despite Madrigal's limited proficiency in English, during Initiative's circulation, paid

12   signature-gatherers presented the Initiative to Madrigal in English only, and requested that she sign

13   it.  When these documents were presented to Madrigal, the signature gatherers explained to her, in

14   English, that the Initiative would help the economy and create more jobs in the County.  Madrigal

15   Decl., ¶¶ 4-5.

16   Because the Initiative was not presented to Madrigal in Spanish, she could not understand

17   its import or purpose.  Ultimately, however, Madrigal signed the Initiative based on statements

18   made by the paid signature gatherers that the Initiative would help create more jobs in the County.

19   Had the Initiative been printed and presented to her in Spanish, Madrigal would have been able to

20   read and understand the Initiative, and would not have signed it.  *Id.* at ¶ 6.

21         **2.**      **Plaintiff Sabas Rangel.**

22   Plaintiff Sabas Rangel ("Rangel") is a citizen of the United States, and a citizen, resident,

23   and voter of the County.  Rangel speaks only Spanish ***and speaks no English whatsoever***.

24   Declaration of Sabas Rangel ("Rangel Decl."), ¶ 3.  Rangel is "limited-English proficient" under

25   section 203 of the federal Voting Rights Act of 1965, 42 U.S.C. § 1973aa-1a(b)(3)(B).

26   Rangel attempts to participate and remain active in civic and political issues in the County

27   of Monterey concerning quality of life, housing, and affordability, and other issue that affect he and

28   his family.  To that end, after becoming aware in late 2005 that the Initiative was in circulation in

1   the County, Rangel attempted to participate in the County's electoral process by informing himself

2   of the character and content of the Initiative.  However, because he could not locate a single copy

3   of the Initiative petition that was printed and circulated in Spanish, he was ultimately prevented

4   from participating in that process.  Rangel Decl., ¶¶ 4-6.

5               **3.       Plaintiff Maria Buell.**

6          Plaintiff Maria Buell ("Buell") is a citizen of the United States, and a citizen, resident, and

7   registered voter of the County of Monterey.  Buell speaks both English and Spanish fluently.  Buell

8   is and has been active in Latino-related civil rights causes throughout the state for many years, and

9   to this end has sought, and does now seek, to enforce the provisions of the Voting Rights Act of

10  1965 through its enforcement provisions.  As a resident voter and taxpayer of the County, Buell

11  stands to be subject to an illegal election, of which many of her fellow members of the public were

12  not fully or properly informed, if the injunctive relief sought herein is not granted.  Buell Decl.,

13  ¶¶ 3-16.

14          **E.       Although the County Elected to Halt Further Processing of the Initiative, The**

15                  **Proponents' Intent is to Place the Measure on the June Ballot.**

16          Following the certification of the Initiative by Anchundo, on January 31, 2006, the

17  County's Board of Supervisors elected to not place the Initiative on the ballot, and instead ordered

18  an independent report pursuant to Elections Code section 9111, analyzing the impact of the

19  Initiative on the County.  *Id.* at ¶ 12.  Ultimately, the Board received this report at its meeting of

20  February 28, 2006.  It consisted of two components:  (1) a legal report prepared by the law firm of

21  Nossaman, Guthner, Knox, Elliott, LLP, discussing multiple areas in which the Initiative is legally

22  invalid, ***including the very ground raised in this lawsuit***; and (2) an economic report that describes

23  the likely economic impact of the Initiative.  Buell Decl., ¶¶ 13-14, Exs. C and D.

24          Based in part on the legal problems identified by the Nossaman Guthner report, at the

25  February 28th Board meeting, the Board voted 3-2 to cease all further processing of the Initiative,

26  stating that they would not place it on the ballot for a County vote.  *Id.*  Nevertheless, the Initiative

27  is still in danger of being placed on the County ballot.  On March 1, 2006, the proponents of the

28  Initiative filed a petition for writ of mandate in California Superior Court, seeking a writ that would

1   require the County to place it on the June 2006 County ballot, based on the County's alleged

2   ministerial duty to do so. *Id.* at 14.  That action was subsequently removed to federal court, the

3   northern district, and has been consolidated with the present action.  Needless to say, if the

4   Initiative proponents are successful in that lawsuit, then the Initiative may be unlawfully placed on

5   the June ballot in violation of *Padilla v. Lever* and the Voting Rights Act of 1965.

6   **III.**   **STANDARD OF REVIEW.**

7         A district court has authority to grant injunctive relief in the exercise of its discretionary

8   equitable powers. Fed. R. Civ. P. 65; *see Big Country Foods, Inc. v. Board of Educ. of Anchorage*

9   *School Dist.,* 868 F.2d 1085, 1087 (9th Cir. 1989).  In determining whether such relief should be

10  granted, the court must consider the likelihood that the plaintiff will prevail on the merits and the

11  possible harm to the parties from granting or denying the injunctive relief. *See Arcamuzi v.*

12  *Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir. 1987); *Sierra On-Line, Inc. v. Phoenix*

13  *Software, Inc.,* 739 F.2d 1415, 1421 (9th Cir. 1984).

14        A temporary restraining order is a form of preliminary injunctive relief that may issue

15  without notice to the adverse party or that party's attorney.  Its sole purpose is to preserve the status

16  quo pending hearing on the moving party's application for a preliminary injunction. *Granny*

17  *Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers* 415 U.S. 423, 439, 94 S.Ct.

18  1113, 1124 (1974).

19        Under general preliminary injunction analysis, a party seeking injunctive relief must show

20  either (1) a combination of probable success on the merits and the possibility of irreparable harm,

21  or (2) that serious questions are raised and the balance of hardships tips sharply in the moving

22  party's favor.  *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445, 1448 (9th Cir.

23  1988)*; Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215 (9th Cir. 1987).  "These are not two

24  distinct tests, but rather the opposite ends of a single 'continuum in which the required showing of

25  harm varies inversely with the required showing of meritoriousness.'" *Miss World,* 856 F.2d at

26  1448 (quoting *Rodeo Collection,* 812 F.2d at 1217) (emphasis added).[4]

27  ─────────────────────

28  [4]   Notably, although the Plaintiffs herein will certainly suffer irreparable injury if the injunctive relief they seek is not granted, it is questionable whether a plaintiff demonstrating a *prima facie* violation of the Voting Rights Act must show ***any*** irreparable injury at all.  In *Badillo v. City of*

## IV.  ARGUMENT.

### A.  Under the Ninth Circuit's Holding in *Padilla*, Plaintiffs Have a High Likelihood of Success on the Merits of Their Claim.

