1   OFFICE OF THE MONTEREY COUNTY COUNSEL
    CHARLES J. MCKEE (SBN 152458), COUNTY COUNSEL
2   LEROY W. BLANKENSHIP (SBN 065233), ASSISTANT COUNTY COUNSEL
    EFREN N. IGLESIA (SBN 71309), SENIOR DEPUTY COUNTY COUNSEL
3   168 W. ALISAL, 3RD FLOOR
    SALINAS, CA  93901-2680
4   Telephone:  (831) 755-5045
    Facsimile:  (831) 755-5283
5
    NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
6   STEPHEN N. ROBERTS (SBN 062538)
    NICOLE A. TUTT (SBN 179244)
7   50 CALIFORNIA STREET, 34TH FLOOR
    SAN FRANCISCO, CALIFORNIA 94111-4799
8   Telephone: (415) 398-3600
    Facsimile: (415) 398-2438
9   Email: montereycase@nossaman.com

10  NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
    JOHN J. FLYNN (SBN 076419)
11  18101 VON KARMAN AVENUE
    IRVINE, CA  92612-0177
12  Telephone: (949) 833-7800
    Facsimile: (949) 833-7878
13  Email: montereycase@nossaman.com

14  Attorneys for Defendants/Respondents
    BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY;
15  TONY ANCHUNDO, IN HIS CAPACITY AS MONTEREY COUNTY
    REGISTRAR OF VOTERS; AND THE COUNTY OF MONTEREY
16

17              UNITED STATES DISTRICT COURT

18              NORTHERN DISTRICT OF CALIFORNIA

19                  SAN JOSE DIVISION

20  WILLIAM MELENDEZ; KEN GRAY; JYL        ) Case No.: C 06-01730 JW
    LUTES; CAROLYN ANDERSON; AND           )
21  LANDWATCH MONTEREY COUNTY,             )   ASSIGNED FOR ALL PURPOSES TO:
                                           )        HON. JAMES WARE
22          Petitioners and Plaintiffs,    )
                                           ) DEFENDANTS' OPPOSITION TO
23      vs.                                ) APPLICATION FOR ISSUANCE OF
                                           ) TEMPORARY RESTRAINING ORDER AND
24  BOARD OF SUPERVISORS OF THE COUNTY )   PRELIMINARY INJUNCTION
    OF MONTEREY; TONY ANCHUNDO, IN HIS )
25  CAPACITY AS MONTEREY COUNTY            ) Date:   March 21, 2006
    REGISTRAR OF VOTERS; COUNTY OF         ) Time:   10:00 a.m.
26  MONTEREY; AND DOES 1 THROUGH 10,       ) Dept:   8
    INCLUSIVE,                             )
27                                         )
            Respondents and Defendants.    )
28  _____)

200358_2.DOC                                              Case No.: C 06-01730 JW
DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
                            PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

(Page)

1.  INTRODUCTION. ...................................................................................................1

2.  BACKGROUND. ....................................................................................................2

3.  THE INITIATIVE SHOULD NOT BE ON THE BALLOT BECAUSE OF ITS
    PROCEDURAL AND SUBSTANTIVE FLAWS ................................................5

4.  NUMEROUS FATAL DEFECTS IN PROPONENTS' CIRCULATION OF
    THE INITIATIVE PETITION SHOULD KEEP IT FROM THE BALLOT. ......6

    A.  Placing the Initiative on the Ballot Would Cause The County To Violate
        The Federal Voting Rights Act. ...............................................................6

        (1)  The Initiative Was Not Circulated With a Spanish Language
             Translation. ...................................................................................6

        (2)  Contrary to Plaintiffs' Assertions, The County Is Bound By
             Padilla. ..........................................................................................9

    B.  The Initiative Fails to Comply With Constitutional and Statutory
        Requirements That the Initiative Petition Contain the Full Text of the
        Proposed Ordinance. ..............................................................................11

    C.  The Petition Violates the "Single Subject Rule." ...................................13

5.  THE INITIATIVE IS RIFE WITH SUBSTANTIVE DEFECTS THAT
    RENDER IT VOID AS A MATTER OF LAW. ..................................................15

    A.  The Initiative Conflicts With State Law Governing Areas of Statewide
        Concern in at Least Three Different Ways. .............................................15

        (1)  The Initiative Conflicts With State Legislation Governing the
             Adoption and Amendment of Housing Elements. ...........................16

        (2)  The Initiative Conflicts With State Law Governing Annexations of
             County Territory. ..........................................................................18

        (3)  The Initiative's Development Exclusion Categories Conflict With
             the Subdivision Map Act. ..............................................................20

6.  THIS CASE WAS PROPERLY REMOVED TO FEDERAL COURT. ..............23

7.  CONCLUSION. .....................................................................................................24

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**(Page)**

**Cases**

*Alliance for a Better Downtown Millbrae v. Wade*

108 Cal. App. 4th 123 (2003) ................................................................. 11

*Beck Dev. Co. v. S. Pac. Transportation Co.*

44 Cal. App. 4th 1160, 1199 (1996) ....................................................... 21

*Breuer v. Jim's Concrete of Brevard, Inc.*

538 U.S. 691 (2003)......................................................................... 23, 24

*Brosnahan v. Brown*

32 Cal. 3d 236 (1982) ............................................................................ 14

*Bruce v. City of Alameda*

166 Cal. App. 3d 18 (1985) .................................................................... 17

*Buena Vista Gardens Apartments Assn. v. City of San Diego Planning Dept.*

175 Cal. App. 3d 289 (1985) .................................................................. 17

*Building Industry Assn. v. City of Livermore*

45 Cal. App. 4th 719 (1996) .................................................................. 16

*Building Industry Assn. v. City of Oceanside*

27 Cal. App. 4th 744 (1994) .................................................................. 16

*California Trial Lawyers Association. v. Eu*

200 Cal. App. 3d 351 (1988) .................................................................. 15

*Chemical Specialties Manufacturers Assn. Inc. v. Deukmejian*

227 Cal. App. 3d 663 (1991) .................................................................. 14

*Citizens for Responsible Behavior v. Superior Court*

1 Cal. App. 4th 1013 (1991) .................................................................. 1, 5

*City of West Hollywood v. Beverly Towers, Inc.*

52 Cal. 3d 1184 (1991) .......................................................................... 21

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES (cont'd)

(Page)

*Committee of Seven Thousand v. Superior Court*
  45 Cal. 3d 491 (1988) ................................................................................................ 16

*County of Fresno v. Malaga County Water District*
  100 Cal. App. 4th 937 (2002) ..................................................................................... 19

*De Vita v. County of Napa*
  9 Cal. 4th 763, 776 (1995) .......................................................................................... 16

*deBottari v. City Council*
  171 Cal. App. 3d 1204 (1985) ...................................................................................... 5

*Farley v. Healey*
  67 Cal. 2d 325, 327 (1967) ........................................................................................... 5

*Ferrini v. City of San Luis Obispo*
  150 Cal. App. 3d 239 (1983) ...................................................................................... 20

*Friends of Lake Arrowhead v. Bd. of Supervisors*
  38 Cal. App. 3d 497, 508 (1974) ................................................................................ 23

*Gaus v. Miles*
  980 F.2d 564 (9th Cir. 1992) ...................................................................................... 23

*Golden State Homebuilding Assocs. v. City of Modesto*
  26 Cal. App. 4th 601 (1994) ...................................................................................... 22

*Great Western Sav. & Loan Assn. v. City of Los Angeles*
  31 Cal. App. 3d 403 (1991) ........................................................................................ 22

*Harbor v. Deukmejian*
  43 Cal. 3d 1078 (1987) ............................................................................................... 14

*Hebard v. Bybee*
  65 Cal. App. 4th 1331 (1998) ..................................................................................... 12

*Legislature v. Deukmejian*
  34 Cal.3d 658 (1983) .................................................................................... 2, 16, 17, 18

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES (cont'd)

**(Page)**

*Madrigal v. County of Monterey*
No. C06-01407 (N.D. Cal. 2006).............................................................................. 1, 9

*Mervyn's v. Reyes*
69 Cal. App. 4th 93 (1998) ........................................................................... 1, 5, 12, 13

*Nelson v. Carlson*
17 Cal. App. 4th 732 (1993) ........................................................................................ 12

*Padilla v. Lever*
429 F.3d 910 (9th Cir. 2005) ................................................................................ passim

*Saenz v. Roe*
526 U.S. 489 (1999).................................................................................................... 15

