FREDRIC D. WOOCHER (SBN 96689)
MICHAEL J. STRUMWASSER (SBN 58413)
STRUMWASSER & WOOCHER LLP
100 Wilshire Boulevard, Suite 1900
Santa Monica, California  90401
Telephone:     (310) 576-1233
Facsimile:     (310) 319-0156
E-mail:  fwoocher@strumwooch.com

J. WILLIAM YEATES (SBN 84343)
KEITH G. WAGNER (SBN 210042)
JASON R. FLANDERS (SBN 238007)
LAW OFFICE OF J. WILLIAM YEATES
3400 Cottage Way, Suite K
Sacramento, CA 95825
Telephone:     (916) 609-5000
Facsimile:     (916) 609-5001
E-mail:  byeates@enviroqualitylaw.com

Attorneys for Plaintiffs William Melendez et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MELENDEZ, KEN GRAY, JYL LUTES, CAROLYN ANDERSON, and LANDWATCH MONTEREY COUNTY,<br><br>                                     Plaintiffs,<br><br>     v.<br><br>BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY; TONY ANCHUNDO, in his capacity as MONTEREY COUNTY REGISTRAR OF VOTERS; COUNTY OF MONTEREY; and DOES 1 through 10, inclusive,<br><br>                                     Defendants. | CASE NO.  C 06-1730 JW<br><br>PLAINTIFFS' REPLY MEMORANDUM OF LAW DIRECTED TO COUNTY DEFENDANTS' OPPOSITION TO REQUEST FOR INJUNCTIVE RELIEF<br><br>Judge: Hon. James Ware<br>Dept:  8<br>Date:  March 21, 2006<br>Time:  10:00 a.m. |

**CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  THE GENERAL PLAN AMENDMENT INITIATIVE DOES NOT SUFFER FROM ANY PROCEDURAL FLAWS AND WAS PROPERLY CERTIFIED AS QUALIFYING FOR THE BALLOT BY THE REGISTRAR OF VOTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A.  The General Plan Amendment Initiative Complies Fully with the Procedural Requirements of the California Constitution and Elections Code by Including the "Full Text of the Proposed Ordinance" in Each Petition Section . . . . . . . . . . . . . . . 5

   B.  The General Plan Amendment Initiative Does Not Violate the Single-Subject Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. THE COUNTY'S SUBSTANTIVE OBJECTION TO THE GENERAL PLAN AMENDMENT INITIATIVE ARE NOT PROPER GROUNDS FOR A PRE-ELECTION CHALLENGE AND LACK MERIT IN ANY EVENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   A.  The Initiative Does Not Conflict with State Law Governing the Adoption and Amendment of Housing Elements of General Plans . . . . . . . . . . . . . . . . . . . . . . . . 10

   B.  The Initiative Does Not Conflict with State Law Governing Annexations of County Territory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   C.  The Initiative Does Not Conflict with the Subdivision Map Act . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

*Melendez et al. v. Board of Supervisors et al.*
PLAINTIFFS' REPLY MEMORANDUM DIRECTED TO COUNTY'S OPPOSITION
Case No. C 06-1730 JW

# TABLE OF AUTHORITIES

## Federal Cases

*Padilla v. Lever*, 429 F.3d 910 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## State Cases

*Amador Valley Jt. Union High Sch. Dist. v. State Bd. of Equalization*
   (1978) 22 Cal.3d 208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Associated Home Builders etc. v. City of Livermore* (1976) 18 Cal.3d 582 . . . . . . . . . . . . . . . 2

*Billig v. Voges* (1990) 223 Cal.App.3d 962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*Brosnahan v. Brown* (1982) 32 Cal.3d 236 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*California Gillnetters Assoc. v. Dept. of Fish & Game* (1995) 39 Cal.App.4th 1145 . . . . . . . . . . 8

*City of Long Beach v. Mansell* (1970) 3 Cal. 462 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Citizens for Responsible Behavior* (1991) 1 Cal.App.4th 1013 . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Costa v. Superior Court* (2006) 39 Cal.Rptr.3d 470 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

*deBottari v. City Council* (1985) 171 Cal.App.3d 1204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*DeVita v. County of Napa* (1995) 9 Cal.4th 763 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Ex Parte Haskell* (1896) 112 Cal. 412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Farley v. Healey* (1967) 67 Cal.2d 325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Gayle v. Hamm* (1972) 25 Cal.App.3d 250 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 9

*Golden State Homebuilding Assocs. v. City of Modesto* (1994) . . . . . . . . . . . . . . . . . . . . . . . 15

*Hebard v. Bybee* (1998) 65 Cal.App.4th 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Independent Energy Producres Association v. McPherson* (2005) 31 Cal.Rptr.3d 852 . . . . . . . . 3

*Legislature v. Deukmejian* (1983) 34 Cal.3d 658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mervynne v. Acker* (1961) 189 Cal.App.2d 558 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6, 7

*Nelson v. Carlson* (1993) 17 Cal.App.4th 732 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*People v. Norton* (1930) 108 Cal.App.Supp. 767 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476 . . . . . . . . . . . . . . . 11

*Save Stanislaus Area Farm Economy v. Board of Supervisors*
   (1993) 13 Cal.App.4th 141 .................................................. 1

*Shea Homes Limited Partnership v. County of Alameda*
   (2003) 110 Cal.App.4th 1246 ................................... 10, 11, 12, 13

