```
1   OFFICE OF THE MONTEREY COUNTY COUNSEL
    CHARLES J. MCKEE (SBN 152458), COUNTY COUNSEL
2   LEROY W. BLANKENSHIP (SBN 065233), ASSISTANT COUNTY COUNSEL
    EFREN N. IGLESIA (SBN 71309), SENIOR DEPUTY COUNTY COUNSEL
3   168 W. ALISAL, 3RD FLOOR
    SALINAS, CA  93901-2680
4   Telephone:  (831) 755-5045
    Facsimile:  (831) 755-5283
5
    NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
6   STEPHEN N. ROBERTS (SBN 062538)
    NICOLE A. TUTT (SBN 179244)
7   50 CALIFORNIA STREET, 34TH FLOOR
    SAN FRANCISCO, CALIFORNIA 94111-4799
8   Telephone: (415) 398-3600
    Facsimile: (415) 398-2438
9   Email: montereycase@nossaman.com

10  NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
    JOHN J. FLYNN III (SBN 076419)
11  18101 VON KARMAN AVENUE
    IRVINE, CA  92612-0177
12  Telephone: (949) 833-7800
    Facsimile: (949) 833-7878
13  Email: montereycase@nossaman.com

14  Attorneys for Defendants/Respondents
    BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY;
15  TONY ANCHUNDO, IN HIS CAPACITY AS MONTEREY COUNTY
    REGISTRAR OF VOTERS; AND THE COUNTY OF MONTEREY
16
```

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM MELENDEZ; KEN GRAY; JYL LUTES; CAROLYN ANDERSON; AND LANDWATCH MONTEREY COUNTY,<br><br>Petitioners and Plaintiffs,<br><br>vs.<br><br>BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY; TONY ANCHUNDO, IN HIS CAPACITY AS MONTEREY COUNTY REGISTRAR OF VOTERS; COUNTY OF MONTEREY; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>Respondents and Defendants. | Case No.: C 06-01730 JW<br><br>ASSIGNED FOR ALL PURPOSES TO:<br>HON. JAMES WARE<br><br>**DEFENDANTS' REPLY RE: APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Date:  March 21, 2006<br>Time:  10:00 a.m.<br>Dept:  8 |

200425_2.DOC                                                                                                Case No.:  C 06-01730 JW

DEFENDANTS' REPLY RE: APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**(Page)**

1. INTRODUCTION. ...........................................................................................................1

2. THE BOARD FOLLOWED CORRECT PROCEDURE; THE *SAVE STANISLAUS* CASE IS IRRELEVANT IN VIEW OF THE POSTURE OF THIS CASE. ...................................................................................................................2

3. PLAINTIFFS ERR IN SUGGESTING THAT THEY MAY ESCAPE THE IMPLICATIONS OF THE PADILLA RULING BECAUSE THEY BEGAN COLLECTING SIGNATURES A COUPLE OF WEEKS BEFORE THAT DECISION. .....................................................................................................................5

4. CONCLUSION. ..............................................................................................................8

# TABLE OF AUTHORITIES

**(Page)**

**Cases**

*Austin v. City of Bisbee, Arizona*
855 F.2d 1429 (1988) ............................................................................................................. 6

*Chevron Oil. v. Huson*
404 U.S. 97 (1971) ............................................................................................................. 6, 7

*Citizens for Responsible Behavior v. Superior Court*
1 Cal. App. 4th at p. 1013 (1991) ........................................................................................... 4

*Costa v. Superior Court*
37 Cal. 4th 986 (2006) ....................................................................................................... 4, 5

*deBottari v. City Council*
171 Cal. App. 3d 1204 (1985) ................................................................................................ 4

*Farley v. Healey*
67 Cal. 2d 325 (1967) ............................................................................................................. 4

*Harper v. Virginia Dept. of Transportation*
509 U.S. 86 (1993) ............................................................................................................. 6, 7

*Lopez v. County of Monterey*
525 U.S. 266 (1999) ................................................................................................................ 2

*Padilla v. Lever*
429 F.3d. 910 (2005) ..................................................................................................... passim

*Save Stanislaus Area Farm Economy v. Bd. of Supervisors*
13 Cal. App. 4th 141 (1993) ....................................................................................... 1, 2, 3, 5

*State v. Nakata*
76 Haw. 360, 378, fn. 24 (Haw. 1994) ................................................................................... 6

*United States v. Tacoma*
332 F.3d 574 (2003) ............................................................................................................... 7

# TABLE OF AUTHORITIES (cont'd)

**(Page)**

*Zaldivar v. Los Angeles*
   780 F.2d 823 (1985) .............................................................................................. 7

**Statutes**

Cal. Elec. Code §9114 ................................................................................................... 5

**Other Authorities**

Cal. Const., art. II, § 8 .................................................................................................. 4

## 1. INTRODUCTION.

For the reasons set forth in Defendants' Opposition brief, injunctive relief should be denied, whether it is a requested TRO, preliminary injunction or permanent injunction. Getting to the arguments on the merits, the Initiative petition underlying this case violates the Federal Voting Rights Act (FVRA), state election law and state substantive law.