The Initiative violates Section 203 of the federal Voting Rights Act of 1965 ("VRA"), in that it was circulated in English only, and not in Spanish.  Under the Ninth Circuit's decision in *Padilla v. Lever*, 429 F.3d 910, 912, 924, the requirements of Section 203, which require certain political subdivisions to provide all voting-related materials in the language of the prevalent minorities residing in those subdivisions, apply to publicly-circulated petitions such as recall and initiative petitions.  The full breadth of Section 203 and its application to the Initiative in light of *Padilla* are set forth below.

### 1.  Section 203 of the Voting Rights Act.

Section 203 of the VRA is codified at 42 U.S.C. § 1973aa-1a (hereinafter, "Section 203").  Under that section, when certain political subdivision provide voting- or election-related materials to the public, such materials must be provided in the language or languages of the subdivision's prevalent minority residents in addition to English.  *Id.* at § 1973aa-1a(a)-(c).  The operative provision in this regard is subsection (c), which states as follows:

> Whenever any State or political subdivision subject to the prohibition of subsection (b) of this section provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, ***it shall provide them in the language of the applicable minority group as well as in the English language***.

42 U.S.C. § 1973aa-1a(c) (emphasis added).

Subsection (b) of Section 203 sets forth a handful of ways in which a political subdivision may be covered by these restrictions.  One of these ways states that the restrictions apply when

---

*Stockton*, 1988 U.S. Dist. LEXIS 17601 (E.D. Cal.), the court held that, because the Voting Rights Act expressly allows for the issuance of injunctions for the violations of its provisions (*see* 42 U.S.C. § 1973), ***Congress already determined that such violations amount to irreparable harm***. *Id.* at *25-26 (citing *United States v. Odessa*, 833 F.2d 172, 175, (9th Cir. 1987).  As such, the court held that plaintiffs moving for a preliminary injunction to enjoin violations of the Act need make ***no*** showing of irreparable injury, but need only make a *prima facie* showing of a violation.

1   (1) five percent or more of the voters in the political subdivision are members of a "single language

2   minority" and are "limited-English proficient," and (2) the illiteracy rate among this group is

3   higher than the national average. *Id.* at § 1973aa-1a(b)(2)(A).

4         Generally, federal regulations promulgated by the Department of Justice based on

5   information provided by the federal Census Bureau establish which political subdivisions in the

6   United States are subject to Section 203, and for which specific minorities. ***Under those***

7   ***regulations, the County of Monterey is specifically listed as a political subdivision that is covered***

8   ***by Section 203 for Spanish-speaking minorities***. 28 C.F.R., Part 55, App. (2005).

9         **2.    *Padilla* Holds that the Restrictions of Section 203 Apply to Circulated**

10               **Petitions in California.**

11        *Padilla* concerned a challenge under Section 203 to a recall petition seeking to recall a

12   school district board member in California.  Under the California Elections Code, private citizens

13   may draft and circulate petitions for the recall of certain elected officials under a procedure that is

14   substantially similar to that applicable to California initiative petitions.  *Compare* Cal. Elec. Code

15   §§ 11000 *et seq. with* Cal. Elec. Code §§ 9100 *et seq.*  Under this procedure, proponents of a recall

16   election must first file with the relevant county elections department a "notice of intention" to

17   circulate a recall petition, and then publish that notice of intention in a "newspaper of general

18   circulation" in the relevant area.  *Id.* at §§ 11006, 11020-11022.  Thereafter, the proponents must

19   draft and circulate for public signature a formal petition that is consistent with various legal form

20   requirements.  Cal. Elec. Code §§ 11040-11043.5.  Once the requisite number of signatures is

21   obtained, the petition must then be filed with the county elections department, which reviews the

22   signatures for validity.  Cal. Elec. Code §§ 11101-11110 (state officials); 11220-11242 (local

23   officials).  If the signatures are valid, a recall election will then be scheduled.  *Id.*

24        In *Padilla*, the proponents of the recall petition followed each of these steps, but failed to

25   draft any of the relevant materials in any language other than English.  *Padilla*, 429 F.3d at 912.

26   Thus, for instance, the notice of intention filed with the Orange County Registration and Elections

27   Department was printed solely in English, ***and the "Petition for Recall" and accompanying***

28   ***request for a recall election were printed and circulated solely in English***.  *Id.*  Nevertheless, after

1   the signed petition was filed with the county, the district certified the petition as having a sufficient

2   number of signatures, and formally called for a recall election.  *Id.* at 912-913.

3       Following this certification, but before the recall election was held, the plaintiffs, whom the

4   Ninth Circuit described as "residents and registered voters in the [school district] whose primary

5   language is Spanish," filed suit against the Orange County Registrar of Voters and other Orange

6   County elections officials, seeking declaratory and injunctive relief to prevent the recall election

7   from going forward.  *Id.* at 912-13.  ***The plaintiffs alleged that the recall petition violated Section***

8   ***203 because the school district was a covered political subdivision under that Section with***

9   ***respect to Spanish-language minorities, and yet the recall petition was circulated only in***

10  ***English***.  *Id.*  According to the plaintiffs, because the petition was not printed in Spanish, they

11  signed the petition without being aware of its contents and purpose.  *Id.* at 913.  In addition, the

12  plaintiffs also alleged that the signature-gatherers misrepresented the purpose of the petition to

13  them, informing them that it was only a form to request additional information.  *Id.*

14      Although it was undisputed that the county in question was covered by Section 203, the

15  trial court nevertheless dismissed the plaintiffs' case, holding that Section 203 does not apply to

16  recall petitions.  *Id.* at 913-914, 915.  When the plaintiffs appealed, however, the Ninth Circuit

17  reversed, holding that the statute did apply under both its broad terms and the case and regulatory

18  law interpreting it.  *Id.* at 915-24.  According to the Ninth Circuit, the resolution of this issue

19  required an analysis of two primary questions raised by subdivision (c) of Section 203—namely,

20  (1) whether the petitions qualify as "other materials or information relating to the electoral

21  process"; and (2) whether the petitions are "provided by" the county.  *Id.* at 918-19.  The court held

22  that, in answering these questions, the VRA was to be ***"broadly construed"*** to give effect to its

23  remedial purpose.  *Id.* at 919.