*Save Stanislaus Area Farm Economy v. Bd. of Supervisors*
13 Cal. App. 4th 141 (1993) ......................................................................................... 6

*Senate of the State of California v. Jones*
21 Cal. 4th 1142 (1999) ................................................................................................ 2

*Sexson v. Servaas*
33 F.3d 799, 801 (7th Cir. 1994) ................................................................................ 24

*Shamrock Oil & Gas Corp. v. Sheets*
313 U.S. 100 (1941).................................................................................................... 23

*Smith v. Winter*
717 F.2d 191, 194 (5th Cir. 1983) .............................................................................. 24

*Wachtler v. Cuomo*
1991 U.S. Dist. LEXIS 17069 at *10.......................................................................... 24

*Yoshisato v. Superior Court*
2 Cal. 4th 978 (1992) .................................................................................................. 12

*Youngblood v. Board of Supervisors*
22 Cal. 3d 644 (1978) ............................................................................................ 21, 22

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES (cont'd)

(Page)

*Zaldivar v. City of Los Angeles*
  270 F.2d 823 (9th Cir. 1986) ............................................................. 10, 24


**Statutes and Regulations**


28 C.F.R. § 55 ............................................................................................. 7

28 C.F.R. § 55.19 ......................................................................................... 9

28 C.F.R. 51 ................................................................................................. 9

28 U.S.C. § 1443 .................................................................................. 23, 24

42 U.S.C. § 1973 .................................................................................... 6, 9

Cal. Elec. Code § 9014 .............................................................................. 11

Cal. Elec. Code § 9101 .............................................................................. 11

Cal. Elec. Code § 9111 ................................................................................ 4

Cal. Elec. Code § 9114 ................................................................................ 8

Cal. Elec. Code § 9118 ................................................................................ 4

Cal. Elec. Code § 9147 .............................................................................. 11

Cal. Elec. Code § 9201 .............................................................................. 11

Cal. Elec. Code § 9238 .............................................................................. 11

Cal. Elec. Code, § 9105 ............................................................................... 8

Cal. Gov. Code § 56000 ............................................................................ 19

Cal. Gov. Code § 56001 ............................................................................ 19

Cal. Gov. Code § 56054 ............................................................................ 19

Cal. Gov. Code § 56301 ............................................................................ 19

Cal. Gov. Code § 56325 ............................................................................ 19

Cal. Gov. Code § 56375 ............................................................................ 19

Cal. Gov. Code § 56378 ............................................................................ 19

# TABLE OF AUTHORITIES (cont'd)

**(Page)**

Cal. Gov. Code § 56425 ................................................................................................ 19

Cal. Gov. Code § 57000 ................................................................................................ 19

Cal. Gov. Code § 57026 ................................................................................................ 20

Cal. Gov. Code § 57075 ................................................................................................ 20

Cal. Gov. Code § 65580 ................................................................................................ 16

Cal. Gov. Code § 65581 ................................................................................................ 17

Cal. Gov. Code § 65585 ................................................................................................ 17

Cal. Gov. Code § 65588 ................................................................................................ 17

Cal. Gov. Code § 65961 ................................................................................................ 22

Cal. Gov. Code § 66410 .................................................................................................. 4

Cal. Gov. Code § 66473 ................................................................................................ 21

Cal. Gov. Code § 66498 ................................................................................................ 22

Voting Rights Act § 1973 ......................................................................................... Passim


**Other Authorities**


63 Ops. Cal. Atty. Gen. 601, 602 (1980) .................................................................... 23

63 Ops. Cal. Atty. Gen. 64, 65 (1980) ........................................................................ 23

64 Ops. Cal. Atty. Gen. 549, 550 (1981) .................................................................... 23

Cal. Const. art. II, § 8 ................................................................................................... 14

Cal. Const. art. IV, § 9 ............................................................................................ 11, 12

Cal. Const. art. XI, § 7 .................................................................................................. 16

Cal. Const., art. XI, § 7 ................................................................................................. 16

Cal. Gov. Code § 66474 .......................................................................................... 21, 22

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1    **1.     INTRODUCTION.**

2         In this case, the Court must determine whether a palpably defective and demonstrably void

3    initiative measure should be placed on the ballot.  This is not a close case; the Initiative's procedural

4    flaws alone so upended the electoral process that the County had a *ministerial* (that is, non-

5    discretionary) duty to reject the measure.  *See Mervyn's v. Reyes*, 69 Cal. App. 4th 93 (1998).

6         To date, Plaintiffs have not rebutted most of the many problems with the Initiative, but primarily

7    have seen fit only to recite the mantra of deference to the "sacred" prerogatives of the initiative process.

8    *That deference does not apply here.*  As one court noted, to apply the usual rule of deference in a case

9    like this would only result in "the useless expenditure of money and creation of emotional community

10   divisions" and would "require the meaningless charade of a pointless election." *Citizens for Responsible*

11   *Behavior v. Superior Court*, 1 Cal. App. 4th 1013, 1023 (1991).

12        There are multiple reasons to deny the requested relief:

13        **(a)     The Initiative Petition Was Not Circulated in Spanish, Resulting in Probable**

14   **Violations of the Federal Voting Rights Act:**  The Ninth Circuit very recently held that failure to

15   circulate a recall petition in the minority language constitutes a violation of § 203 of the Voting Rights

16   Act of 1964.  *See Padilla v. Lever*, 429 F.3d 910 (9th Cir. 2005) (petition for rehearing en banc filed).

17   The proponents of the Initiative petition failed to circulate the Initiative petition in Spanish.  On the basis

18   of that potential violation, three voters of the County have filed an action in declaratory and injunctive

19   relief against the County.  *See Madrigal v. County of Monterey*, No. C06-01407 (N.D. Cal. 2006).  That

20   action is related and pending in this Court.

21        **(b)     The Initiative Did Not Contain the Full Text of the County Land Use Documents It**

22   **Purports to Amend, Violating the "Full-Text Rule":**  Because it has jurisdiction to consider the

23   Federal Voting Rights act issues, this Court has concurrent jurisdiction to consider state law issues, the

24   first being the "Full Text Rule."  Compliance with the "Full-Text Rule" has been held essential to the

25   integrity of elections in California.  *Mervyn's*, 69 Cal. App. 4th at 101.  The Initiative did not contain the

26   full text of the documents it purports to amend -- thereby precluding full disclosure of the Initiative's

27

28

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1  effects, and foreclosing informed decision-making by the electorate.  On that basis alone, the County

2  had a ministerial duty to reject the Initiative. *Id.,* at 104-105.

3         **(c)**    **The Initiative Violates the Single-Subject Rule by Containing a Right-of-First**

4  **Refusal Clause That Is Unrelated to the Initiative's Growth-Control Goals:**  The Initiative's right-

5  of-first refusal for residents to purchase new affordable housing has nothing to do with the Initiative's

6  growth control objectives.  The joining of such disparate enactments violates the Single-Subject Rule.

7  *Senate of the State of California v. Jones*, 21 Cal. 4th 1142, 1158 (1999).

8         **(d)**    **The Initiative Directly Collides With the State's Legislative Scheme for Addressing**

9  **Housing Needs in California -- an Area of Statewide Concern:**  The Legislature has enacted a

10  comprehensive statutory scheme for the amendment of housing elements.  The Initiative nevertheless

11  purports to amend the County Housing Element and subject all future amendments of that document to a

12  vote of the electorate -- a process that conflicts with the State statutory scheme.  The Initiative therefore

13  would force the County to violate State law.  On that basis, the Initiative is void ab initio.

14         **(e)**    **The Initiative Intrudes on State Law Governing the Annexation of Unincorporated**

15  **Territories:**  The Initiative is also void because it subjects development outside of city boundaries and

16  defined community area urban limit lines to a vote of the County electorate, making the movement of

17  city boundaries and annexation of unincorporated territories subject to County voters.  That conflicts

18  with the carefully crafted state scheme for annexing unincorporated land -- an area of statewide concern.

19         **(f)**    **The Initiative Conflicts With the Subdivision Map Act:**  The Initiative exempts

20  vesting tentative maps -- and only vesting tentative maps -- from its growth control restrictions.  The

21  scope of the Initiative's protections ignores the broader legislative protections afforded by the

22  Subdivision Map Act.  The Initiative conflicts with state subdivision law, and impermissibly intrudes

23  into areas of statewide concern, rendering the Initiative void.