*Tinsley v. Superior Court* (1983) 150 Cal.App.3d 90 ................................... 8

**State Constitutions**

Cal. Const., art. IV, § 9 ........................................................ 5

**State Statutes**

Cal. Elec. Code,

   § 9086 ................................................................. 8

   § 9101 ........................................................... 5, 6, 7

   § 9105, subd. (c) ....................................................... 5

   § 9215 ................................................................. 4

Cal. Gov. Code,

   § 56076 ............................................................... 13

   § 56375 ............................................................... 13

   § 56377, subd. (a) .................................................... 14

   § 65581(c) ............................................................ 11

   § 65961 ............................................................... 15

   § 66474.2 ............................................................. 15

*Melendez et al. v. Board of Supervisors et al.*
PLAINTIFFS' REPLY MEMORANDUM DIRECTED TO COUNTY'S OPPOSITION
Case No. C 06-1730 JW

**INTRODUCTION**

Plaintiffs read the County Defendants' Opposition to Application for Issuance of Temporary Restraining Order and Preliminary Injunction ("County Opp.") with great anticipation to see what cases the County would be citing to support their previous assertions to this Court that the Board of Supervisors had the *discretion* to refuse to submit a certified initiative petition to the voters on the ground that the Board believed it to be "legally flawed." Plaintiffs are still waiting for any judicial authority that supports the County's assertion.

Defendants cited no such authority, because none exists. To the contrary, for more than 75 years, California courts have consistently held that a local legislative body has a ***mandatory and ministerial obligation*** to place a qualified initiative measure on the ballot. ***After*** doing so, the Board may then file suit and attempt to persuade a court to exercise ***its judicial discretion*** to remove the proposed measure from the ballot "on a compelling showing that a proper case has been established for interfering" with the electorate's constitutional right to enact laws through the initiative process. *Farley v. Healey* (1967) 67 Cal.2d 325, 327.[1]

The County would like to skip the first step and proceed directly to the second, asking the Court to uphold its refusal to submit the General Plan Amendment Initiative to the voters by addressing its arguments that the Initiative suffers from numerous "flaws" that supposedly render it invalid. For the Court to accept the County's invitation, however, would violate decades of California state court precedents and would sanction the County's unlawful deprivation of the people's reserved initiative power. As the Court of Appeal held in rejecting the *identical entreaty* from county officials over 30 years ago:

"A premature interposition of the judiciary constitutes an unwarranted limitation upon the reserve power. To accept the position espoused by defendants in this case,

---

[1] Amazingly, as the supposed justification for its claim that "a court may uphold a local government's decision not to place an invalid measure on the ballot due to *substantive* flaws in the measure," the County cited *Farley v. Healey*; *Citizens for Responsible Behavior* (1991) 1 Cal.App.4th 1013; and *deBottari v. City Council* (1985) 171 Cal.App.3d 1204. County Opp. at 5. Yet these are ***exactly the three cases*** that the Court in *Save Stanislaus Area Farm Economy v. Board of Supervisors* (1993) 13 Cal.App.4th 141 ("*Save Stanislaus*") subsequently ***disapproved*** and explicitly explained ***did not*** constitute "judicial recognition that legislative review [of a qualified initiative's validity] is permissible, and judicial review is merely used to determine whether the local government is right or wrong." *Id.* at 149. The County may wish to ignore the decision in *Save Stanislaus*, but this Court cannot do so.

1

*Melendez et al. v. Board of Supervisors et al.*
PLAINTIFFS' REPLY MEMORANDUM DIRECTED TO COUNTY'S OPPOSITION
Case No. C 06-1730 JW

namely, that the court must determine the validity of the initiative ordinance at the processing juncture represented by this case and the showing made by defendants would be tantamount, in our opinion, to requiring every proponent of an initiative measure to first seek the advisory opinion of the courts as to its validity before getting the measure to the electorate." *Gayle v. Hamm* (1972) 25 Cal.App.3d 250, 258.

The proper, and required, course of action for the Court to take in these consolidated cases would thus be for the Court to issue an order in the *Melendez* lawsuit commanding the County to place the General Plan Amendment Initiative on the June 6, 2006, statewide ballot — without addressing the County's asserted claims of invalidity — and then to rule upon the *Madrigal* plaintiffs' request for an order enjoining the election from going forward due to the alleged violation of the Voting Rights Act. Although this may appear to add an unnecessary step to the judicial review process, it is the only way to separate out the distinct issues raised in these cases and to preserve each of them for possible appeal.[2]

Although the County's objections to the validity of the Initiative are not properly interposed in this judicial proceeding, out of an abundance of caution — and in order to demonstrate to the Court that they lack merit in any event — Plaintiffs briefly address each of them in turn. Owing to both a lack of time and reply brief pages, Plaintiffs' discussion of these issues is necessarily truncated, pointing out only the most obvious flaws in the County's claims and legal analysis. These very significant practical limits on Plaintiffs' ability to respond to the County's contentions — and for this Court to consider them in this expedited process — only underscore, however, ***exactly why*** established California law so ***disfavors pre-election review*** of qualified initiatives and why "it has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it." *Associated Home Builders etc. v. City of Livermore* (1976) 18 Cal.3d 582, 591 (quoting *Mervynne v. Acker* (1961) 189 Cal.App.2d 558, 563-64). As the Court noted in *Save Stanislaus*, "[t]he standard is one that is cognizant

---

[2] Plaintiffs appreciate and concur in the Court's decision to consolidate these cases and issues for an expedited resolution in a single hearing. The need for expedition, however, does not justify bypassing the appropriate procedural processes, particularly since this Court's determinations may ultimately be reviewed by the appellate court(s). If for no other reason than for the sake of clarity for appellate review, then, this Court should proceed to address the issues in a logical and procedurally proper fashion, rather than condensing them into a single resolution, even if the "outcome" were to be the same.