Because of the procedure that has occurred in this case, especially the simultaneous briefing, Defendants addressed the bulk of Plaintiffs' Arguments in their opening brief in opposition. Especially in view of the short time period available to the Court to review briefing, Defendants will not repeat what they said in the original brief and respectfully invite the Court's attention to the argument and authorities presented there. In fact, Plaintiffs did not even address five of the six reasons relief should be denied, and therefore Defendants have been given nothing to which to respond.

Consequently, this Reply to Plaintiffs' Brief will do two things only: disperse the cloud created by Plaintiffs' confusion over the significance of the *Save Stanislaus* case (*Save Stanislaus Area Farm Economy v. Bd. of Supervisors*, 13 Cal. App. 4th 141 (1993)) and reply to a few points regarding retroactivity made by Plaintiffs that were not fully addressed in the initial Opposition brief.[1]

Defendants had understood that the simultaneous briefs to be filed on the evening of March 18 were to be on the merits. Accordingly, Defendants addressed all six grounds for keeping this Initiative off the ballots. Although Plaintiffs indicated they were familiar with all the arguments (Plaintiffs' Brief, page 2, lines 6-17), they refuse to address all except the *Padilla* issue, claiming the other issues "border on the frivolous." By such a stance, if they now choose to brief these issues in their Reply, they effectively eliminate the possibility of Defendants being able to respond in a brief to whatever the Plaintiffs' position is on these points. Perhaps they will be consistent and again merely dismiss them as

---

[1] The Plaintiffs' brief also contains a heavy dose of *ad hominem* attacks. The Board's actions are a "pretext" (p.12), the Board has ulterior "motivations" (p. 12), the Board is "unilateral" (p.8), the Defendants' law firm represents other clients that may have interests opposing the initiative (p. 10), and so on. While of course Defendants would be prepared to respond to scurrilous allegations, since *ad hominem* attacks are no more relevant here to the Court's deliberations than they would be in other cases, the Defendants will not bother to respond. Perhaps all that such tactics do is suggest that Plaintiffs have so little confidence in the legal merits of their argument, that they must resort to personal vituperativeness.

"frivolous" in the Reply. If Plaintiffs suddenly decide the issues are no longer frivolous and are valid legal points to be addressed, presumably they will now submit a brief on them and Defendants will need to deal with what they have to say in oral argument.

## 2. THE BOARD FOLLOWED CORRECT PROCEDURE; THE *SAVE STANISLAUS* CASE IS IRRELEVANT IN VIEW OF THE POSTURE OF THIS CASE.

Because there is no substance to their argument on the merits, Plaintiffs spend a good deal of time clouding the issues by trying to persuade the Court that the Board did not follow proper procedure below and had no authority to reject putting an illegally circulated and substantively invalid measure on the ballot. The Plaintiffs are wrong on all fronts. They get the state law wrong—the Board did act properly under both federal and state law. But most important, this case is in federal court and *Save Stanislaus* is utterly irrelevant to this Court's jurisdiction and deliberations.

First, *Save Stanislaus* did not involve any assertion of violation of federal law. Among the reasons the Board here refused to put this Initiative petition on the ballot were the FVRA and the decision of the Ninth Circuit interpreting it in *Padilla v. Lever*, 429 F.3d. 910 (2005). That is federal law. Whether or not the Board is supposed to ignore state law in putting a matter on the ballot, it may not knowingly act illegally under controlling federal law, the FVRA. *See, e.g. Lopez v. County of Monterey*, 525 U.S. 266, 282-283 (1999). While, as the Court has already ascertained, the *Padilla* case is new and its ramifications have yet to be developed, no one can reasonably suggest that the Board was supposed to flout the FVRA and the Ninth Circuit deliberately. There is no authority cited by Plaintiffs suggesting that the County Board had a ministerial duty to ignore federal law as it understands it. It is beyond cavil that the Board acted properly for this reason alone—because federal law is involved and state procedural law is irrelevant to that. Indeed, had the Board violated federal law, then the *Madrigal* case plaintiffs would have a reasonable argument that the Board acted illegally, and their request for an injunction would be a reasonable one. In one sense, the Board was faced with Hobson's choice: act in violation of federal law and be subject to suit by the *Madrigal* plaintiffs; obey federal law and be subject to suit by the *Melendez* plaintiffs. That the Board chose to follow federal law hardly can be questioned as the right solution to that problem.