24      With respect to the "other materials" prong of the analysis, the court first noted that the

25  broad "relating to" language in that clause, when interpreted according to its plain meaning, would

26  clearly encompass recall petitions, which ***"serve no other purpose than to trigger an election."***  *Id.*

27  In further support of this conclusion, the court also relied on ***prior*** precedent from the Ninth

28  Circuit, where the previous panel ***agreed*** with the assertion that Section 203 applies to recall

1  petitions.  Quoting from that precedent, the court stated:

2      The election itself is merely the culmination of the electoral process.  ***The range of***

3      ***conduct "relating to the electoral process" includes, for example, compliance by a***

4      ***would-be voter with statutes regulating registration and compliance with other***

5      ***statutes to place a name or an issue on the ballot***.  That the state or a political

6      subdivision has mandated by law that certain preliminary steps be taken by the

7      would-be voter, the candidate for office, ***<u>or the proponents of an issue</u>*** does not in

8      any sense absolve the governmental entity of its responsibility under the Voting

9      Rights Act.  Such compelled acts are far removed from those voluntarily undertaken

10     by a candidate, ***such as the printing of campaign literature***.

11  *Id.* (emphasis added) (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 826 (9th Cir. 1986)).

12  In addition, the court also noted that the regulations drafted by the U.S. Attorney General for the

13  purpose of implementing Section 203, although not specifically binding on the court, define

14  "written materials" as including "ballots, sample ballots, ***informational materials***, and ***petitions***."

15  *Id.* at 919-20 (citing 28 C.F.R. § 55.19(a)) (emphasis added).[5]

16      With respect to the  "provided by" prong, the Ninth Circuit focused on the fact that, under

17  California law, county elections agencies must review proposed recall petitions to ensure that they

18  comply with California's form and content regulations.  *Id.* at 922-24 (citing Cal. Elec. Code

19  §§ 11041, 11042).  As noted by the Ninth Circuit, in the course of this review, the county may

20  actually make suggestions as to how the form and content of a petition should be changed to bring

21  them into compliance.  *Id.*  In response to these suggestions, petition proponents must then alter

22

23  [5]   The court dismissed the argument made by the district court that the recall petitions were not
24  covered by Section 203 because they did not involve actual "voting"—*i.e.*, a "choice between two
    or more alternatives."  *Padilla*, 429 F.3d at 920-21.  According to the Ninth Circuit, such a narrow
25  reading of Section 203 had to be rejected because (1) it is inconsistent with the broad language of
    Section 203 itself; (2) it is inconsistent with the broad remedial intent behind Section 203; and (3)
26  it is simply wrong, in that signing a recall petition ***does*** involve between two alternatives—*i.e.*,
    whether to sign it or not.  *Id.* at 920-22.  Notably, in reaching this conclusion, the court cited the
27  U.S. Supreme Court case of *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969), where the Court
    had held that another "preliminary step to an election"—namely, the process of petitioning to place
28  a candidate's name on the ballot—***was covered by another section of the VRA that used language
    very similar to that used by Section 203***.  *Padilla*, 429 F.3d at 921 (citing Allen, 393 U.S. at pp.
    569-70).

1  their petitions until the elections officials are satisfied that the petitions are in compliance.  *Id.*

2  Based on this procedure, pursuant to which counties can exercise control over a portion of the

3  **content** of California recall petitions, the Ninth Circuit held that such petitions satisfied the

4  "provided by" prong of Section 203.

5          As a result of this analysis, the court in *Padilla* found that Section 203 applies to California

6  recall petitions, and that the recall petitions at issue there were therefore required to be in circulated

7  in Spanish in addition to English.  *Id.* at 924.

8                  **3.**      ***Padilla* Applies Squarely to This Case Involving an "Initiative" Petition.**

9          As with the county defendant in *Padilla*, it is undisputed here that the County of Monterey

10  is a covered jurisdiction under Section 203 with respect to the Spanish language.  *See* 28 C.F.R.,

11  Part 55, App. (2005) (specifically listing Monterey County as being covered by Section 203(c) with

12  respect to the "Spanish heritage").  Thus, the only issue here is whether the *Padilla* court's Section

13  203 analysis applies with equal force in this case, despite the fact that this case involves an

14  "initiative" petition, as opposed to a "recall" petition.  For various reasons, this "distinction" is

15  completely irrelevant to the application of *Padilla*, and when read in full, it is clear that *Padilla*

16  **applies with equal force—if not greater force—to initiative petitions**.

17                  **a.**      **Padilla's Two-Pronged Section 203 Analysis Applies With Full**

18                              **Force to Initiative Petitions.**

19          To begin with, it is clear from *Padilla*'s rationale that its two-pronged Section 203 analysis

20  applies just as much to initiative petitions as it does to recall petitions.  With respect to the "other

21  materials" prong, like the recall petition in *Padilla*, Initiative petitions generally "serve no other

22  purpose other than to trigger an election."  *Padilla*, 429 F.3d at 919.  Thus, as with recall petitions,

23  failing to apply the bilingual requirement to the Initiative would "deny minority language speakers

24  the right to fully participate in the electoral process by depriving them of the ability to consider the

25  written arguments for and against a particular recall target."  *Id.* at 924.

26          Moreover, the United States and California Supreme Courts have repeatedly held that under

27  the State's constitutional scheme, the act of **circulating** an initiative petition is itself an "act of

28  direct democracy" that is at the core of our system of direct legislation borne out by the initiative

1   process.  *See DeVita v. Napa*, 9 Cal.4[th] 763, 786, (1995) (emphasis added) ("***When the people***

2   ***exercise their right of initiative, then public input occurs in the act of proposing and circulating***

3   ***the initiative itself***, and at the ballot box."); *see also Buckley*, 525 U.S. at 186 ("Petition circulation

4   is core political speech because it involves interactive communication concerning political

5   change.").  The State's Elections Code expressly recognizes this enshrined principle, and expressly

6   permits those who are opposed to circulating an initiative petition to mount "counter circulation"

7   campaigns designed to ***remove signatures from the petition***.  *See* Elec. Code § 9602.  ***By not***

8   ***circulating the Initiative here in Spanish, as well as in English, the County and the Initiative***

9   ***proponents excluded Spanish speaking minorities from not only the circulation process, but also***

10  ***from the ability to mount "counter circulation" campaigns with the intent of voicing their views***

11  ***regarding the Initiative***.  Buell Decl. at ¶ 16.  Clearly, this results has thwarted the broad

12  ameliorative intent and effect of the Voting Rights Act of 1965.  *Id.*

13      Finally, the Section 203 implementing regulations relied upon by the court in analyzing the

14  "other materials" prong expressly define "written materials" to include not "recall petitions," but

15  all ***"informational materials"*** and ***"petitions."***  *Id.* at 919-20 (quoting 28 C.F.R. § 55.19(a))

16  (emphasis added).  Thus, by their terms, these regulations apply just as equally to initiative

17  petitions as they do to recall petitions.  Indeed, the Title and Summary ***prepared by the County*** and

18  required to be placed on multiple pages of the Initiative serves no purpose other than to impartially

19  inform the voters of the content and effect of the proposed Initiative.