24  **2.**    **BACKGROUND.**

25      **A.**    **Stated Goals of the Initiative.**

26      The underlying Initiative measure to impose an amendment of the Monterey County General

27  Plan, Including the North County Land Use Plan ("Initiative"), is intended to regulate growth in the

28

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1    County by amending the County General Plan ("General Plan").  The stated goals are:  (a) to subject

2    further development in the County to a vote of the County electorate; (b) to increase the proportion of

3    affordable housing units; (c) to ensure adequate local police and fire protection services for new

4    development; (d) to improve traffic circulation; and (e) to ensure adequate water supply for new

5    development.  *See* Initiative, at 1-2, attached as Exhibit A to the Declaration of Tony Anchundo

6    ("Anchundo Decl.").

7        **B.**    **New, Restrictive, Land Use Classifications.**

8          To achieve its goals, the Initiative creates new "Major Land Use Classifications" consisting of:

9    (a) cities; (b) community areas; (c) rural lands; (d) agricultural lands; and (e) public lands.  The

10   community areas identified in the Initiative are:  (a) Pajaro; (b) Castroville; (c) Boronda; (d) Chualar;

11   and (e) Fort Ord ("Community Areas").  *Id.,* at 3.  The Initiative's designation of the Community Areas

12   purports to "supersede any undeveloped Areas of Development Concentration" described in the existing

13   Countywide Land Use Plan, the existing Area Plans, and the certified Land Use Plan contained in the

14   County Local Coastal Plan.  *Id.,* at 4.  The Initiative sets up urban limit lines within the Community

15   Areas and purports to restrict development outside those boundaries and the boundaries of incorporated

16   cities ("Development Restrictions").  *Id.,* at 4-6.

17       **C.**    **Development Restrictions.**

18         The Development Restrictions are generally set forth in Policy 26.1.4, which concentrates urban

19   development in the confines of the urban limit lines defined for the Community Areas of Boronda,

20   Castroville, Pajaro, Chualar, and Fort Ord ("Concentration Areas"), if such development is phased to

21   ensure sufficient road capacity and an adequate water supply.  *Id.,* at 6.  Subdivision of areas outside the

22   Concentration Areas cannot take place, unless:  (a) the subdivision is limited to agricultural uses,

23   resource protection or community buffers; (b) the development is pursuant to an approved vesting

24   tentative map, development agreement, or other form of vested right; (c) the development is a residential

25   cluster development meeting certain provisions enumerated in the Policy.  *Id.,* at 6-7.  Voters must

26   approve development outside the Concentration Areas that does not conform to the above.  *Id.,* at 5.

27       **D.**    **Exceptions to the Development Restrictions.**

28

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1    The Initiative generally excepts certain categories of development from its proposed restrictions.

2    Among the excepted categories are:  (a) projects subject to vested development rights or a development

3    plan approved by the voters; (b) undeveloped "lots of record," (i.e., lots that are legally eligible for

4    conveyance or construction of improvements under the Subdivision Map Act, Government Code §

5    66410, et seq. ("Map Act"). *Id.,* at 5-6, 7.

6         **E.     Amendments to the Housing Element.**

7         In addition to the development restrictions, the Initiative seeks to amend the County Housing

8    Element and other components of the General Plan that pertain to affordable housing. *See, e.g.,*

9    Initiative at 52, et seq.  Among other things, the Initiative contains aggressive affordable housing

10   requirements -- in some cases requiring 40 percent of new residential units to be affordable in

11   perpetuity. *Id.,* at 59.

12        **F.     County Actions on the Proposed Initiative.**

13        On January 31, 2006, the County Board of Supervisors ("Board") ordered a report on the impacts

14   and effects of the Initiative, pursuant to Elections Code §§ 9118, subdivision (c), and 9111 ("Report").

15   Anchundo Decl. at 1:16-19.  County staff prepared a report which outlined numerous procedural and

16   substantive flaws with the Initiative:  (1) the Initiative was not circulated in compliance with the Federal

17   Voting Rights Act; (2) the Initiative would violate State legislation governing the adoption and

18   amendment of housing elements; (3) The Initiative conflicted with State law governing the annexation

19   of unincorporated territories; (4) the Initiative's development exclusion categories conflicted with the

20   Map Act; (5) the Initiative was inconsistent with the County's General Plan; (6) the Initiative failed to

21   comply with the statutory "Full Text Rule"; (7) the Initiative violated the "Single Subject Rule"; (8) The

22   Initiative is void insofar as it is not fiscally responsible; (9) the Initiative is void insofar as it exceeds the

23   requirement that it enact legislative acts; and (10) the Initiative's right of first refusal with respect to the

24   offering of new housing units may be constitutionally invalid. *See generally* Report, attached as Exhibit

25   B to Anchundo Decl.  Following a public hearing on February 28, 2006, the Board voted not to place the

26   Initiative on the ballot, given its myriad flaws.  Anchundo Decl. at 1:20-21.

27

28

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

3.  **THE INITIATIVE SHOULD NOT BE ON THE BALLOT BECAUSE OF ITS PROCEDURAL AND SUBSTANTIVE FLAWS**

Where an initiative petition does not substantially comply with federal or state election laws, a governmental agency has a "ministerial duty" to reject the initiative. *Mervyn's* at 104-105. The reason for such a standard is clear: The election procedural requirements are designed to "protect registered voters from confusing or misleading information, so as to guarantee the integrity of the process." *Id.* Where the election procedures are not properly followed, the electorate is deprived of participation, and the integrity of the democratic process is upended.

The Initiative failed to comply with the Voting Rights Act of 1964, as interpreted by the Ninth Circuit in *Padilla*, 429 F.3d 910, because it was not circulated in Spanish -- the minority language of the County. Also, the Initiative did not comply with two critical sections of the California State Constitution and the State Elections Code -- the Full Text Rule and the Single Subject Rule.

Even putting aside these fatal *procedural* flaws of the Initiative, it is settled that a court may uphold a local government's decision not to place an invalid measure on the ballot due to *substantive* flaws in the measure. *See, e.g., Farley v. Healey*, 67 Cal. 2d 325, 327 (1967); *Citizens for Responsible Behavior*, 1 Cal. App. 4th at p. 1021; *deBottari v. City Council*, 171 Cal. App. 3d 1204 (1985). While the usual rule is to err in favor of the democratic process by presenting a substantive challenge to a measure after, as opposed to before, an election, ***the rule of deference does not apply where a measure is clearly invalid***. In such circumstances, no purpose is served by submitting the measure to the voters, only to be faced with a certain post-election nullification by the courts. As one court noted:

> Invalidity, like pregnancy, admits of no half-measures. If an ordinance proposed by initiative is invalid, routine deference to the process will often require the charade of a pointless election.

*Citizens for Responsible Behavior*, 1 Cal. App. 4th at 1023. Indeed, to subject an inherently flawed initiative to the electoral process results in a waste of governmental and judicial resources, in addition to furthering community division and discord over the initiative's issues:

> [I]f an initiative ordinance is invalid, no purpose is served by submitting it to the voters. The costs of an election -- and of preparing the ballot material necessary for each measure -- are far from insignificant. [Citation.] Proponents and opponents of a measure may both expend large

1    sums of money during the election campaign.  Frequently, the heated
     rhetoric of an election campaign may open permanent rifts in a
2    community.  That the people's right to directly legislate through the
     initiative process is to be respected and cherished does not require the
3    useless expenditure of money and creation of emotional community
     divisions concerning a measure which is for any reason legally invalid.
4    *Id.*

5        To make its argument that the County somehow had the ministerial duty to place the Initiative on

6    the ballot, notwithstanding its fatal flaws, the petitioners rely heavily on *Save Stanislaus Area Farm*

7    *Economy v. Bd. of Supervisors*, 13 Cal. App. 4th 141 (1993).  That case is not instructive here; the court

8    in *Save Stanislaus* was not faced with federal law defects or a procedurally defective measure under

9    state law.  Indeed, the holding of that case presupposes a valid measure.  *See Save Stanislaus*, 13 Cal.

10   App. 4th at 149.  By contrast, as demonstrated below, the Initiative here failed to pass muster under the

11   federal Voting Rights Act, as interpreted by the Ninth Circuit in *Padilla*; and it fails to comply with the

12   California Elections Code.  In any event, even the state court in *Save Stanislaus* made clear that the

13   courts retain jurisdiction to review and uphold a local government's decision to keep even a duly

14   certified initiative measure off the ballot.  *See id.,* at 150 ("The trial court has discretion whether to

15   entertain preelection review of a qualified initiative.").