2

*Melendez et al. v. Board of Supervisors et al.*
PLAINTIFFS' REPLY MEMORANDUM DIRECTED TO COUNTY'S OPPOSITION
Case No. C 06-1730 JW

of the injury to the public that would result from an erroneous determination to keep an initiative off the ballot." 13 Cal.App.4th at 150.

In the present case, the County has utterly failed to make the "compelling showing of invalidity" required to prevent a vote on the General Plan Amendment Initiative. In *Gayle v. Hamm, supra*, the Court explained that in order to satisfy this standard, the challenger must establish that there is "binding authority . . . of [a] dispositive quality" that would allow the court to make "a simple and speedy determination of the validity issue." 25 Cal.App.3d at 256. The Court stated that such a showing can occur when "determinations of the focal issues necessary to a disposition . . . had been made previously upon more than one occasion by the Supreme Court. Consequently, the courts considering petitions for mandamus [would be] able to make the determination that the proposed measure was clearly invalid beyond question, readily and with confidence." *Id.* at 255. That is plainly not the case here. To the contrary, as we show below, the County's *procedural* objections lack any merit whatsoever, and the bulk of their complaints relate to the *substance* of the measure, which the Supreme Court only last month re-affirmed are not subject to pre-election review *at all*.[3]

## ARGUMENT

**I.   THE GENERAL PLAN AMENDMENT INITIATIVE DOES NOT SUFFER FROM ANY PROCEDURAL FLAWS AND WAS PROPERLY CERTIFIED AS QUALIFYING FOR THE BALLOT BY THE REGISTRAR OF VOTERS**

In its Opposition brief, the County contends that the Board properly refused to submit the General Plan Amendment Initiative to the voters because (1) the Initiative petitions were not circulated with a Spanish language translation in violation of the Voting Rights Act; (2) the petitions failed to contain the "full text" of the proposed ordinance in violation of Elections Code section 9101 and the "re-enactment rule" contained in article IV, section 9 of the California Constitution; and (3) the Initiative violates the "single

---

[3] Remarkably, the County fails even to cite to the California Supreme Court's decision in *Costa v. Superior Court*, 39 Cal.Rptr.3d 470 (2006), which is the most recent and authoritative statement from the Court on the standards governing pre-election review of initiatives. Only by disregarding the *Costa* decision can the County continue to make such plainly erroneous statements in its Opposition as "it is settled that a court may uphold a local government's decision not to place an invalid measure on the ballot due to *substantive* flaws in the measure." County Opp. at 5 (citing cases from 1967, 1991, and 1985). Both *Save Stanislaus* and *Costa* conclusively put that argument to rest, the Supreme Court holding in *Costa* — and demonstrating by its earlier ruling in *Independent Energy Producers Association v. McPherson* (2005) 31 Cal.Rptr.3d 852 — that the *substantive* validity of a proposed initiative measure "***need not and should not be determined prior to the . . . election***."

3

subject rule" embodied in article II, section 8 of the Constitution.

As an initial matter, as set forth in Plaintiffs' opening brief, the Board's *procedural* objections provide no legitimate grounds for its refusal to place the Initiative on the June ballot. The General Plan Amendment Initiative was determined to be ***procedurally sufficient*** by Monterey County Registrar of Voters Tony Anchundo, when he duly — and rightly — certified the sufficiency of the Initiative for the ballot on January 26, 2006. As the Registrar of Voters, Respondent Anchundo is the county elections official with the legal responsibility and obligation to ensure that initiative and referendum petitions comply with all *procedural* constitutional and statutory requirements. *See, e.g.*, *Billig v. Voges* (1990) 223 Cal.App.3d 962, 969 ("the offices of city clerks throughout the state are mandated by the constitution to implement and enforce the statute's procedural requirements"). The Board of Supervisors has no authority to "overrule" the Registrar's certification of the initiative on procedural grounds. The County's Opposition ***fails to cite a single case*** refuting Plaintiffs' argument in this regard and holding that the governing body — as opposed to the elections official — has the authority to make its own determination that a petition does not meet the procedural requirements for an initiative and to refuse to submit the measure to the voters once it has been duly certified by the elections official.[4]

Second, ***the County*** should be estopped from arguing that the Initiative petitions are invalid under the Voting Rights Act. (Plaintiffs do not contend that the *Madrigal* plaintiffs are likewise estopped from challenging the petitions under the FVRA, and we respond to the merits of that contention in Plaintiff Melendez et al.'s Opposition to the Madrigal Plaintiffs' Motion for Preliminary Injunction.) To the extent that the County suggests, for example, that the initiative petitions may violate the Voting Rights Act because ***the County*** "provided" Plaintiffs with a ballot title and summary in Spanish (*see* County Opp. at 8), it would be the height of injustice to permit the County to now suddenly claim that the initiative petitions are invalid ***as a result of actions taken by the County itself***. Plaintiffs were under a state-law obligation

---

[4] The decision in *Mervyn's v. Reyes* (1998) 69 Cal.App.4th 93 is not to the contrary. In that case, the initiative was never submitted to the voters for their approval or rejection in an election, because the City Council instead chose to adopt the proposed measure without alteration, as permitted by Elections Code section 9215, the equivalent of section 9118 for municipal initiative petitions. Under that circumstance, upon agreeing with Mervyn's petition/complaint that the petitions failed to satisfy the "full text" requirement, the court directed issuance of a writ of mandate "setting aside Hayward's decisions certifying, approving and adopting the initiative petition under Elections Code section 9215." 69 Cal.App.4th at 105.