Further, the Board's choice below makes no difference now to this Court, which is addressing the numerous federal and state procedural flaws and substantive issues involved. It does not matter whether this matter came before the Court by virtue of the plaintiffs in the *Madrigal* case saying the Board acted wrongly, or the plaintiffs in the *Melendez* case saying that. The Court has all the parties and issues before it; the case is ripe for decision. What state procedural law under *Save Stanislaus* might have been in the absence of federal issues is completely irrelevant to what is now before this Court.

In any event, the Plaintiffs do not even get the state law correct. To erase any suggestion that the defendant Board acted improperly, one need only look at the flaws in Plaintiffs' analysis of state court review of elections. There are at least three categories of reasons upon which this Court can rely in deciding that this election should not proceed: (i) the circulation of the petition violates federal law (*Padilla*); (ii) the circulation of the petition violates state election law (Full-Text and Single-Subject Rules); and (iii) the proposed measure is clearly illegal under state law (the last three reasons set forth in the Opposition Brief). The first two groups of issues are procedural ones (whether the Initiative was brought to the ballot properly), the last group substantive ones (whether the substance of the measure violates state law). *Save Stanislaus* deals only with the last category, substantive issues—the board there had rejected the Initiative because it found it to be illegal. *Save Stanislaus*, 13 Cal. App. 4th at 145. Dealing only with substantive issues, the case is not relevant to procedural issues such as FVRA, the Full-Text Rule and the Single-Subject Rule.

In contrast is *Mervyn's v. Reyes*, 69 Cal. App. 4th 93 (1998), a more recent Court of Appeal case. That case involved procedural issues, whether the initiative petition complied with state election law, similar to two of the reasons at issue here. The *Mervyn's* court stated that the city council in that case "had the ministerial duty to reject the petition" (69 Cal. App. 4th at 104-105) because of the Election Code violations. Under *Mervyn's* then, this Board acted properly in rejecting the Initiative for procedural reasons. Even if the two Court of Appeal decisions were in conflict, which they are not, presumably the County should have followed the more recent one, rendering *Save Stanislaus* even more irrelevant.

Further, time and time again, even where cases have apparently come before the state courts after an improvident refusal by a government to put a matter on the ballot, the courts proceed to look at the

substantive issues and retroactively validate what the Board did. *See, e.g., Farley v. Healey*, 67 Cal. 2d 325, 327 (1967); *Citizens for Responsible Behavior v. Superior Court*, 1 Cal. App. 4th at p. 1013 (1991); *deBottari v. City Council*, 171 Cal. App. 3d 1204 (1985). Thus even were this a state court, and even had the Board acted improperly, the Court would still properly be able to deal with the underlying issues.

Plaintiffs point to the California Supreme Court's recent decision in *Costa v. Superior Court*, 37 Cal. 4th 986 (2006). But that case is hardly inconsistent with the rules described above. The court stated the general rules as follows:

> Past California decisions have observed that, as a general rule, "it is usually more appropriate to review constitutional and other challenges to ballot propositions or initiative measures after an election rather than to disrupt the electoral process by preventing the exercise of the people's franchise, in the absence of some clear showing of invalidity." (*Brosnahan v. Eu* (1982) 31 Cal.3d 1, 4 (*Brosnahan I*).) More recently, however, in *Senate of the State of Cal. v. Jones* (1999) 21 Cal.4th 1142 (*Senate v. Jones*), we noted that decisions after *Brosnahan I* "have explained that this general rule applies primarily when a challenge rests upon the alleged unconstitutionality of the substance of the proposed initiative, and that the rule does not preclude preelection review when the challenge is based upon a claim, for example, that the proposed measure may not properly be submitted to the voters because the measure is not legislative in character or because it amounts to a constitutional revision rather than an amendment. [Citations.]" (21 Cal.4th at p. 1153.) In the *Senate v. Jones* decision itself, we held that a constitutional challenge that rests upon a claim that a proposed initiative measure violates the single-subject rule may, in an appropriate case, be considered and resolved prior to the election, emphasizing that the constitutional provision establishing the single-subject limitation by its explicit terms contemplates the possibility and propriety of preelection review in providing that "[a]n initiative measure embracing more than one subject *may not be submitted to the electors* or have any effect." (Cal. Const., art. II, § 8, subd. (d), italics added.)
>
> The legal challenge in the present case does not relate to the substantive validity of the initiative measure but rather involves a procedural claim pertaining to the preelection petition-circulation process. Past cases establish that, at least as a general matter, this type of procedural challenge — that is, a challenge based upon an allegation that a proposed initiative measure has failed to comply with the essential procedural requirements necessary to qualify an initiative measure for the ballot (for example, an initiative petition's alleged failure to have obtained the requisite number of qualified signatures) — may be brought and resolved prior to an election.