20      With respect to the "provided by" prong of the Section 203 analysis, the *Padilla* court's

21  rationale actually applies ***more strongly*** to California initiative petitions than it does to California

22  recall petitions.  As noted above, the critical factor for the satisfaction of this prong with respect to

23  recall petitions was the fact that, under California law, such petitions are reviewed by county

24  agencies, which have some authority to require changes to their contents in order to bring them into

25  compliance with state law.  *Padilla*, 429 F.3d at 922-24 (citing Cal. Elec. Code §§ 11041, 11042).

26  With respect to initiative petitions, the authority of local agencies is even greater.  In the Initiative

27  context, County agents ***must also draft a Title and Summary for the petition, which is intended to***

28  ***summarize the purpose and effect of the initiative to the public, and which by law must appear***

1  *on the face page and on every page on which signatures are collected*.  Cal. Elec. Code

2  § 9105(a)-(c); *Lungren*, 48 Cal.App.4th 435, 439-40.  Thus, when it comes to California initiative

3  petitions, county elections officials not only review them, ***they draft a portion that is critical to the***

4  ***public's understanding of them***.  The Title and Summary play a central role in California's

5  initiative process.  These statutory provisions were added "to provide voters with an impartial

6  analysis of the proposed initiative measures" and to provide the electorate "the opportunity to make

7  an informed decision on a proposed initiative."  *DeVita*, 9 Cal.4th at 778.  Indeed, the Title and

8  Summary also become part of the legislative history of the measure and is used to interpret and

9  apply the measure.  *See LIFE Committee v. City of Lodi*, 213 Cal.App.3d 1139, (1989).[6]

10       Thus, based on *Padilla*'s express rationale, *Padilla* applies fully to the initiative process.

11                   **b.      Other Aspects of *Padilla* Demonstrate Its Application to**

12                            **Initiative Petitions.**

13       Even beyond *Padilla*'s core two-pronged analysis, other aspects of the opinion also indicate

14  that its holding would apply fully to initiative petitions.  First, in reaching its conclusion, the

15  *Padilla* court expressly distinguished two cases from other circuits—*Montero v. Meyer*, 861 F.2d

16  603 (10th Cir. 1988), and *Delgado v. Smith*, 861 F.2d 1489 (11th Cir. 1988)—each of which held

17  that the requirements of Section 203 did not apply to initiative petitions circulated in the states in

18  which they arose.  While at first blush this may seem like an argument against the application of

19  *Padilla* to initiative petitions, this interpretation would be incorrect, for, although *Padilla*

20  _____

[6]      The Title and Summary is not the only "content" prepared by the State and required to be
21  contained on an initiative petition.  Elections Code section 101 requires a comprehensive
    "WARNING TO VOTERS" and specifies mandated language that must also be on each page of
22  the signature pages.  Moreover, the *Melendez* Plaintiffs' claim that initiatives do not contain any
    material "provided" by the State is not only rendered demonstrably false by the requirement that
23  the Title and Summary appear in the Initiative, but additionally by the fact that initiatives are ***not***
    the equivalent of "***private campaign literature***" that the *Padilla* court exempted from the coverage
24  of Section 203.  *Padilla*, 429 F.3d at 919.  Private campaign literature is a ***private forum***, free from
    content control by the State.  In contrast, the California courts have long held that initiative
25  petitions are "***limited public forums***" ***with extensive content control exercised by the State***,
    including the requirement that such petitions include material provided by the State, such as the
26  Title and Summary and the WARNING TO VOTERS.  *See San Francisco 49ers*, 75 Cal.App.4th
    at 648(emphasis added) ("[I]t is ***not*** the traditional political speech of campaign literature, public
27  speeches, or demonstrations, or even public solicitation that is at issue herein.  ***Rather, the***
    ***challenge focuses on a specific instrument funded by the government [i.e., the Title and***
28  ***Summary] in order to convey information to the voters***.")  Clearly, *Padilla* applies to initiative
    measures, including the Title and Summary ***provided and funded by the State***.

1   distinguished these cases, it specifically did **not** do so on the basis that they involved initiative

2   petitions as opposed to recall petitions.  On the contrary, the court distinguished the cases simply

3   on the ground that the specific initiative schemes involved in those cases were much less stringent

4   than California's recall scheme, and involved less of an impact on the ultimate **content** of the

5   proposed petitions than California's recall scheme did.  *Padilla*, 429 F.3d at 917-18.  Needless to

6   say, this distinction has no application here, where California's initiative scheme mandates that a

7   critical portion of the petition's content – i.e., the Title and Summary -- be **drafted and funded** by

8   the County.[7]

9        Second, perhaps removing any doubt as to the fact that *Padilla* applies fully to initiative

10  petitions are the comments of Justice Canby in the dissenting opinion.  In several instances in that

11  opinion, Justice Canby spoke in of the majority opinion as applying to **"initiative and recall**

12  **petitions"** (*id.* at 924-26), stating that he disagreed with the opinion, in part, because of its broad

13  scope (*id.*).  Thus, this Justice clearly understood the opinion as applying not only to recall

14  petitions, but to initiative petitions as well.

15       In sum, there can be no doubt based on the rationale and broad language of the *Padilla*

16  opinion, and the jurisprudence on which it relies, that the case applies just as much to initiative

17  petitions as it does to recall petitions, and that it therefore applies here to invalidate the Initiative.