16   **4.    NUMEROUS FATAL DEFECTS IN PROPONENTS' CIRCULATION OF THE**

17   **INITIATIVE PETITION SHOULD KEEP IT FROM THE BALLOT.**

18       **A.    Placing the Initiative on the Ballot Would Cause The County To Violate The**

19       **Federal Voting Rights Act.**

20           **(1)    *The Initiative Was Not Circulated With a Spanish Language Translation.***

21       The Ninth Circuit recently held that failure to circulate a recall petition in Spanish violated the

22   Voting Rights Act of 1964 ("FVRA").  *Padilla*, 429 F.3d 910.  FVRA § 203 states:

23           Whenever any State or political subdivision subject to the
             prohibition of subsection (b) of this section provides any
24           registration or voting notices, form, instructions, assistance, or
             other materials or information relating to the electoral process,
25           including ballots, it shall provide them in the language of the
             applicable minority group as well as in the English language.
26
     42 U.S.C. § 1973aa-1a(c).
27

28
DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1       Under the applicable federal regulations, the County is "subject to the prohibition of subsection

2   (b)." 28 C.F.R. § 55, App. (2005) (identifying the County as being subject to the multilingual

3   requirements of § 203, and in particular the Spanish heritage requirements).  The obligations thereby

4   imposed on counties such as Monterey are further expounded in the regulations as follows:

5               The requirements of ... 203(c) apply with regard to the provision
            of "any registration or voting notices, forms, instructions,
6               assistance or other materials or information relating to the electoral
            process, including ballots." ...  Accordingly, the quoted language
7               should be broadly construed to apply to all stages of the electoral
            process, from voter registration through activities related to
8               conducting elections, including the issuance, at any time during the
            year, of notifications, announcements, or other informational
9               materials concerning the opportunity to register, the deadline for
            voter registration, the time, places and subject matters of elections,
10              and the absentee voting process.

11  
12  28 C.F.R. 55.15.  Pursuant to these provisions, "other materials" should be conveyed in Spanish, in

13  addition to English, so that all the electorate may participate effectively in the process.

14      Although involving a recall petition, *Padilla* provides good guidance concerning the

15  interpretation of § 203 in the context of initiative petitions such as this one.  *Padilla*, 429 F.3d at 910.

16  First, the court will inquire whether the petition is of the type of "materials or information relating to the

17  electoral process" under § 203.  Second, the court will ask if the petition is of the type of material or

18  information provided by the State.  *Id.*, at 919.  Applying these rules, the *Padilla* court determined that

19  "section 203 of the Voting Rights Act applies to all recall petitions circulated pursuant to California

20  law." *Id.*, at 924.  While prior to the *Padilla* decision the County would not have reached the same

21  conclusion, *Padilla's* reasoning suggests that initiative petitions are subject to the same requirement, for

22  two reasons.

23      First, *Padilla* used a plain language analysis to find a recall petition "relating to the electoral

24  process" because the "election itself is merely the culmination of the electoral process" and recall

25  petitions "clearly have some 'bearing or concern' and are 'connected with' an election."  *Id.*, at 919.

26  *Padilla* also considered the fact that the Attorney General's definition of "written materials" specifically

27  included petitions.  *Padilla*, 429 F.3d at p. 919.  Here, similarly, the Initiative's sole purpose was to

28  

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1   trigger an election on the issues it contained.  In an ordinary initiative case, once sufficient signatures are

2   gathered, the County must place the initiative on an electoral ballot, if it does not actually adopt the

3   provisions of the initiative in its entirety.  Therefore, the Initiative relates to the electoral process.

4          Second, *Padilla* concluded that the second prong of the test was satisfied because the recall

5   petition was "provided by" the county elections department, within the meaning of § 203, and that the

6   "broad construction requirements" for the FVRA's "remedial provisions militate in favor of a

7   conclusion that there was sufficient state involvement to trigger the bilingual requirements." *Id.,* at 922.

8   The court described the many ways in which recall petitions in California "are subject to extensive

9   regulations that go beyond imposing mere ministerial duties upon elections officials," including, for

10  example, the fact that the county elections department "has the authority and obligation to authorize and

11  approve the form and content of proposed recall petitions, verif[y] collected signatures, and set election

12  dates;" and the fact that "[n]o signatures may be collected on a recall petition unless and until the . . .

13  [c]ounty [e]lections department notifies the petition's proponents that the form and wording of the

14  proposed petition comply with the Elections Code." *Id.*

15         Similarly, the County initiative process imposes obligations on County election officials that are

16  beyond mere ministerial duties.  For example, the California Elections Code directs a county to prepare

17  an impartial ballot title and summary (Cal. Elec. Code, § 9105(b); publish and/or post the ballot title and

18  summary (content is non-ministerial) (*id.*, § 9105(b)) and append the title and summary on each section

19  of the petition and at the top of all pages of the initiative on which signatures are gathered (*id.*, §

20  9105(c).)  Finally, the County registrar of elections must examine the signatures gathered by the

21  initiative proponents, and determine that they satisfied applicable rules as to validity and number (*id.*, §

22  9114).  This type of government involvement in the initiative process is nearly identical to that which

23  caused the *Padilla* court to conclude that the petition was "provided by" the county elections

24  department, within the meaning of § 203, and impels a similar conclusion here.

25

26

27

28
DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1    Accordingly, the Initiative process likely violated the Voting Rights Act under the Ninth

2 Circuit's interpretation. The Board acted correctly in not proceeding.[1]

3              **(2)     *Contrary to Plaintiffs' Assertions, The County Is Bound By Padilla.***

4         Plaintiffs say that no court has ever held that FVRA applies to privately-circulated initiative

5 petitions. While *technically* true, *Padilla's* holding that FVRA applied to recall petitions was based in

6 no small measure on the fact that the U.S. Attorney General defined "written materials" to include

7 petitions. The Attorney General did not limit that definition to recall petitions. *See* 28 C.F.R. § 55.19

8 (a). Furthermore, the dissent in *Padilla* had no doubt that the majority's conclusion required **all**

9 petitions in the affected counties to be translated: "[A]pplication of § 1973aa-1a(c) of the Voting Rights

10 *Act* to initiative *or* recall petitions is inherently perverse ..." *Id.* at 924 (Canby, J. dissenting) (emphasis

11 added). Other reasoning in *Padilla* seems to apply to initiatives as well as recalls. The County seems to

12 be bound by the reasoning as well as the holding of *Padilla*.

13         Plaintiffs also make much of the fact that the Ninth Circuit's ruling in *Padilla* is in conflict with

14 the rulings of two other circuits on the issue. That much is obvious, and was acknowledged by the

15 majority in *Padilla*, which went to great lengths to explain why it believed that the Tenth and Eleventh

16 Circuits were wrong. 429 F.3d at 918. Indeed, as Plaintiffs have noted, petitions for rehearing *Padilla*

17 en banc have been filed. But those petitions have not been granted, and until they are, *Padilla* is the law

18 of this Circuit, which must be followed by the County. Indeed, even ***before*** the Board voted to reject

19 Plaintiffs' petition, it had already been served with the *Madrigal* suit, alleging that the County had

20 _____

21 [1] The court should be aware that even if this initiative measure were to be placed on the ballot
   by either the Board of Supervisors or the Court, the measure still might be subject to § 5 of the
22 FVRA. 42 U.S.C. § 1973c. Under that provision, no change affecting voting is enforceable until
   it is pre-cleared by the Department of Justice ("DOT") and finally adopted. Some of the
23 provisions in this Initiative might be deemed as affecting voting, and therefore might be subject
   to pre-clearance. With regard to the Initiative, "final adoption" would be when the County
24 Board of Supervisors calls the election and sets the Initiative forth on the ballot. The DOJ is
   required to interpose an objection within 60 days of a submitted change affecting voting,
25 pursuant to 28 CFR 51.9(a). It is possible that a refusal to pre-clear might come in after the
   matter is already on the ballot or, due to delays on the part of DOJ, even after the time it is voted
26 on by the electorate. Failure to comply with the requirements of § 203 might be grounds for
   DOJ to reject pre-clearance.
27

28
   DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
                          PRELIMINARY INJUNCTION

1    already violated *Padilla* by allowing the signature-gathering process to have taken place without the

2    requisite Spanish translation.   Plaintiffs' preference for the reasoning of the Tenth and Eleventh circuits

3    over that of the Ninth might be useful upon further review of *Padilla*, but they are wasted here.