4

*Melendez et al. v. Board of Supervisors et al.*
PLAINTIFFS' REPLY MEMORANDUM DIRECTED TO COUNTY'S OPPOSITION
Case No. C 06-1730 JW

to print the title and summary on their initiative petitions *exactly as it was furnished to them by the County*. *See* Elections Code section 9105, subd. (c). The County are estopped from claiming that the initiative petitions are unlawful because Plaintiffs used the very title and summary issued to them by the County. *See, e.g., City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488-89 ("Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.").[5]

Finally, as demonstrated in the following sections, the Initiative petitions in this case fully complied with the "full text" requirement and the "single-subject" rule.

### A. The General Plan Amendment Initiative Complies Fully with the Procedural Requirements of the California Constitution and Elections Code by Including the "Full Text of the Proposed Ordinance" in Each Petition Section

The County contends that the General Plan Amendment Initiative petition violates Elections Code section 9101 because "it did not contain the full text of the documents it purports to amend." County Opp. at 11. Specifically, the County asserts that the "full text" requirement was violated because the Initiative petition did not attach the entire existing General Plan and the entire existing area plans, which "are referred to in, and affected by, the Initiative petition." *Ibid.*[6]

---

[5] As noted in Plaintiffs' opening brief, the County's sudden insistence that *Padilla v. Lever*, 429 F.3d 910 (9th Cir. 2005), controls this case and the Initiative petitions must be held to violate the FVRA is a turn-about even from their counsel's position at the February 28th Board of Supervisors meeting, when they were instead advised that it would require a considerable *extension* of the panel's decision in *Padilla* to apply the ruling in that case to cover the General Plan Amendment Initiative. See Nossaman Legal Analysis, attached as Exhibit B to the Declaration of Tony Anchundo in Support of [County's] Opposition to Application for TRO and Preliminary Injunction, at 18-19.

[6] The County contends that these omissions also violate the "re-enactment rule" of article IV, section 9, of the state Constitution, whose language the County conveniently neglects to provide. That section states: "A *statute* shall embrace but one subject, which shall be expressed in its title. If a *statute* embraces a subject not expressed in its title, only the part not expressed is void. A *statute* may not be amended by reference to its title. A section of a *statute* may not be amended unless the section is re-enacted as amended." (Emphasis added.) The County's argument is frivolous, for the re-enactment provision — as its language makes clear — applies only to state statutes, not to local ordinances. *See, e.g., People v. Norton* (1930) 108 Cal.App.Supp. 767, 288 P. 33, 36 ("[I]t is now settled that the constitutional provision does not apply to city ordinances."); *Ex Parte Haskell* (1896) 112 Cal. 412, 421 ("The provision of the constitution as to the requirement, in that respect, of acts of the legislature, is not made applicable in terms to municipal ordinances, and was evidently not intended so to apply. Its application would practically put an end to the practice of many cities and towns in the state, prevailing before, at the time, and since the

5

1  The County misreads Elections Code section 9101. That section provides, in full:

2  "Any proposed ordinance may be submitted to the board of supervisors by filing an initiative petition the county elections official, signed by not less than the number of voters specified in this article.

"Each petition section shall comply with Sections 100 and 9020 and contain a full and correct copy of the notice of intention and accompanying statement *including the full text of the proposed ordinance*." Elec. Code § 9101 (emphasis added).

The plain language of Section 9101 therefore requires only that the initiative petitions include the full text ***of the proposed ordinance***, not of any existing ordinances that might be "referred to," or "affected by," the proposed ordinance. The County does not argue, nor could it, that the General Plan Amendment Initiative petition lacked the full text of the proposed measure — the entire text of the measure the Initiative proposes to enact is set forth in full in the ***60 pages*** of the petition and in the seven new maps included in its accompanying Appendix A. Indeed, Plaintiffs ***went beyond what they were required to include*** in the Initiative petition by also appending the *existing land use maps* in Appendix B, just so there would be no confusion on the part of any voter as to precisely how those land use maps and designations were proposed to be changed. The County apparently wants this Court to transform section 9101's unambiguous language that the initiative petition must include "the full text of the proposed ordinance" into a requirement that the petition must *also* include the full text of all existing ordinances that might be referred to or affected by the proposed ordinance, ***even though no changes are proposed to those existing provisions***. *See* General Plan Amendment Initiative, Sec. 3 ("Unless explicitly modified by this initiative measure, all other provisions of the Monterey County General Plan remain unchanged."). Plaintiffs complied fully and strictly with the requirements of Elections Code section 9101.

The County's argument is likewise based on a misreading of *Mervyn's v. Reyes* (1999) 69

---

adoption of that instrument, of codifying the ordinance of the municipality, as in this instance, into compact and convenient form, in a single ordinance.").