*Id.* at 1005-1006 (footnote omitted).

1   Nor does the *Costa* decision in any way prevent this Court from reaching a decision on the
2 substantive issues, even were a state court's decisions somehow binding on a federal court in this
3 manner. The first part of the passage quoted above makes clear that waiting until after an election is
4 only a general rule, and will not preclude preelection review when the substantive invalidity is shown by
5 a "clear showing of invalidity." This Court is free to decide not only the procedural issues, but the
6 substantive ones as well. Defendants have made a clear showing of invalidity.

7   Without authority, Plaintiffs take the position (see Plaintiffs' Brief, page 2, lines 6-17), that all
8 issues other than *Padilla* are substantive issues, not procedural ones. If that is their intent, they are badly
9 mistaken. Both the Single-Subject and Full-Text issues are procedural ones as illustrated by the
10 discussion in both the *Mervyn's* and *Costa* cases.

11   Because Defendant Tony Anchundo "certified" the Initiative petition, the Plaintiffs argue that
12 the Board cannot refuse to put it onto the ballot. They fail to note that his only duties with respect to
13 certification are to "ascertain whether or not the petition is signed by the requisite number of voters."
14 Cal. Elec. Code §9114. His certification thus has nothing to do with compliance with FVRA, or the
15 Full-Text Rule, or the Single-Subject Rule. Even if he were charged with those tasks, and had therefore
16 erroneously missed the issues here, do Plaintiffs seriously suggest that the Board should be powerless to
17 correct the error when it votes on whether to put the measure on the ballot? The Plaintiffs' theory of the
18 case makes the statutorily required Board vote meaningless.

19   The bottom line is that the Board acted properly under all relevant authority. Neither *Save*
20 *Stanislaus* nor any other state court decision is an impediment to this Court's proceeding to a decision
21 on the merits.

22 **3.    PLAINTIFFS ERR IN SUGGESTING THAT THEY MAY ESCAPE THE**
23       **IMPLICATIONS OF THE PADILLA RULING BECAUSE THEY BEGAN**
24       **COLLECTING SIGNATURES A COUPLE OF WEEKS BEFORE THAT DECISION.**

25   Defendants have already anticipated in their opening brief many of the arguments that Plaintiffs
26 have made concerning the application of FVRA to this Initiative, and they need not be repeated here.
27 But Defendants cannot allow Plaintiffs' erroneous characterization of the supposed retroactive
28 application of the *Padilla* decision to this Initiative to pass without some comment. The law is that a

court's interpretation of the meaning of a statute is deemed applicable as of the date of enactment of that statute, not the date of the decision interpreting the statute. Therefore, the *Padilla* ruling would apply to this Initiative even had it been further along in the process than it was. Plaintiffs' arguments against applying *Padilla* to this Initiative avoid addressing this rule head on, and rely on either inapplicable or **overruled** authorities.

The *Camacho* case, cited at page 19 of Plaintiffs' Brief, is inapt because it concerned only the interpretation of rules of judicial procedure, specifically a Ninth Circuit rule and a Federal Rule of Appellate Procedure, rather than an act of Congress; and the rules in question concerned the time within which to file an appeal. *George v. Camacho*, 119 F.3d 1393, 1396 (1997). Although the *Camacho* court denied retroactive application in that case, it nevertheless explicitly acknowledged the general rule of retroactive application. *Id.* at 1398. The Court explained that there are exceptions to the rule, and that procedural rules regarding time for performing acts presented unique practical justifications against retroactive application. *See, e.g. id.* at 1397, fn. 6 ("We note that under the dissent's theory, this would mean that whenever we change an applicable time limit that is jurisdictional in nature, any case that does not meet the new requirement must be dismissed so long as it is still pending at some level in the federal courts. We do not even consider the possible effect on cases that are no longer pending but might be subject to reopening by one means or another.")