18  As stated by the Ninth Circuit in *Padilla*'s conclusion:

19

20  [7]   Thus, the *Melendez* Plaintiffs' attempts to distinguish *Padilla* are unavailing and represent a
    blatant attempt to obfuscate California initiative law.  On page 15 of the *Mendendez* Plaintiffs'

21  Motion for Preliminary Injunction, their statement that "the first time an elections official ever sees
    an initiative petition is after it has been privately circulated and it has been submitted for

22  verification of the signatures on it" (*Melendez* MPA at 15:9-11) is **demonstrably false**.  **Before** an
    initiative petition can ever be circulated among the voters it must be submitted to the arm of the

23  State, which then drafts a 500-word Title and Summary which is statutorily required to be on each
    page of the petition on which signatures are to be gathered and on the first page.  In addition, there

24  are **numerous** other State-required content that must be on each section of an Initiative petition
    prior to circulation.  *See* Elec. Code §§ 9101, 9109, 100, and 101.  Because of this extensive

25  regulation, initiative petitions are "limited public forums" regulated by the State.  *San Francisco
    49ers*, 75 Cal.App.4[th] at 648.  And if this required content is not placed on each section of the

26  Initiative, then the local agency may not take any action on the petition when it is turned it; under
    California law, defective petitions are a nullity and void for all purposes.  Finally, as *Padilla* noted,

27  the critical component under section 203 of the Voting Rights Act is whether the State "provides"
    material related to an election.  Clearly, at the very least, the Title and Summary is "provided" by

28  the State and "relates" to an election.  ***Indeed, the Title and Summary is provided before
    circulation can ever commence.***

1    "The purpose of the bilingual provisions of the [Voting Rights] Act is to end the

2    language disability of some citizens to full participation in the electoral process; and

3    to this end, the Act requires information relating to the electoral process to be

4    brought to their attention in both English and the minority language." *Zaldivar*, 780

5    F.2d at 833.  ***Holding that these bilingual provisions do not apply to recall***

6    ***petitions would deny minority language speakers the right to fully participate in***

7    ***the electoral process by depriving them of the ability to consider the written***

8    ***arguments for and against a particular recall target***.  *See id.*  Such a result runs

9    counter to the very purpose of Congress in remedying minority language

10   discrimination in voting.

11   *Id.* at 924.  And finally, because it is a ruling of the Ninth Circuit, *Padilla* must be enforced by the

12   district courts throughout the Circuit:

13   A district court judge may not respectfully (or disrespectfully) disagree with his

14   learned colleagues on his own court of appeals who have ruled on a controlling legal

15   issue, or with Supreme Court Justices writing for a majority of the Court.  Binding

16   authority within this regime cannot be considered and cast aside; it is not merely

17   evidence of what the law is.  Rather, case law on point is the law.  If a court must

18   decide an issue governed by a prior opinion that constitutes binding authority, the

19   later court is bound to reach the same result, even if it considers the rule unwise or

20   incorrect.

21   *Hart v. Massanari,* 266 F.3d 1155, 1170, (9th Cir. 2001).

22   **B.    The Balance of Hardships Weighs in Plaintiffs' Favor: Plaintiffs Will Be**

23   **Irreparably Harmed if Defendants are Permitted to Proceed to Place the**

24   **Initiative on the June Ballot; In Stark Contrast, Defendants and the *Melendez***

25   **Plaintiffs in the Related Case Will Suffer Virtually *No* Harm if They Are**

26   **Ordered to Re-Circulate the Initiative in Spanish.**

27   Unquestionably, Plaintiffs in this case will suffer irreparable injury if the *Melendez*

28   plaintiffs are successful in obtaining an order placing the Initiative on the June 2006 election ballot.

Because the Initiative and the Title and Summary were not presented to the public and circulated in Spanish, as well as English, thousands of insular Spanish speaking minorities were shut out of the circulation process and were unable to inform themselves as to the content and effect of the proposed Initiative.  The right to participate in the circulation process is at the core of the Initiative process.  *See Padilla*, 429 F.3d at 921-22 (emphasis added) (***"[I]n the First Amendment context, the right to vote is inextricably tied to the right to petition and petition signatures are treated the same as votes for constitutional purposes."***)  Additionally, because Plaintiffs could not understand the Initiative's purpose and effect because it was not presented and circulated in Spanish, Plaintiffs and thousands similarly situated were also shut out from mounting a counter-signature campaign authorized by Elections Code section 9602.  Thus, Plaintiffs were wholly denied their opportunity to exercise these First Amendment rights and were excluded from a vital aspect of the election process.  As stated by Plaintiff Buell:

> It is common knowledge throughout the State that through the circulation process, petition gatherers compile the list of names they obtain from circulating efforts for later use in a campaign.  They also register people to vote concurrently with the petition signature drive. . .  The petition proponents then use these names later in the campaign for targeted, partisan, get-out-the-vote drives and for direct mail and for other campaign activity that gives them a tremendous advantage during the election.  By not circulating the Initiative in Spanish, Spanish-speaking citizens were shut out of the circulation process, were not able to mount a "counter signature" campaign, were not able to register sympathetic voters, and were not able to compile a list of names of those who oppose the Initiative for use in the later campaign.

Buell Decl., ¶ 16.  These denials of First Amendment rights and violations of Section 203 of the Voting Rights Act unquestionably constitutes irreparable injury.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment Freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury"); *United States v. Metro Dade County* (S.D. Fla. 1993) 815 F.Supp. 1475, 1478 (***injunction issued to prevent violation of Section 203 of the Voting Rights Act***).  As stated by another District Court in an analogous case:

1    Hispanic Voters denied equal access to the federal process cannot collect damages

2    after trial for the denial of the right to vote  (*See Casarez v. Val Verde County (W.D.*

3    *Texas* 1997) 957 F.Supp. 847, 864-65 [granting preliminary injunction because

4    monetary damages could not redress Voting Rights Act violations].)  Moreover,

5    denial of equal access to the electoral process discourages future participation by

6    voters.  (*See, e.g., Gomez v. City of Watsonville* (9th Cir. 1988) 863 F.2d 1407, 1416,

7    n. 4 [discussing how voting discrimination may result in depressed voter

8    registration].)

9  *United States v. Berks County,* 250 F.Supp.2d 525, 540-41, (E.D. PA 2003) (emphasis added).)