4           Insofar as Plaintiffs characterize *Padilla* as announcing a new interpretation of FVRA that

5    should not be applied retroactively, they misconstrue the court's opinion.  The *Padilla* court did not

6    purport to create new law.  Rather, the court made clear that it was following *Zaldivar v. City of Los

7    Angeles*, 270 F.2d 823 (9th Cir. 1986), where the court had already "engaged in reasoned deliberation

8    and made a considered decision regarding whether the Voting Rights Act applies to recall petitions,"

9    which the *Padilla* court was "not persuaded to depart from."  *Padilla, supra*, at pp. 916-917.  Plaintiffs'

10   arguments on retroactivity are unavailing for another reason:  *Padilla* became the law of this Circuit on

11   November 23, 2005, before the Board rejected the Initiative Petition on February 28, 2006.  The County

12   therefore had no choice but to comply.

13          Plaintiffs make the perplexing argument that accepting their defective petition would actually

14   further, rather than frustrate the purposes of FVRA, because rejecting the petition denied the rights of

15   the 15,000 signers who "wanted to participate in the electoral process by exercising their constitutionally

16   protected right of initiative."  *Plaintiffs' MPA*, at 18:19-21.  This is fallacious circular reasoning of the

17   first order.  The very point of FVRA and of *Padilla* is to ensure that minority language petition signers

18   actually understand what they are signing and voting for.  Where, as here, the petition was not presented

19   to them in Spanish, there is no certainty that the Spanish-speakers among them understood what they

20   signed, and there is no certainty that in ***this instance*** they "wanted to participate in the electoral process

21   by exercising their constitutionally protected right of initiative."

22          Finally, Plaintiffs point to initiative petitions in other jurisdictions that have not been circulated

23   in Spanish.  The County understands that the changes that appear to be effected by *Padilla* are

24   unexpected and difficult, but it must follow the current law as it understands it.  Defendants will have to

25   leave it to other jurisdictions to analyze their own legal issues.  That some other jurisdiction might not

26   be acting properly is not a persuasive reason for this Court to ignore the law.

27

28

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1

**B.**   **The Initiative Fails to Comply With Constitutional and Statutory Requirements**

2

**That the Initiative Petition Contain the Full Text of the Proposed Ordinance.**

3

The Initiative purports to amend the County General Plan, and other County land use documents,

4

such as the County Area Plans and the Land Use Element of the Local Coastal Program. *See* Initiative

5

at 2. Yet, the Initiative did not contain the full text of the documents it purports to amend. Declaration

6

of Alana Knaster ("Kaster Decl.") at 1:7-11. The Initiative therefore does not comply with the "full text

7

requirement" of the California Elections Code.

8

When the proponents submitted the Initiative Petition to the County elections official on

9

December 12, 2005, they did not attach the existing General Plan or the existing area plans along with

10

the Initiative and signatures for certification. Knaster Decl. at 1:7-9. Both of those omitted plans are

11

referred to in, and affected by, the Initiative petition. Since what was delivered to the County was

12

supposed to be the same as what was shown to voters, the proponents also apparently failed to present

13

copies of those plans to the voters when their signatures were sought. *Id.* Finally, the proponents also

14

violated the "reenactment" component of the "full text" rule, which required them to submit complete

15

copies of those plans as they would have appeared after any amendment, both to the clerk and to

16

potential petition signers. *Id.*, at 1:10-11.

17

The "full text" and "reenactment" rules are derived from related provisions in §§ 9147, 9238,

18

9014 and 9101 of the California Elections Code and from §§ 9, Article IV of the State Constitution.

19

Section 9101 of the Elections Code requires that when any proposed ordinance is to be submitted to a

20

county board of supervisors by filing an Initiative petition with the county elections official, the

21

Initiative petition shall "contain a full and correct copy of the notice of intention and accompanying

22

statement ***including the full text of the proposed ordinance***." Cal. Elec. Code § 9101 (emphasis added).

23

"The purpose of the full text requirement is to provide sufficient information so that registered voters

24

can intelligently evaluate whether to sign the Initiative petition and to avoid confusion." *Alliance for a*

25

*Better Downtown Millbrae v. Wade*, 108 Cal. App. 4th 123, 132 (2003) (interpreting the analog of §

26

9101, § 9201, and holding in part that "the statute's full text requirement has been interpreted to apply to

27

the manner of circulation as well").

28

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1    The "reenactment rule" is contained in Article IV, § 9 of the California Constitution, and

2    provides that a "section of a statute may not be amended unless the section is reenacted as amended."

3    The State Supreme Court has described the purpose of this rule as being:

4              to avoid the confusion which almost always results when
               amendments are attempted by way of directing the insertion,
5              omission, or substitution of certain words, or by adding a
               provision, without setting out the entire context of the section … to
6              be amended.  The effect of this section is that voters considering an
               initiative … are forced to reenact the entire statute as amended in
7              order to accomplish the desired amendments.

8

9    *Yoshisato v. Superior Court*, 2 Cal. 4th 978, 990 (1992).

10          Those rules are as binding upon land use initiatives as they are elsewhere.  "[L]and use decisions

11    can be challenged by initiative or referendum.  In either case, it is imperative that persons evaluating

12    whether to sign the petition be advised which laws are being challenged and which will remain the

13    same."  *Mervyn's*, 69 Cal. App. 4th at 104 (holding that the full text must be available to those signing

14    the petition, and it must also be filed with the county elections official).

15          Courts strictly enforce these rules.  In *Hebard v. Bybee*, 65 Cal. App. 4th 1331 (1998), rejection

16    of a referendum petition was upheld where a petition, although it included all of the words of the

17    proposed general plan amendment, omitted only three words from the title of that ordinance, because the

18    omission created an ambiguity that voters were forced to resolve.  *Id.*, at 1342.  In *Nelson v. Carlson*, 17

19    Cal. App. 4th 732 (1993), the court invalidated a petition seeking to overturn a resolution by the city

20    council adopting a general plan, where the proponents failed to attach the general plan to the referendum

21    petition partly because it was too voluminous, because "[w]ithout the plan individuals reviewing the

22    petition had no way of informatively evaluating whether to sign it," and the clerk could not perform her

23    ministerial duties because the full text was not presented.  *Id.*, at 739 and 741.

24          The *Mervyn's* case is instructive.  In 1990, the City of Hayward adopted a general plan which

25    changed the land use of several acres of land owned by Mervyn's to open space, parks and recreation,

26    thereby preventing development.  69 Cal. App. 4th at 96.  In 1996, a voter Initiative sought to re-enact

27    the open space land use designations of the general plan, including that land owned by Mervyn's.  *Id.*, at

28

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1   96-97.  The Initiative also provided that it would prevail over any previously approved ordinances or

2   development agreements (among other things) that were not "fully vested." *Id.*, at 97.

3       Despite having an impact on the general plan and Hayward's land use policies, "[n]o part of the

4   actual text of the general policies plan map or the supporting policies of the City of Hayward was

5   attached to the Initiative petition." *Id.*  Nor were the plan map or supporting policies submitted to the

6   Hayward City Clerk for certification and placement upon the ballot.  *Id.*, at 97-98.  On these facts the

7   *Mervyn's* court found a violation of the full text requirement, in part because the failure to attach the

8   general policies plan map or the supporting policies prevented the (1) "[p]rospective signers" of the

9   Initiative "from being fully informed of the substance of the ordinance" (*id.*, at 102), and (2) the clerk

10  "from dispatching her ministerial function of ascertaining whether there was compliance with the full

11  text referendum statute's requirements."  *Id.*, at 104.

12      Like the initiative in *Mervyn's*, the Initiative proponents here attempted to amend both the

13  General and the area plans without submitting the complete text of the General Plan or the other plans

14  that would be amended.  The Initiative, for example, seeks to repeal the Rancho San Juan area plan by

15  inserting a few additional sentences into a certain page of the plan, thereby completely eliminating

16  future development in that area.  *See* Initiative at 23-27, et seq.  It does the same with respect to the

17  community of San Lucas.  *Id.*, at 41-45.  Yet the proponents failed to submit the current Area Plans

18  which would have shown the amounts of commercial, industrial or residential development currently

19  allowed in those areas under the existing General Plan.  Anchundo Decl. at 1:12-19.

20      The Initiative therefore prevented prospective signers "from being fully informed of the

21  substance of the ordinance," and from making an informed decision as to "which laws are being

22  challenged and which will remain the same."  *Reyes*, 69 Cal. App. 4th at 104.  The County had no

23  choice but to deny placing the Initiative on the ballot.