6

*Melendez et al. v. Board of Supervisors et al.*
PLAINTIFFS' REPLY MEMORANDUM DIRECTED TO COUNTY'S OPPOSITION
Case No. C 06-1730 JW

Cal.App.4th 93 ("*Mervyn's*").[7]  In that case, as the County acknowledges, the initiative would have *re-enacted* portions of the city's general plan, but the proponents failed to attach to their petition *the very sections of the general plan* that they proposed to re-enact.  69 Cal.App.4th at pp. 96-97.  Significantly, the court did not hold that the petitions should have included the *entire general plan* because a portion of it was being amended, only that "[a]pproximately 17 pages of the general plan [i.e., the provisions that were to be re-enacted] were affected by the initiative" but were not attached to the petition.  *Id.* at p. 97.  In other words, the provisions to be re-enacted ***were*** the "text" of the proposed measure, but they were not included in the petitions.  As the *Mervyn's* court concluded: "It is undisputed that the initiative petition in the present case referred to, but did not actually contain, the various provisions of the General Policies Plan of the City of Hayward which were enacted by the [initiative] ordinance."  *Id.* at p. 99.[8]

That is manifestly not the case here.  The full text of ***all*** of the proposed changes to the Monterey County General Plan are set out in the General Plan Amendment Initiative, together with enough of the surrounding and unamended *existing* provisions of the Plan to provide voters with the full context of the proposed changes.  All the information that a voter needs to understand what the Initiative proposes to do is clearly set forth in black-and-white on the petition.  There has been absolutely no evidence presented that any of the over 15,000 signatories did not understand how the Initiative would work and what rights and limitations it presented for future development in Monterey County.  Neither *Mervyn's* nor any of the

---

[7] The County's reliance on *Hebard v. Bybee* (1998) 65 Cal.App.4th 1331 and *Nelson v. Carlson* (1993) 17 Cal.App.4th 732 is completely inapposite.  *Hebard* involved a violation of the Elections Code provision relating to municipal *referendum* petitions that requires each section of the petition to contain both "the identifying number or title" and "the text" of the ordinance that is the subject of the referendum; the proponents had incorrectly printed the title of the ordinance on their petition, omitting three critical words that made it unclear how the challenged ordinance would have affected certain properties.  Similarly, in *Nelson*, the referendum proponents had failed to attach to their petition the complete text of the General Plan whose adoption they were challenging.  In both cases, the proponents failed to comply with the clear statutory requirement.  Plaintiffs have not omitted any required language or ordinances from their Initiative petitions in this case, but have done exactly what the statute requires.

[8] The failure to include the text of the provisions that were to be re-enacted by the initiative was particularly egregious because the re-enactment of the missing 17 pages actually *changed the zoning* of property owned by Mervyn's.  The initiative, which began circulation in June 1996 and was not certified as sufficient until December 30, 1996, would have re-enacted the open space land use designations of the General Plan *in effect on January 1, 1996. Id.* at p. 97.  In the intervening time period, however, the City had changed the general plan designation for Mervyn's property from open space to industrial.  Passage of the initiative, therefore, would have had the effect of immediately returning Mervyn's land to open space — a fact that could not be determined from the face of the petition due to its failure to include the text of the General Plan policies and land use designations that would be re-enacted by the initiative.  *Ibid.*

7

many cases cited in that opinion extends the language of Elections Code section 9101 to require the proponents of an initiative to attach to the petition all existing provisions that *might be affected* by passage of the proposed measure. Rather, consistent with the plain language of the statute, those decisions merely require that the full text of the ordinance proposed to be enacted must be attached to the petition. *See, e.g., Billig v. Voges* (1990) 223 Cal.App.3d 963, 967-968 (holding that referendum petition that included only a summary of zoning ordinance was insufficient).

Indeed, the courts have consistently *rejected* arguments similar to the County's in construing related statutory and constitutional provisions requiring inclusion of a proposed ballot measure's full "text." For example, in *Brosnhan v. Brown* (1982) 32 Cal.3d 236, the Supreme Court rejected a challenge to Proposition 8 based on the measure's failure to include in its text all of the various provisions that it would impliedly repeal or amend, holding that a measure does not need to include the text of any provisions that are not *directly amended* by the proposition:

> "'To say that every statute which thus affects the operation of another is therefore an amendment of it would introduce into the law an element of uncertainty which no one can estimate. It is impossible for the wisest legislator to know in advance how every statute proposed would affect the operation of existing laws.' Similarly, it would have been wholly unrealistic to require the proponents of Proposition 8 to anticipate and specify in advance every change in existing statutory provisions which could be expected to result from the adoption of that measure." *Id.* at 287 (citation omitted; emphasis in original).[9]

---

[9] Likewise, in *California Gillnetters Assoc. v. Dept. of Fish & Game* (1995) 39 Cal.App.4th 1145, the court rejected appellants' argument that a voter-enacted measure "amended 52 sections of the Fish and Game Code," but that the ballot pamphlet did not contain the "complete text" of these provisions, as required by Elections Code section 9086 [former section 3571]. The court explained:

> "Proposition 132 did *not* amend those sections. Instead, it merely limited the territorial scope of those sections. Although Proposition 132 had an 'impact' on those existing provisions of the Fish and Game Code by limiting the geographical area to which they applied, it did not amend or repeal those sections except as set forth in Proposition 132."