The **overruled** authority upon which Plaintiffs rely is *Austin v. City of Bisbee, Arizona*, 855 F.2d 1429 (1988). That case first acknowledged the general rule in favor of retroactivity: "We recognize that 'the longstanding common law rule is that a decision reformulating federal civil law will usually be applied retroactively.'" *Id.* at 1432. The *Austin* court then proceeded to apply a 3-prong test, upon which Plaintiffs rely here, taken from *Chevron Oil. v. Huson*, 404 U.S. 97 (1971). However, five years after the *Austin* decision, the United States Supreme Court overruled *Chevron* in *Harper v. Virginia Dept. of Transportation*, 509 U.S. 86 (1993). *See, e.g., State v. Nakata*, 76 Haw. 360, 378, fn. 24 (Haw. 1994) ("The United States Supreme Court, however, has overruled its previous precedents in the non-retroactivity area and now applies retroactively all its new criminal decisions whose holdings are applied to the appealing party. … Under federal law, a similar rule also now applies in the civil context.

DEFENDANTS' REPLY RE: APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1  *Harper* overruled *Chevron Oil Co.* ... and applied a civil decision retroactively. (Citations omitted)").
2  The Plaintiffs in this case thus have erroneously relied upon overruled precedent.

3        Here the question is the retroactive application of the *interpretation* of an act of Congress, and
4  not the application of a new rule of law. The applicable standard is crystal clear: once a court has
5  announced its interpretation of a statute, that interpretation is deemed applicable to that statute since the
6  date of the statute's enactment, rather than the date of the decision. *See United States v. Tacoma*, 332
7  F.3d 574, 580 (2003). In fact, so clear is that rule and so forceful the policy underlying it that the Ninth
8  Circuit in *Tacoma* reversed the condemnation of Indian land which was based on the misinterpretation
9  of a federal statute, despite the fact that that condemnation had occurred almost 80 years earlier. *Id.* at
10  581. There is, therefore, no reason why *Padilla's* interpretation of FVRA as applying to petitions with
11  the requisite state involvement should not apply to Plaintiffs' petition, or why the Board's rejection of
12  the Initiative more than three months after the *Padilla* decision was not proper. This is especially true
13  given that the Padilla court made explicit that it was not announcing new law, but merely following the
14  interpretation of FVRA that it announced in *Zaldivar v. Los Angeles*, 780 F.2d 823 (1985). *Padilla,*
15  *supra*, 429 F.3d at 917.

16        Defendants note that even if Plaintiffs' preferred test, the overruled *Chevron* test, were still the
17  law, *Padilla* would apply to this Initiative. (1) As noted above, *Padilla* did not establish a new principle
18  of law, but explicitly stated that it was following 20-year-old precedent set forth in *Zaldivar*; (2) the
19  application of *Padilla* will further the purposes of FVRA by requiring this and other initiatives to be
20  translated into Spanish, which is the whole point of the bilingual provisions of FVRA; and (3) no
21  inequity will result because, especially given Plaintiffs' claims that their initiative was so popular that it
22  gathered the requisite signatures in just one month (*see Plaintiffs' Brief* at p. 3), Plaintiffs had sufficient
23  time after *Padilla* was announced in November to circulate the initiative petition in proper form and still
24  get it qualified for the ballot.

25        The conclusion is inescapable that both Plaintiffs and the County were bound by the *Padilla*
26  decision, and that the Board's refusal to place it on the ballot for its FVRA violations alone was proper.
27
28

4.  **CONCLUSION.**

As set forth in the Opposition Brief and this Reply, this Court should deny the Petitioner's application for a temporary restraining order and injunction on the merits, for the following reasons:

- This Court has authority to decide all the issues on the merits, whether they are state or federal, procedural or substantive.
- *Padilla*'s reasoning extends to this Initiative petition, as well as to recall petitions, and is applicable unless and until the Ninth Circuit changes or clarifies its ruling.
- *Padilla* was the law prior to the time the Board took action; even were that not the case, *Padilla* would be applied retroactively.
- The Initiative petition violates the Full-Text and Reenactment Rules Rule.
- The Initiative petition violates the Single-Subject Rule.
- The Initiative petition conflicts with state legislation governing housing elements.
- The Initiative petition conflicts with state law governing annexations of county territory.
- The Initiative petition's development exclusion categories conflict with the Subdivision Map Act.

Dated: March 20, 2006         NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP

By: ___/ S /___
STEPHEN N. ROBERTS

Attorneys for Defendants/Respondents
BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY; TONY ANCHUNDO, IN HIS CAPACITY AS MONTEREY COUNTY REGISTRAR OF VOTERS; AND THE COUNTY OF MONTEREY