10        Moreover, as the Central District recently held in canceling an election less than three

11  weeks before the election date, subjecting voters to an illegal election because of a violation of

12  Section 203 of the Voting Rights Act constitutes irreparable injury.  As Judge Klausner stated in

13  the *Imperial* case, "if the February election is allowed to proceed before this case is resolved,

14  Plaintiffs may be subject to an illegal election."  Ramirez Decl., ¶ 3 Ex. B, p. 89.  And because a

15  violation of the Voting Rights Act of 1965 constitutes, *a fortiari*, a violation of constitutional

16  voting and First Amendment rights, irreparable injury is established as a matter of law.  As Judge

17  Garcia of the Eastern District recently stated in issuing an injunction against an election that

18  violated the Voting Rights Act:  a violation of the Voting Rights Act "*implicates a fundamental*

19  *constitutional right that tips the balance of relative hardships in plaintiffs' favor.  The loss of a*

20  *fundamental constitutional right even for a short period of time is, per se, an irreparable harm*

21  *warranting injunctive relief.*"  *Badillo*, 1988 U.S. Dist. LEXIS 17601 at *24 (emphasis added).

22        In stark contrast, both the Defendants in this case and the Plaintiffs in the *Melendez* case

23  will suffer virtually *no harm* (aside from, perhaps, monetary costs), if this Court adheres to *Padilla*

24  and the Voting Rights Act and issues the injunction.  The *Melendez* Plaintiffs *can re-circulate the*

25  *Initiative in both English and Spanish and still be placed on a general or special election at a*

26  *future date*, pursuant to the provisions of the Elections Code.  There is *no* California Constitutional

27  right to have an initiative appear before the votes on any one particular election date – particularly

28  here when the Initiative was circulated in violation of the Voting Rights Act.  Moreover, language

1   translation companies are readily available (and indeed are used by the County itself to translate

2   ballot pamphlet materials) to quickly assist the *Melendez* Plaintiffs to promptly translate their

3   proposed Initiative prior to re-circulation.  Judge Klausner recognized this in the *Imperial* case

4   where he noted "as Defendants have stated in their own papers, enjoining the February 7 election

5   will not necessarily prevent the election from ever occurring.  According to the time line set forth

6   by Defendants, immediately starting the process anew would place the recall election sometime in

7   October."  Ramirez Decl., Ex. B, p. 89.

8           And finally, the *Melendez* Plaintiffs' bald claim that not ordering the Initiative on the June

9   ballot will result in the County Board of Supervisors somehow "mooting" their proposed Initiative

10  is nothing more than a blatant meretricious attempt at legerdemain.  The voters always retain the

11  power to "over-rule" the elected Board members by either mounting a referendum against any

12  General Plan the Board would adopt, or repealing and re-enacting a subsequent General Plan

13  through the Initiative process.[8]  Therefore the *Melendez* Plaintiffs will suffer absolutely ***no***

14  irreparable injury if this Court orders compliance with *Padilla* and the Voting Rights Act and

15  orders the *Melendez* Plaintiffs to re-submit and re-circulate the Initiative in Spanish and English.

16      **C.**      **The *Melendez* Plaintiffs' Continued Obfuscation  --  Applying *Padilla* to the**

17              **Present Case Would Not be "Retroactive".**

18          The *Melendez* Plaintiffs' claims that applying *Padilla* to the present case would somehow

19  constitute unlawful retroactive application is ***flat wrong*** on multiple fronts.  First, the *Padilla* case

20  was rendered on November 25, 2005 during the time when the *Meldendez* Plaintiffs were

21  circulating the Initiative.  Buell Decl. ¶ 5.  The *Melendez* Plaintiffs did not turn in the Initiative

22  until December and could have easily taken more time to circulate the Initiative in Spanish; indeed,

23  the *Melendez* Plaintiffs' ***had an additional 4 months to do so***.  Elec. Code § 9110.  ***Their***

24  ***intentional deviation from Padilla, and their failure to comply with the Voting Rights Act of***

25  ***1965 was self-induced and caused at their own peril***.

26          Second, according to the *Padilla* decision itself, the "rule" that was allegedly "established"

27

28  [8]    This does not include the Housing Element of the General Plan, which the voters may not amend or alter by way of the Initiative process, and which is one of the substantive State law defects permeating the Initiative.

1  by Padilla **has in fact been settled law since 1986** when the Ninth Circuit ruled in the *Zalvidar v.*

2  *City of Los Angeles* case.  The *Padilla* panel itself stated "In *Zaldivar*, the panel engaged in

3  reasoned deliberation and made a considered decision regarding whether the Voting Rights Act

4  applies to recall petitions.  In two pages of the opinion, the panel described Congress's intent in

5  amending the Voting Rights Act to include a minority language translation requirement, considered

6  the purpose of the Voting Rights Act, and whether the purposes was served in applying it to recall

7  petitions."  *Padilla*, 429 F.3d at 916.  And for the reasons articulated above, the *Padilla* rationale

8  extends to initiative petitions.  To the extent the *Melendez* Plaintiffs relied upon 10th Circuit

9  decisions to their detriment, and ignored binding Ninth Circuit decisional law, they did so at  their

10 own peril; under *Hart v. Massanari*, it is Ninth Circuit law that controls, not Tenth Circuit law.

11      Third, the *Melendez* Plaintiffs' self-styled retroactivity argument fails **for they are relying**

12 **on a test that is no longer applicable**.  *See Melendez* Plaintiffs' MPA at 17-18.  The three prong

13 test set forth in the *Melendez* Plaintiffs' MPA was first enunciated by the United States Supreme

14 Court in *Chevron Oil v. Huson* (1971) 404 U.S. 97-106.  Then, in *Harper v. Virginia Dept. of*

15 *Taxation*, 509 U.S. 86, (1993) the Supreme Court stepped away from its previously stated rule,

16 stating the Court "prohibit[s] the erection of temporal barriers to the application of federal law in

17 non-criminal cases," and "[w]hen this Court applies a rule of federal law to the parties before it,

18 that rule is the controlling interpretation of federal law and must be given full retroactive effect in

19 all cases still open to direct review and as to all events, regardless of whether such events predate

20 or postdate our announcement of the rule."  509 U.S. at 97.  In its reasoning, the Court explained,

21 "[i]n both civil and criminal cases, we can scarcely permit the substantive law to shift and spring

22 according to the particular equities of individual parties' claims of actual reliance on an old rule

23 and of harm from a retroactive application of a new rule."  *Id*.  The Ninth Circuit has followed the

24 rationale of *Harper*.  In *U.S. v. City of Tacoma*, 332 F.3d 574, (9th Cir. 2003), the Ninth Circuit

25 retroactively applied a 1939 interpretation of a statute enacted in 1901 to invalidate a 1921

26 condemnation proceeding.  In reasoning that has direct application here, the Ninth Circuit stated

27 that statutory interpretation ***"cannot be considered a change of operative law.  The theory of a***

28 ***judicial interpretation gives the meaning of the statute from its inception, and does not merely***

1   *give an interpretation to be used from the date of decision."* *Id.* at 580-81 (emphasis added).