24      **C.**    **The Petition Violates the "Single Subject Rule."**

25      The Initiative is also fatally defective because it breaches the prohibition in article II of the

26  California Constitution against initiative measures embracing more than one subject:  "An Initiative

27  measure embracing more than one subject may not be submitted to the electors or have any effect."  Cal.

28

200358_2.DOC                                -13-                          Case No.:  C 06-01730 JW

1   Const. art. II, § 8(d). The Single-Subject Rule is a "constitutional safeguard adopted to protect against

2   multifaceted measures of undue scope," which may otherwise confuse or mislead voters. *Senate of the*

3   *State of California,* 21 Cal. 4th at 1158 (emphasis added).

4        Generally, an initiative measure complies with the Single-Subject Rule "if its provisions are

5   either functionally related to one another or are reasonably germane to one another or the objects of the

6   enactment." *Harbor v. Deukmejian,* 43 Cal. 3d 1078 (1987). The Supreme Court nevertheless has

7   stated that "initiative proponents do not have blank checks to draft measures containing unduly diverse

8   or extensive provisions bearing no reasonable relationship to each other or to the general object which is

9   sought to be promoted … [T]he rule obviously forbids joining disparate provisions which appear

10  germane only to topics of excessive generality such as 'government' or 'welfare.'" *See Brosnahan v.*

11  *Brown,* 32 Cal. 3d 236, 253 (1982), *cited in Chemical Specialties Manufacturers Assn. Inc. v.*

12  *Deukmejian,* 227 Cal. App. 3d 663, 671 (1991) (invalidating Initiative that sought to do many disparate

13  things, including reducing toxic pollution, protecting seniors from fraud and deceit in the issuance of

14  insurance policies, preserving the integrity of the election process, and fighting apartheid).

15       Here the proponents styled the Initiative as "The Monterey County Quality of Life, Affordable

16  Housing, and Voter Control Initiative." As noted above, the Initiative's purported "goals and

17  objectives" relate to land use and subsequent housing development; and all require a public vote for any

18  future expansion. *See* Initiative, generally and at § 3.a and § 3.a 26.1.3.3. It also contains various

19  findings pertaining to housing policies, as well as pertaining to "poorly planned" development as it

20  relates to tax revenues, police and fire service, traffic congestion, and water supplies. *Id.,* at § (A)-(F).

21  In addition, it contains a finding that explains the need to "enact new general plan policies" relating to

22  development. *Id.,* at § 1(G).

23       But buried among the many provisions of the Initiative is one provision that can in no way be

24  considered "reasonably germane" to the other subjects of the Initiative. Proposed Policy H-3.0(e), is the

25  "First Right to Rent or Purchase" provision, which confers a right of first refusal on County residents

26  and workers to purchase affordable housing in the County. *Id.,* at 59.

27

28

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1    Leaving aside the federal and state constitutional defects of such a provision, a "right-of-first

2    refusal" clause has no relationship to housing development or land use.  The clause appears to have no

3    purpose other than to confer a unique benefit on the residents and garner additional votes for other,

4    unrelated, provisions of the Initiative.  Regardless of the motives, the right-of-first refusal clause will

5    result in confusion, misleading the voters into voting in favor of Initiative for the purpose of availing

6    themselves of the privilege of the first refusal right.  That is the kind of outcome the Single-Subject Rule

7    is intended to prevent.  *Senate of the State of California*, 21 Cal. 4th at 1158.[2]

8    The proponents will argue that the "First Right to Rent or Purchase" is related to the issue of

9    "housing" and "land use."  But the generalized nature of the subject covered by the Initiative cannot

10   justify the Initiative proponents' efforts to backdoor a wholly disparate provision such as a right-of-first

11   refusal.  The likely unconstitutional provision attempting to favor Monterey County residents has

12   nothing to do with the other subjects of the Initiative; any other interpretation of this aspect of the

13   Initiative would render the single-subject rule a nullity.  *See California Trial Lawyers Association. v. Eu*,

14   200 Cal. App. 3d 351, 360 (1988).

15   **5.    THE INITIATIVE IS RIFE WITH SUBSTANTIVE DEFECTS THAT RENDER IT VOID**

16   **AS A MATTER OF LAW.**

17   **A.    The Initiative Conflicts With State Law Governing Areas of Statewide Concern in at**

18   **Least Three Different Ways.**

19   Aside from its procedural flaws -- flaws that give rise to a ministerial duty to keep the Initiative

20   off the ballot -- the Initiative suffers from many substantive flaws that render it void as a matter of law.

21   Specifically (as discussed more fully below), the Initiative unlawfully invades three areas the California

22

23

---

24   [2] The provision is undoubtedly unconstitutional under the Privileges and Immunities clause
     (restricting non-Monterey County residents from purchasing housing), the Interstate Commerce

25   Clause, the 14th Amendment (see *Saenz v. Roe*, 526 U.S. 489 (1999)), and possibly
     Constitutional provisions and statutes relating to discrimination.  Defendants are not arguing

26   that, in and of itself, the illegality of this one clause should stop this from being on the ballot,
     because the subject matter is distinct and the provision could be severed from the remainder of

27   the Initiative.  But its distinctiveness only underscores the Single-Subject Rule violation.
     Proponents have included an unconstitutional provision that panders to voters and might get

28   them to vote favorably for the remainder of the Initiative.

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1   Legislature has set aside as areas of statewide concern:  (1) State law governing the supply of housing

2   and amendment of housing elements of local general plans; (2) State law governing annexation of

3   unincorporated territory; and (3) State law governing the subdivision of land.  The County cannot adopt

4   ordinances that conflict with state law governing an area of statewide concern, whether by Initiative or

5   pursuant to the County's police powers.  *See* Cal. Const. art. XI, § 7; *see Legislature v. Deukmejian*, 34

6   Cal.3d 658, 675 (1983); *Committee of Seven Thousand v. Superior Court*, 45 Cal. 3d 491 (1988).  On

7   any one of those three grounds, the Initiative is void as a matter of law.

8            **(1)**       ***The Initiative Conflicts With State Legislation Governing the Adoption and***

9                          ***Amendment of Housing Elements.***

10          The presumption in favor of the right of initiative is rebuttable.  The Legislature -- as part of the

11   exercise of its power to preempt all local legislation in matters of statewide concern -- has intended to

12   restrict that right.  *De Vita v. County of Napa*, 9 Cal. 4th 763, 776 (1995).  The rebuttable presumption

13   stems from the state constitution's prohibition of the enactment and enforcement of Initiatives which

14   conflict with the general laws.  Cal. Const., art. XI, § 7.  Such a conflict arises when an ordinance

15   duplicates, contradicts, or enters an area fully occupied by state law, either expressly or by legislative

16   implication.  *Building Industry Assn. v. City of Livermore*, 45 Cal. App. 4th 719, 724 (1996).  If state

17   law has fully occupied the subject matter or field of the legislation, there is no room for supplementary

18   or complementary local legislation, even if the subject otherwise could be properly characterized as a

19   "municipal affair."  An ordinance that intrudes upon such preempted areas is ***void*** as a matter of law.  *Id;*

20   *see also Building Industry Assn. v. City of Oceanside*, 27 Cal. App. 4th 744, 770 (1994).

21          The Legislature has unequivocally declared that housing is an area of *statewide concern.*

22   California Government Code § 65580 states, "[t]he availability of housing is of ***vital statewide***

23   ***importance***, and the early attainment of decent housing and a suitable living environment for every

24   California family is a priority of the ***highest order***."  (Emphasis added.)  Over and over again, the courts

25   have recognized "as common knowledge" the state's preemption of the area of housing.  *See, e.g.,*

26   *Building Industry Assn. v. City of Oceanside*, 27 Cal. App. 4th 744, 770 (1994) ("the three cited

27   Government Code sections, taken together, clearly show an important state policy to promote

28

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

1    construction of low income housing and to remove impediments to same"); *Buena Vista Gardens*

2    *Apartments Assn. v. City of San Diego Planning Dept.*, 175 Cal. App. 3d 289, 306 (1985) (the legislature

3    and the judiciary have "found the need to provide adequate housing to be a matter of statewide

4    concern"); *Bruce v. City of Alameda*, 166 Cal. App. 3d 18, 21-22 (1985) ("locally unrestricted

5    development of low cost housing is a matter of vital state concern").