*Id.* at 1165 (emphasis in original); *see also Tinsley v. Superior Court* (1983) 150 Cal.App.3d 90, 107 (holding that the ballot pamphlet for a voter-enacted constitutional amendment did not need to include a copy of "each *part* of the state Constitution which *might* be influenced by the initiative," commenting that "the argument ignores the plain language and clear intent of the governing statutes").

8

### B. The General Plan Amendment Initiative Does Not Violate the Single-Subject Rule

The County's argument that the Initiative is fatally defective because it "embraces more than one subject" is ridiculous. As the California Supreme Court held in *Amador Valley Jt. Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, in upholding the multi-faceted Proposition 13 against a single-subject challenge, "an initiative measure will not violate the single-subject requirement if, despite its varied collateral effects, all of its parts are 'reasonably germane' to each other." *Id.* at 230. Moreover, the courts "avoid an overly strict judicial application of the single-subject requirement, for to do so could well frustrate legitimate efforts by the people to accomplish integrated reform measures." *Id.* at 232.

Here, each of the provisions of the Initiative is "reasonably germane" to the measure's overarching goal of enacting a land use plan that "will reduce or eliminate the economic, social and environmental problems caused by rapid, large scale and scattered rural developments in Monterey County and enhance the quality of life of all Monterey County residents." Initiative, § 1.G. Among the critical objectives in that regard are to develop and implement policies that will provide more affordable housing for the working families of Monterey County and to locate new development in areas closer to where people work. *See, e.g., id.*, §§ 1.B & 1.E. The specific provision that the County complains about — which directs the County to maintain a list of persons who live in or work in Monterey County and who may wish to rent or purchase new housing in the community, and which requires that such persons be notified and be given the first opportunity to rent or purchase housing in new developments of five or more units (*id.*, § 3.f, Policy H-3.0(e)) — would directly assist in addressing these needs by helping residents and workers of Monterey County to find affordable and suitable housing. Far from having "no relationship to housing development or land use," as the County contends (see County Opp. at 15), this provision is intimately related to the Initiative's goal of developing comprehensive and smart land use policies for the County.

### II. THE COUNTY'S SUBSTANTIVE OBJECTIONS TO THE GENERAL PLAN AMENDMENT INITIATIVE ARE NOT PROPER GROUNDS FOR A PRE-ELECTION CHALLENGE AND LACK MERIT IN ANY EVENT

The County's remaining claims regarding the General Plan Amendment Initiative's alleged *substantive* defects are not proper subjects for pre-election challenge. The County would evidently like to pretend as though the California Supreme Court's recent decision in *Costa* emphasizing exactly this point

9

did not exist, but that opinion — and the longstanding principle it reaffirms that courts must defer consideration of such challenges until *after* the election is held in the absence of some compelling reason to do otherwise — cannot simply be ignored. California's courts consistently hold that "[e]ven grave doubts as to the constitutionality of an initiative measure do not compel a court to determine its validity prior to its submission to the electorate." *Gayle v. Hamm, supra*, 25 Cal.App.3d at 256. As the Supreme Court explained in *Legislature v. Deukmejian* (1983) 34 Cal.3d 658, unless "serious consequences will result if consideration of the validity of [the] measure is delayed until after [the] election," the "normal arguments in favor of the 'passive virtues' suggest that a court not adjudicate an issue until it is clearly required to do so. If the measure passes, there will be ample time to rule on its validity. If it fails, judicial action will not be required." *Id.* at 666.[10]

In the present case, each of the County's challenges to the *substance* of the Initiative can be raised and ruled upon after the election, *if* the Initiative were to pass. Those challenges are in any event devoid of merit, as even the following cursory examination establishes.

### A. The Initiative Does Not Conflict with State Law Governing the Adoption and Amendment of Housing Elements of General Plans

The County first contends that the Initiative would be invalid if enacted because California state law has allegedly "fully occupied the field in the area of housing," to the exclusion of the local electorate's right to amend the General Plan's Housing Element by initiative. County Opp. at 16-18. This argument is completely unsupported by — indeed, it is directly contrary to — the case law.

Most pertinent, perhaps, is the Court of Appeal's decision in *Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, which upheld the validity of a general plan amendment initiative adopted by the voters in Alameda County (Measure D) that is quite similar to the General Plan Amendment Initiative proposed by Plaintiffs for Monterey County. Like the Initiative here, Measure D relocated the urban growth boundary for eastern Alameda County to coincide with existing or proposed city urban growth boundaries. Land outside the relocated urban growth boundary was generally removed from previous urban development use designations and reserved instead for agriculture and open

---

[10]This should *especially* be the case where, as here, a *federal* court is requested to rule on the substantive validity of a proposed measure under *state law*.

10

space. Development of new housing, including the County's affordable housing obligations, was only permitted to occur inside the urban growth boundary, and the initiative's provisions could be changed only by a vote of the electorate. *Id.* at 1252-53. Home builders and property owners affected by Measure D's new restrictions brought suit, contending *inter alia* that the initiative conflicted with the state housing laws.

The Court of Appeal affirmed the trial court's grant of judgment on the pleadings dismissing the plaintiffs' challenge without even providing them an opportunity for a trial on the merits of their claims. *Id.* at 1259-66. After noting — contrary to the County's argument in this case — that "a state statutory scheme does not restrict or preempt the power of an initiative simply because the initiative includes some elements of statewide concern" (*id.* at 1257),[11] the court addressed ***and rejected*** the plaintiffs' argument — identical to the County's here — that the evidence would demonstrated that the initiative was invalid because its restrictions on development would prevent the County from complying with the state housing laws:

> "The documents are pre- and postelection reports or letters by County departments and agencies observing that Measure D, by restricting residential development in North Livermore, could affect the County's ability to meet its state housing obligations.