2   Indeed, Judge Klausner used this same rationale to reject the very same "retroactivity argument"

3   advanced by the *Melendez* Plaintiffs here in the *Imperial* case.

4           Fourth, the *Melendez* Plaintiffs' argument that invalidation of the Initiative would "punish"

5   those who signed the Initiative is an odd twist of logic. *Melendez* Plaintiffs' MPA at 18. Their

6   argument that full participation of Spanish speaking citizens can occur at the election ignores the

7   fact that by failing to circulate the Initiative in Spanish, the *Melendez* Plaintiffs precluded Spanish

8   speaking voters from exercising their right to mount a counter-signature campaign, as authorized

9   by the Elections Code, and as guaranteed by the Constitution. More to the point, the argument

10  advanced by the *Melendez* Plaintiffs was advanced by the dissent in *Padilla*, and rejected by the

11  majority on the panel; this argument is therefore non-availing here.

12          Finally, the *Melendez* Plaintiffs' claim that no other initiative petitions have been circulated

13  in compliance with *Padilla*, and therefore, to "impose" *Padilla* would somehow be "retroactive" is

14  demonstrably false. Numerous initiative petitions are being circulated throughout the State in

15  compliance with *Padilla* in multiple languages. Ramirez Decl. Ex. A. For these reasons, the

16  *Melendez* Plaintiffs' retroactivity argument must be rejected.

17  **V.      CONCLUSION.**

18          Based on the foregoing, Plaintiffs respectfully request that this Court: (1) DENY the

19  *Melendez* Plaintiffs' request for an injunction placing the Initiative on any future ballot, and

20  (2) GRANT Plaintiffs' request for an injunction in the instant case precluding the Initiative from

21  being placed on any future ballot until the *Melendez* Plaintiffs re-submit and re-circulate the

22  Initiative in compliance with the Voting Rights Act of 1965.

23  Dated: March 17, 2006                          RUTAN & TUCKER, LLP
                                                    JOHN A. RAMIREZ
24                                                  MARK J. AUSTIN

25
                                                    By:/s/  John A. Ramirez
26                                                      John A. Ramirez
                                                        Attorneys for Plaintiffs
27                                                      ROSARIO MADRIGAL, SABAS RANGEL,
                                                        and MARIA BUELL
28

1

## **TABLE OF CONTENTS**

2

**Page**

3
4

I.       INTRODUCTION:  UNDER ON-POINT NINTH CIRCUIT LAW, THE
         INITIATIVE IS INVALID BECAUSE IT WAS NOT CIRCULATED IN
         SPANISH. ................................................................................................ 2

5

II.      STATEMENT OF FACTS. ...................................................................... 4

6
7

         A.     The Initiative Challenged Herein Would Effect Significant Changes
                to the County's General Plan, Including the Housing Element. ............ 4

8

         B.     Overview of the California Initiative Process. ..................................... 5

9

         C.     The Initiative, Including the Ballot Title and Summary, Was
                Prepared and Circulated in English Only, and Not In Spanish. ............ 8

10
11

         D.     Plaintiffs Are Limited-English County Voters Who Were Excluded
                from the Initiative Process. ................................................................ 9

12

                1.     Plaintiff Rosario Madrigal. .................................................... 9

13

                2.     Plaintiff Sabas Rangel. ........................................................... 9

14

                3.     Plaintiff Maria Buell. ...........................................................10

15
16

         E.     Although the County Elected to Halt Further Processing of the
                Initiative, The Proponents' Intent is to Place the Measure on the June
                Ballot. ...............................................................................................10

17

III.     STANDARD OF REVIEW. ....................................................................11

18

IV.      ARGUMENT. ........................................................................................12

19

         A.     Under the Ninth Circuit's Holding in *Padilla*, Plaintiffs Have a High
                Likelihood of Success on the Merits of Their Claim. ........................12

20

                1.     Section 203 of the Voting Rights Act. ....................................12

21
22

                2.     *Padilla* Holds that the Restrictions of Section 203 Apply to
                       Circulated Petitions in California. ..........................................13

23

                3.     *Padilla* Applies Squarely to This Case Involving an
                       "Initiative" Petition. ..............................................................16

24
25

                       a.     Padilla's Two-Pronged Section 203 Analysis Applies
                              With Full Force to Initiative Petitions. ........................16

26

                       b.     Other Aspects of *Padilla* Demonstrate Its Application
                              to Initiative Petitions. .................................................18

27

28

1

**Page**

2   B.   The Balance of Hardships Weighs in Plaintiffs' Favor: Plaintiffs Will
         Be Irreparably Harmed if Defendants are Permitted to Proceed to
3        Place the Initiative on the June Ballot; In Stark Contrast, Defendants
         and the *Melendez* Plaintiffs in the Related Case Will Suffer Virtually
4        *No* Harm if They Are Ordered to Re-Circulate the Initiative in
         Spanish. ...................................................................................................20

5

6   C.   The *Melendez* Plaintiffs' Continued Obfuscation  --  Applying
         *Padilla* to the Present Case Would Not be "Retroactive". ...................23

7   V.   CONCLUSION. ..........................................................................................25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker LLP
attorneys at law

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### FEDERAL CASES

4 *Allen v. State Board of Elections*,
        393 U.S. 544 (1969) ...................................................................................................15
5

*Arcamuzi v. Continental Air Lines, Inc.*,
6        819 F.2d 935 (9th Cir. 1987)......................................................................................11

7 *Badillo v. City of Stockton*,
        1988 U.S. Dist. LEXIS 17601 (E.D. Cal.)...................................................................11, 22
8

*Big Country Foods, Inc. v. Board of Education of Anchorage School District*,
9        868 F.2d 1085 (9th Cir. 1989).....................................................................................11

10 *Buckley v. American Const. Law Foundation*,
        525 U.S. 182 (1999) ...............................................................................................3, 17
11

*Casarez v. Val Verde County*,
12        957 F. Supp. 847 (W.D. Texas 1997)...........................................................................22

13 *Chevron Oil v. Huson*,
        404 U.S. 97-106 (1971) ...........................................................................................24
14

*Delgado v. Smith*,
15        861 F.2d 1489 (11th Cir. 1988)...................................................................................18

16 *Elrod v. Burns*,
        427 U.S. 347 (1976) ...............................................................................................21
17