6      The Legislature's intent to occupy the field in the area of housing also is demonstrated by the

7    comprehensive scheme set up by the Legislature for amending the housing element of a general plan.

8    The Legislature has stated that its statutory scheme is intended to assure that cities contribute to

9    attainment of state housing goals by preparing and implementing housing elements which, along with

10    federal and state programs, move toward attaining the state housing goal. Cal. Gov. Code § 65581(a),

11    (b). The Legislature recognized that each locality is "best capable of determining what efforts are

12    required by it to contribute to the attainment of the state housing goal, provided such a determination is

13    compatible with the state housing goal and regional housing needs." *Id.*, at § 65581, subd. (c).

14      In furtherance of those goals, California Government Code § 65588 requires, among other

15    things: (a) that each local government review its housing element "as frequently as appropriate" to

16    evaluate the attainment of state housing goals (*id.*, at § 65588(a)); (b) that the local government revise

17    the housing element not less than every five years to reflect the results of its periodic review (*id.*, at §

18    65588(b)); (c) that local governments take into account statutory requirements for low-income housing

19    in the coastal zone (*id.*, at § 65588(c)). Moreover, any draft amendment to the housing element must be

20    submitted to the State Department of Housing and Community Development for review and comments.

21    *Id.*, at § 65585.

22      The Initiative runs headlong into the carefully-crafted scheme for adopting and amending the

23    housing elements of general plans. The Initiative purports to amend the County Housing Element,[3] and,

24

_____

25    [3]  In addition to changing the Housing Element's policies for new growth (*see* Initiative at

26    21, et seq.) the Initiative purports to amend the County Housing Element in at least four other
      ways: (a) the Initiative eliminates provisions for new urban communities in the community

27    areas of Rancho San Juan and Pine Canyon (*see* Initiative at 52); (b) the Initiative increases the
      percentage of mandatory and voluntary inclusionary units (*see* Initiative at pp. 54, 59

28

1  like every other substantive component of the Initiative, subjects any additional amendment of the

2  Housing Element to the measure's overriding voter-control provision, which states: "In order to

3  maintain voter control over poorly-planned development, no provision of this Initiative measure shall be

4  changed, amended, or repealed except by a vote of the People."

5  Accordingly, if the Initiative were to be implemented, the County would be bound by the

6  amendments contained in the Initiative, and could not revise those elements without the fiat of the local

7  electorate.  In short, the Initiative would take amendment of the County Housing Element out of the

8  County's hands and place it in the hands of the electorate.  The County would thereby be precluded from

9  complying with the statutory requirement that it review and amend the Housing Element every five

10 years and seek review and approval of the Department of Housing and Community Development for

11 such amendments.

12 The rule of deference to the initiative process does not compel a governmental agency to violate

13 state law.  Yet, the restrictions imposed by the Initiative would clearly stymie, if not completely thwart,

14 the County's ability to comply with the comprehensive Housing Element adoption and amendment

15 scheme.  On that basis, the Initiative intrudes on an area of statewide concern and is void.

16        **(2)      *The Initiative Conflicts With State Law Governing Annexations of County***

17                  ***Territory.***

18 State law preempts the field of municipal annexations; creation of spheres of influence; and

19 extensions of municipal services into unincorporated territory.  The Legislature has enacted a

20 comprehensive and exclusive process to ensure the logical and reasonable development of cities and

21 counties.

22

23

24 (inclusionary housing requirement increased from 20 percent to 30 percent and to 40 percent in

25 certain areas)); (c) the Initiative strikes a provision for 100 percent voluntary affordable housing
   in areas of greatest shortage (*see id.,* at 53); and (d) the Initiative provides for right of first

26 refusal to a list of persons who live or work in the County for new housing (*see id.,* at 53).

27

28

That statutory scheme, now found in the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (codified at Cal. Gov. Code § 56000, et seq.), has been recognized by the courts to be the *exclusive* process by which certain actions may be taken. The Local Agency Formation Commission ("LAFCO") which exists by virtue of State law in every county, is given certain exclusive responsibilities with respect to the determination of probable expansion of cities and districts. The statutory scheme was previously found in the Cortese-Knox Local Government Reorganization Act of 1985 at Gov. Code § 56000, et seq.

In *County of Fresno v. Malaga County Water District,* 100 Cal. App. 4th 937 (2002), the court states: "[T]he 1985 Act is a broad statutory scheme that covers organizational changes for local government. (Citation.) It provides "the *sole and exclusive* authority and procedure for the initiation, conduct, and completion of changes of organization and reorganization for cities and districts." *Id.* (emphasis added).

The goal of the statute is "to encourage orderly growth and development which are essential to the social, fiscal, and economic well-being of the state." Cal. Gov. Code § 56001. To effectuate that goal, each county has a LAFCO that is charged with reviewing and approving or disapproving proposals for changes of organization. *Id.,* at §§ 56325, 56375. Through that process, the LAFCO strives to facilitate the logical and reasonable development of cities, counties and districts in order to provide for the present and future needs of each county and its communities. *Id.,* at §§ 56054, 56301.

Like the issue of housing, the annexation statute constitutes a complex statewide scheme for annexation that evidences an intent to occupy the field. In undertaking its charge, the LAFCO undertakes the following tasks: (a) conducts a municipal service review to determine the needs of each area within the county and the public agencies that can provide the services (*id.,* at § 56378); and (b) determines the sphere of influence for each public agency within the county (*id.,* at § 56425). When an area is being considered for incorporation, annexation to a city or to a district, or the formation, merger, or dissolution of a district, the LAFCO adopted sphere of influence is a factor in the deliberations.

Some LAFCO actions, such as incorporation, are subject to a vote by those living within the affected areas. *Id.,* at § 57000(e)(1). Other reorganizations are submitted to an electoral process only if

DEFENDANTS' OPPOSITION TO APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1  a threshold percentage of registered voters or owners of property within the affected territory protest the

2  approval by LAFCO. *Id.*, at §§ 57026, 57075. Elections are not held except in the circumstances set

3  forth in the state scheme.

4          In conflict with the state scheme, the Initiative requires approval by the voters of a development

5  plan that would expand the boundaries of an "Area of Development Concentration" as they existed prior

6  to the effective date of the policy or otherwise vested. *See* Initiative at § 26.1.3.2 (a). Areas may be

7  approved that are inconsistent with the sphere of influence as determined by LAFCO, while other areas

8  approved by LAFCO might not ever receive voter approval. The vote requirement of the Initiative

9  therefore conflicts with the legislative scheme set up for the reorganization of districts and local

10  governments. *See Ferrini v. City of San Luis Obispo*, 150 Cal. App. 3d 239 (1983) (holding that a city's

11  charter amendment to require voter approval of annexations contrary to the role of LAFCO under State

12  law).

13                    **(3)**      ***The Initiative's Development Exclusion Categories Conflict With the***

14                              ***Subdivision Map Act.***

15          The Initiative's growth control provisions override previously permissible development

16  concentration areas in the current Countywide Land Use Plan. The Initiative nevertheless provides

17  several exceptions for development projects that have vested or otherwise have become legally eligible

18  for conveyance. For example, § 26.1.3.2(a) prohibits the addition of new parcels in areas outside the

19  incorporated boundaries of cities and the Initiative's urban limit lines -- subject to an exception for

20  developments that have vested.  In a similar vein, § 26.1.3.3 requires a public vote for increasing the

21  number of parcels "exist[ing] as of the effective date of this policy." The section then defines lots

22  "exist[ing] as of the date of this policy" to include "parcels that are legally eligible for conveyance or for

23  construction of improvements under the Subdivision Map Act … by the effective date of this policy."

24  Finally, in § 26.1.4(c), the Initiative allows subdivision of lands outside the urban development

25  boundaries of certain Community Areas "only" when, among other things, the subdivision complies

26  "with the provisions of an approved vesting tentative map … if such vesting tentative map has provided

27  the landowner with a vested property right."

28

1    Each of the above-referenced exceptions is tied either to: (a) the maturation of a vested right

2  (e.g., pursuant to a vesting tentative map); or (b) the ability to convey parcels pursuant to the Map Act.

3  The Initiative does not appear to exempt projects for which the County has approved a (non-vesting)

4  tentative map, but which have not progressed to final map approval.