---

[11] The County seems to argue that merely because a particular subject matter, like housing, is an area of *statewide concern*, the state has fully occupied the field and preempted all local legislation, particularly local legislation by initiative. *See* County Opp. at 16-17. This is demonstrably incorrect. The state is deemed to have preempted all local regulation in an area only if "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality." *People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 485. Further, there is a "constitutionally based presumption that the local electorate could legislate by initiative on any subject on which the local governing body could also legislate." *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 777 (confirming local electorate's right to amend general plans by initiative).

As the very sections of the California Government Code cited by the County make clear (*see* County Opp. at 17), the state statutory scheme for adopting and amending the housing element of a general plan affirmatively *relies upon* local agencies to prepare and implement their *own local housing elements* in recognition of the fact that "each locality is 'best capable of determining what efforts are required by it to contribute to the attainment of the state housing goal, provided that such a determination is compatible with the state housing goal and regional housing needs.'" *Id.* at 17 (quoting Cal. Govt. Code § 65581(c)). Thus, far from *preempting* all local regulation, the state scheme grants wide discretion to local governments in the adoption and amendment of the housing elements of general plans. *See DeVita v. County of Napa, supra*, 9 Cal.4th at 781-82 ("The amendment of a general plan . . . is an act of formulating basic land use policy, for which localities have been constitutionally endowed with wide-ranging discretion.").

11

Although these comments may show that the County will face greater difficulty in complying with the housing statutes than it would have if the North Livermore area had not been redesignated for agriculture and open space, they are only opinions. They do not show that as a result of Measure D, it is now impossible for the County to comply.

". . . .

"[The initiative] authorizes the voters to approve an extension of the East County Area Plan urban growth boundary. We should not presume that the County electorate will fail to approve a proper corrective extension if the present boundary proves inadequate to meet mandated housing needs. [The Initiative] also authorizes the County Board of Supervisors to approve housing beyond that boundary to meet state housing requirements if certain factors are demonstrated and certain guidelines as to location of that housing are adhered to."

"All enactments, including initiatives, are to be construed, whenever possible, in a manner that preserves their validity. The express language of Measure D permits a construction that precludes it from violating the housing statutes; consequently there are no factual issues requiring resolution by trial on the merits. Because there is no actual conflict between Measure D and the enumerated state housing laws, respondents are entitled to judgment on appellants' causes of action for violation thereof." *Id.* at 1264-66.[12]

The General Plan Amendment Initiative, like Measure D, explicitly provides that "[n]othing in this initiative measure shall be applied to preclude County compliance with housing obligations under State law," and it specifically authorizes the Board of Supervisors to approve new residential development outside a Community Area if necessary to meet state-imposed housing obligations and certain other conditions are met. Initiative, § 4.C(1). The County appears not to have read either the Court of Appeal's decision in

---

[12]*Accord, De Vita v. County of Napa, supra*, 9 Cal.4th at 792-93 (rejecting argument that initiative should be invalidated because it prevents the Board of Supervisors from amending general plan to comply with state law without a vote of the people: "If a future board determines that a part of the general plan enacted by voter initiative must be amended for the sake of general plan currency, then the board can propose such an amendment to the electorate, as Measure J provides. We should not presume — nor, given the rule that doubts should be resolved in favor of the initiative and referendum power, should we assume the Legislature presumed — that the electorate will fail to do the legally proper thing.").

12

*Shea Homes Limited Partnership* or the text of the Initiative itself. Had it done so, it would be apparent that there is no conflict between the Initiative and the state housing laws.

### B. The Initiative Does Not Conflict with State Law Governing Annexations of County Territory

The County also argues that the Initiative impermissibly conflicts with the state legislative scheme governing municipal annexations and reorganizations by requiring voter approval for the expansion of "Areas of Development Concentration." The County contends that the voters' determinations may conflict with potential determinations of "spheres of influence" by the Local Agency Formation Commission ("LAFCO"). The Initiative in no way contradicts or interferes with the role or power of a LAFCO, however. In fact, the state statutes require LAFCO to adhere to the land use designations developed by the County or, in this instance, by the County's voters.

A LAFCO may "review and approve or disapprove with or without amendment, wholly, partially, or conditionally, proposals for changes of organization or reorganization," including a city incorporation, district formation, annexation to, or detachment from, a city or district, a consolidation of cities or special districts, and a disincorporation of a city. Cal Gov. Code § 56375. These functions do not relate to prescribing development for an area and therefore do not conflict with the Initiative; in fact, the Government Code explicitly states that a LAFCO "shall not impose any conditions that would directly regulate land use density or intensity, property development, or subdivision requirements." *Ibid.* Conversely, the Initiative does not authorize or permit County voters to have any say in the incorporation of, or in the annexation of any land to, a city or district. The Initiative thus does not interfere in any manner with the functions or duties of the LAFCO.