*Gomez v. City of Watsonville*
18        863 F.2d 1407 (9th Cir. 1988).....................................................................................22

19 *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Automobile Truck Drivers*,
        415 U.S. 423, 94 S. Ct. 1113 (1974) ...........................................................................11
20

*Harper v. Virginia Department of Taxation*,
21        509 U.S. 86 (1993) .................................................................................................24

22 *Hart v. Massanari*,
        266 F.3d 1155 (9th Cir. 2001)....................................................................................20, 24
23

*Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*,
24        856 F.2d 1445 (9th Cir. 1988).....................................................................................11

25 *Montero v. Meyer*,
        861 F.2d 603 (10th Cir. 1988).....................................................................................18
26

*Padilla v. Lever*,
27        429 F.3d 910 (9th Cir. 2005).................1, 2, 3, 4, 11, 12, 13, 16, 17, 18, 19, 20, 22, 23, 24, 25

28 / / /

Rutan & Tucker LLP
*attorneys at law*

1                                                                                    **Page(s)**

2   *Rodeo Collection, Ltd. v. West Seventh,*
        812 F.2d 1215 (9th Cir. 1987)......................................................................11
3
    *Sierra On-Line, Inc. v. Phoenix Software, Inc.,*
4       739 F.2d 1415 (9th Cir. 1984)......................................................................11

5   *United States v. Berks County,*
        250 F. Supp. 2d 525 (E.D. PA 2003)...........................................................22
6
7   *United States v. Metro Dade County*
        815 F. Supp. 1475 (S.D. Fla. 1993)...................................................3, 17, 21

8   *United States v. Odessa,*
        833 F.2d 172 (9th Cir. 1987)........................................................................11
9
10  *U.S. v. City of Tacoma,*
        332 F.3d 574 (9th Cir. 2003).......................................................................24

11  *Zaldivar v. City of Los Angeles,*
        780 F.2d 823 (9th Cir. 1986).......................................................................15
12

13                                    **STATE CASES**

14  *Billig v. Voges,*
        223 Cal. App. 3d 962 (1990)....................................................................6, 7
15
16  *Clark v. Jordan,*
        7 Cal. 2d 248 (1936)..............................................................................6, 7

17  *DeVita v. Napa,*
        9 Cal. 4th 763 (1995).........................................................................17, 18
18
19  *Hebard v. Bybee,*
        65 Cal. App. 4th 1331 (1998).................................................................6, 7

20  *Imperial v. Castruita*
        CV 05-8940-RGK (CWx) (C.D. Cal. Jan. 17, 2006) ........................2, 3, 22, 23, 25
21
22  *LIFE Committee v. City of Lodi,*
        213 Cal. App. 3d 1139 (1989)...................................................................18

23  *Lungren v. Superior Court,*
        48 Cal. App. 4th 435 (1996)..................................................................5, 18
24
25  *Mervyn's v. Reyes,*
        69 Cal. App. 4th 93 (1998)....................................................................6, 7

26  *Myers v. Patterson,*
        196 Cal. App. 3d 130 (1987)..................................................................6, 7
27
28  *San Francisco 49ers v. Nishioka,*
        75 Cal. App. 4th 637 (1999).............................................................7, 18, 19

Rutan & Tucker LLP
*attorneys at law*

972/024930-0001
682401.04 a03/17/06                              -iv-

**Page(s)**

**FEDERAL STATUTES**

<u>Federal Rules of Civil Procedure</u>
    Rule 65 .................................................................................................................11

<u>Code of Federal Regulation</u>
    28 C.F.R., Part 55, App. (2005) ...................................................3, 13, 16
    28 C.F.R., Part 55.19(a) ...............................................................15, 17

<u>United States Code</u>
    42 U.S.C. section 1973 ...............................................................................11
    42 U.S.C. section 1973aa-1a ...............................................................1, 12
    42 U.S.C. section 1973aa-1a(a) .................................................................12
    42 U.S.C. section 1973aa-1a(b) .................................................................12
    42 U.S.C. section 1973aa-1a(c) .................................................................12
    42 U.S.C. section 1973aa-1a(b)(3)(B) ........................................................9
    42 U.S.C. section 1973aa-1a(b)(2)(A) ......................................................13

<u>Voting Rights Act of 1965</u>
    Section 203.........................................2, 3, 9, 12, 13, 14, 15, 16, 17, 18, 21, 22
    Section 203(b) ...........................................................................................12
    Section 203(c) ......................................................................................14, 16

**STATE STATUTES**

<u>California Election Code</u>
    Section 100..........................................................................................6, 19
    Section 101 ..................................................................................6, 18, 19
    Section 104..................................................................................................6
    Sections 9100 *et seq* ..............................................................................5, 13
    Section  9101 ........................................................................................6, 19
    Section 9102................................................................................................6
    Section 9103................................................................................................5
    Sections 9105(a) .....................................................................................5, 18
    Sections 9105(b)..................................................................................5, 6, 18
    Sections 9105(c)..................................................................................5, 6, 18
    Section 9107................................................................................................7
    Section 9108................................................................................................6
    Section 9109..............................................................................................19
    Section 9110........................................................................................6, 23
    Section 9111........................................................................................7, 10
    Section 9111(a) ..........................................................................................8
    Section 9113................................................................................................7
    Section 9114................................................................................................7
    Section 9115................................................................................................7
    Section 9115(f) ...........................................................................................7
    Section 9116................................................................................................7
    Section 9116(a) ..........................................................................................7
    Section 9116(b) ..........................................................................................7
    Section 9116(c) ..........................................................................................8

Rutan & Tucker LLP
*attorneys at law*

972/024930-0001
682401.04 a03/17/06

**Page(s)**

Section 9118................................................................................................................7
Section 9118(a)...........................................................................................................7
Section 9118(b)...........................................................................................................7
Section 9118(c)...........................................................................................................8
Section 9602.......................................................................................................17, 21
Sections 11000 *et seq* ...............................................................................................13
Section 11006............................................................................................................13
Sections 11020-11022...............................................................................................13
Sections 11040-11043.5............................................................................................13
Section 11041.....................................................................................................15, 17
Section 11042.....................................................................................................15, 17
Section 11101-11110.................................................................................................13
Sections 11220-11242...............................................................................................13

<u>California Government Code</u>
Section 65580...........................................................................................................4


**MISCELLANEOUS**

Ballot Box Navigator, Durkee (2003, Solano Press)...........................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rutan & Tucker LLP**
*attorneys at law*