5    The Initiative's omission of such projects from the scope of the growth control exceptions

6  conflicts with the Map Act.  Section 66474.1 of the Map Act provides that local governmental bodies

7  "shall not deny approval of a final … map" if the final map is in "substantial compliance with the

8  previously approved tentative map."  *Id.*, § 66474.1; *see Youngblood v. Board of Supervisors*, 22 Cal. 3d

9  644, 655-656 (1978).  The courts interpret § 66474.1 to require the government body to approve or deny

10  the project when the tentative map application is up for approval -- not thereafter.  *City of West*

11  *Hollywood v. Beverly Towers, Inc.*, 52 Cal. 3d 1184 (1991); *Youngblood*, 22 Cal. 3d at 655-656.

12  Moreover, the governing body must only consider those requirements and conditions in place when the

13  tentative map was approved.  *See* Cal. Gov. Code § 66473.  The approval of a tentative map therefore

14  confers certain rights on developers with respect to their projects.  As one court noted:

15         The approval of a tentative map gives the subdivider certain rights
         with respect to approval of a final map.  Thus, a final map may not
16         be disapproved if it is in substantial compliance with a previously
         approved tentative map. (Gov. Code, § 66474.1.)  And only those
17         requirements and conditions that were applicable to the subdivision
         at the time of approval of the tentative map may be considered
18         with respect to the final map. (Gov. Code, § 66473.)  In other
         words, the time for the local agency to take action with respect to a
19         proposed subdivision is when the tentative map is under
         consideration and, provided the final map is in substantial
20         compliance with the tentative map and any conditions imposed on
         its approval, the approval of the final map becomes a ministerial
21         act.

22
*Beck Dev. Co. v. S. Pac. Transportation Co.*, 44 Cal. App. 4th 1160, 1199 (1996).
23
    By timing discretionary action at the tentative map approval stage, the Legislature sought to
24
  protect the investments and expectations of developers, which often must expend significant resources in
25
  reliance on the tentative map.  As the *Youngblood* court observed:
26
         Once the tentative map is approved, the developer often must
27         expend substantial sums to comply with the conditions attached to
         that approval.  These expenditures will result in the construction of
28

> improvements consistent with the proposed subdivision, but often inconsistent with alternative uses of the land. Consequently it is only fair to the developer and to the public interest to require the governing body to render its discretionary decision whether and upon what conditions to approve the proposed subdivision when it acts on the tentative map. Approval of the final map thus becomes a ministerial act once the appropriate officials certify that it is in substantial compliance with the previously approved tentative map.

*City of West Hollywood*, 52 Cal. 3d 1184, 1190-1191; *Great Western Sav. & Loan Assn. v. City of Los Angeles*, 31 Cal. App. 3d 403, 411, 414 (1991). It is therefore settled that, after approval of a tentative map, the governing body has no further discretion to deny approval of final map.

The Map Act also extends its protections to developments with pending applications for tentative map approval -- notwithstanding the absence of an approved tentative map. In 1982, the Legislature enacted §§ 65961 and 66474.2 to provide more extensive protections to developers. The legislation was intended "to prevent local agencies from imposing new exactions under their police power following tentative map approval . . .." *Golden State Homebuilding Assocs. v. City of Modesto*, 26 Cal. App. 4th 601, 607-608 (1994). Those sections provide that a local agency, in deciding whether to approve or disapprove a tentative map, may apply only "ordinances, policies, and standards" in effect on the date the agency determined the map application was complete. Sections 66474.2 and 65961 "prohibit[] a local agency under certain circumstances from imposing a condition on a building permit (or its equivalent) which it could have 'lawfully imposed' on a previously approved tentative map." *Id.*

The Initiative's growth control measure provides no exceptions for projects with approved tentative maps, or developments for which vesting tentative map applications have been deemed complete. The Initiative appears to except only projects that have "vested" or have progressed to a point where lots are ready for conveyance. The Initiative therefore purports to give authority to the County to deny projects that are incompatible with the Initiative's growth-control scheme, even if those projects have approved tentative maps. Critically, protections afforded by tentative map approval are not limited to "vesting" tentative maps. While the Legislature amended the Map Act to provide for approvals of vesting tentative maps "whenever the Map Act requires a tentative map" (*see* Cal. Gov. Code § 66498.1), *Youngblood* was a tentative map case. The protections afforded under *Youngblood* and its

1   progeny therefore do not require the approval of a "vesting" tentative map. Accordingly, the Initiative

2   conflicts with the legislative scheme of the Map Act.

3         The Map Act provides general "statewide criteria" for subdivisions of land. *See* 64 Ops. Cal.

4   Atty. Gen. 549, 550 (1981); 63 Ops. Cal. Atty. Gen. 601, 602 (1980).) It "occupies the field as to

5   subdivisions of property." 63 Ops. Cal. Atty. Gen. 64, 65 (1980). Accordingly, local ordinances must

6   be consistent with the Map Act -- those ordinances that conflict are invalid. *Id.*; *see Friends of Lake*

7   *Arrowhead v. Bd. of Supervisors*, 38 Cal. App. 3d 497, 508 (1974). The Initiative's categories of

8   exemption excludes approved tentative maps and otherwise overlooks developments with pending,

9   complete tentative map applications. It therefore conflicts with the protective scheme of the Map Act

10   and, on that basis, is invalid.

11   **6.**    **THIS CASE WAS PROPERLY REMOVED TO FEDERAL COURT.**

12         Plaintiffs' request for remand to the State Court is, at best, half-hearted, and at worst it misstates

13   the standard this Court should apply in construing removal under the removal statute at issue here,

14   which is the civil rights removal statute of 28 U.S.C. § 1443(2). Plaintiffs first refer the Court to an

15   inapposite case dealing with *diversity* removal, where the issue was whether the amount in controversy

16   met the jurisdictional minimum. *Gaus v. Miles*, 980 F.2d 564 (9th Cir. 1992). They then cite *Shamrock*

17   *Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-109 (1941) for the proposition that "[f]ederal removal

18   must be rejected if there is any doubt as to the right of removal in the first instance." But *Shamrock Oil*

19   **has been overruled** on this very point. *See Breuer v. Jim's Concrete of Brevard, In*c., 538 U.S. 691,

20   697-98 (2003) ("Breuer relies heavily on our statement in *Shamrock Oil & Gas Corp. v. Sheets* ... that

21   'the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling

22   for the strict construction of [removal legislation] ... But whatever force this argument might have had

23   when *Shamrock* was handed down has been qualified by later statutory development. ... Since 1948,

24   therefore, there has been no question that whenever the subject matter of an action qualifies it for

25   removal, *the burden is on a plaintiff to find an express exception*") (emphasis added).

26         The subject matter of this action qualifies it for removal. Under 28 U.S.C. § 1443(2), a

27   defendant may remove a civil action from state to federal court "[f]or any act under color of authority

28

1    derived from any law providing for equal rights, or for refusing to do any act on the ground that it would

2    be inconsistent with such law." Defendants were sued for refusing to place the Initiative on the ballot in

3    part because it would have been inconsistent with FVRA. There is no doubt that a "colorable conflict"

4    exists between state and federal law here. In fact, the two are completely incompatible. Insofar as state

5    law requires that the County place the Initiative on the June ballot despite the fact that certain election

6    materials were not translated into Spanish, in light of the *Zaldivar* and *Padilla* opinions the County

7    would be in violation of FVRA's bilingual and pre-clearance provisions were it to do so. Courts which

8    have reviewed the matter have said voting rights cases are subject to § 1443(2). *Wachtler v. Cuomo*,

9    1991 U.S. Dist. LEXIS 17069 at *10. *See, also, Smith v. Winter*, 717 F.2d 191, 194 (5th Cir. 1983);

10   *Sexson v. Servaas*, 33 F.3d 799, 801 (7th Cir. 1994). Accordingly, there is no doubt that removal under

11   28 U.S.C. § 1443(2) is proper, and Plaintiffs do not even attempt to find an express exception to that

12   statute's application. *Breuer*, 538 U.S. at 698.

13   **7.    CONCLUSION.**

14          For the foregoing reasons, this Court should deny the Petitioner's application for a temporary

15   restraining order and injunction.

16

17   Dated: March 17, 2006                  NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP

18

19                                          / S /
                                    By: _____
20                                          STEPHEN N. ROBERTS

21                                  Attorneys for Defendants/Respondents
                                    BOARD OF SUPERVISORS OF THE COUNTY OF
22                                  MONTEREY; TONY ANCHUNDO, IN HIS CAPACITY AS
                                    MONTEREY COUNTY REGISTRAR OF VOTERS; AND
                                    THE COUNTY OF MONTEREY

23

24

25

26

27

28