The County's suggestion that a prescribed "Area of Development Concentration" under the Initiative may interfere with the LAFCO's authority to designate a "sphere of influence" wholly misconstrues the purpose of a sphere of influence. A sphere of influence is "a plan for the probable physical boundaries and service area of a local agency, as determined by the commission." Gov. Code § 56076. The sphere of influence determination does not prescribe the permissible *land uses* in a given area, only its probable geographical boundaries. While the area remains under County jurisdiction, the County is fully authorized to prescribe the permissible land uses within those physical boundaries, which is all that the Area of

13

Development Concentration does. Once any land is incorporated into a city's boundaries, the voter-control provisions of the Initiative cease, and the permissible land uses are determined by the city.

In fact, the Initiative's proposed land use policies are perfectly consistent with the Legislature's policy dictates to LAFCOs. Government Code section 56377, subd. (a), provides that "[d]evelopment or use of land for other than open-space uses shall be guided away from existing prime agricultural lands in open-space use toward areas containing nonprime agricultural lands, unless that action would not promote the planned, orderly, efficient development of an area." The Areas of Development Concentration in the General Plan Amendment Initiative promote this same policy, concentrating development away from prime agricultural and open space lands into the specified areas of urbanized development. The establishment of these areas, and the rule that their boundaries can only be changed by a vote of the people, in no way impedes with the functions of LAFCO or conflicts with state policy in this regard.

### C.     The Initiative Does Not Conflict with the Subdivision Map Act

Lastly, the County asserts that the Initiative's exemption for certain categories of development projects that have vested or otherwise become legally eligible for conveyance conflict with the state Subdivision Map Act because they allegedly fail to go far enough in explicitly exempting all of the categories of development projects that cannot lawfully be subject to the Initiative's new growth-control provisions. County Opp. at 20-23.[13]

The short answer to the County's objection is "so what?" If the County were indeed correct that there are additional categories of development projects that should be, but are not, exempted from the Initiative's limitations, then the result would be that the new growth control restrictions contained in the Initiative could not lawfully be imposed upon these particular projects. *But that in no way means that the Initiative itself would be invalid.* Rather, it would simply be the case that certain projects, for one reason or another, had obtained a "vested" status that would exempt them *from application* of the new

---

[13] The very premise of the County's argument in this regard is incorrect. The Initiative explicitly states that "[t]his initiative shall not apply to any development project which has obtained, as of the effective date of the initiative: (1) A vested right pursuant to state law." Initiative, § 4.E. If the County is correct that there are additional categories of development projects that have obtained vested rights under the Subdivision Map Act then, by definition, these projects would be exempt from the Initiative under the above-quoted provision because they would have obtained "a vested right pursuant to state law." It is difficult to understand what the County is even complaining about in this argument.

14

1  law, just as those projects would not be subject to a change in zoning or other land use ordinance passed
2  by the Board of Supervisors itself.

3  The longer answer to the County's objection is that they are incorrect in their specification of the
4  various additional categories of development projects that they claim would be exempt from the Initiative's
5  restrictions under the Subdivision Map Act. For example, the County claims that Government Code
6  sections 66474.2 and 65961 "extend[] the Act's protections to developments with pending applications
7  for tentative map approval — notwithstanding the absence of an approved tentative map." County Opp.
8  at 22. This is not exactly correct. In *Golden State Homebuilding Assocs. v. City of Modesto* (1994)
9  26 Cal.App.4th 601, the court explained that such an interpretation of section 65691 would eviscerate the
10 distinction the Legislature drew between vesting and non-vesting tentative maps, rendering the statutory
11 protections afforded to the former superfluous. Accordingly, instead of interpreting section 65961 as
12 prohibiting a local agency from applying any newly enacted ordinances to its approval of a tentative map,
13 the court interpreted the section as only prohibiting the agency from imposing a requirement that it could
14 have "lawfully imposed" at the time the application was deemed complete. Thus, contrary to the County's
15 contention, pending tentative map applications may lawfully be subject to new restrictions that were enacted
16 subsequent to the initial application date.

17 Either way, however, the bottom line remains the same: The Initiative explicitly exempts from its
18 terms any development project that has obtained a vested right pursuant to state law (including a vested
19 right under the Subdivision Map Act), and even if it did not contain this explicit exemption, the Initiative
20 would not be *invalid* on this ground, but only *inapplicable* to specific, vested projects.

## CONCLUSION

22 In sum, the County's claims regarding the Initiative's alleged invalidity did not justify the Board's
23 refusal to fulfill its ministerial obligation to submit the General Plan Amendment to the voters at the June 6,
24 2006, primary election, are not properly subject to pre-election review in this action, and in any event
25 without merit. For all of these reasons, the Court should grant the injunctive relief requested by Plaintiffs
26 and order the County Defendants to place the Initiative on the June ballot.

15

*Melendez et al. v. Board of Supervisors et al.*
PLAINTIFFS' REPLY MEMORANDUM DIRECTED TO COUNTY'S OPPOSITION
Case No. C 06-1730 JW

DATE: March 20, 2006                    Respectfully Submitted,

STRUMWASSER & WOOCHER LLP
Fredric D. Woocher
Michael J. Strumwasser

LAW OFFICE OF J. WILLIAM YEATES
J. William Yeates
Keith G. Wagner
Jason R. Flanders

By  _____/ s /_____
        Fredric D. Woocher

*Attorneys for Petitioners and Plaintiffs
William Melendez, Ken Gray, Jyl Lutes,
Carolyn Anderson, and Landwatch Monterey*

16

*Melendez et al. v. Board of Supervisors et al.*
PLAINTIFFS' REPLY MEMORANDUM DIRECTED TO COUNTY'S OPPOSITION
Case No. C 06-1730 JW