FREDRIC D. WOOCHER (SBN 96689)
MICHAEL J. STRUMWASSER (SBN 58413)
STRUMWASSER & WOOCHER LLP
100 Wilshire Boulevard, Suite 1900
Santa Monica, California 90401
Telephone:    (310) 576-1233
Facsimile:    (310) 319-0156
E-mail:  fwoocher@strumwooch.com

J. WILLIAM YEATES (SBN 84343)
KEITH G. WAGNER (SBN 210042)
JASON R. FLANDERS (SBN 238007)
LAW OFFICE OF J. WILLIAM YEATES
3400 Cottage Way, Suite K
Sacramento, CA 95825
Telephone:    (916) 609-5000
Facsimile:    (916) 609-5001
E-mail:  byeates@enviroqualitylaw.com

Attorneys for Plaintiffs William Melendez et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MELENDEZ, KEN GRAY, JYL LUTES, CAROLYN ANDERSON, and LANDWATCH MONTEREY COUNTY,<br><br>                                    Plaintiffs,<br><br>v.<br><br>BOARD OF SUPERVISORS OF THE COUNTY OF MONTEREY; TONY ANCHUNDO, in his capacity as MONTEREY COUNTY REGISTRAR OF VOTERS; COUNTY OF MONTEREY; and DOES 1 through 10, inclusive,<br><br>                                    Defendants. | CASE NO. C 06-1730 JW<br><br>MELENDEZ PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MADRIGAL PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION<br><br><br>Judge: Hon. James Ware<br>Dept: 8<br>Date: March 21, 2006<br>Time: 10:00 a.m. |

**CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  THE PANEL DECISION IN *PADILLA* DID NOT APPLY TO INITIATIVE AND REFERENDUM PETITIONS AND IT SHOULD NOT BE EXTENDED TO APPLY TO THE INITIATIVE PETITIONS IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. ENJOINING THE ELECTION ON PLAINTIFFS' INITIATIVE IN THIS CASE BECAUSE THE PETITIONS WERE PRINTED ONLY IN ENGLISH WOULD NOT MEANINGFULLY FURTHER THE LAUDABLE PURPOSES OF THE VOTING RIGHTS ACT, BUT WOULD ONLY SERVE TO DENY THE THOUSANDS OF CITIZENS WHO SIGNED THE PETITIONS THEIR CONSTITUTIONAL RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. EVEN IF THIS COURT WERE TO EXTEND THE *PADILLA* DECISION TO APPLY TO INITIATIVE PETITIONS, THE APPROPRIATE REMEDY UNDER THE VOTING RIGHTS ACT IS NOT TO PROHIBIT THE IMPENDING ELECTION ON THE QUALIFIED INITIATIVE PETITIONS . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

*Melendez et al. v. Board of Supervisors et al.*
MELENDEZ PLAINTIFFS' OPPOSITION TO MADRIGAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. C 06-1730 JW

**TABLE OF AUTHORITIES**

**Federal Cases**

*Badillo v. City of Stockton*, No. S-87-1726, 1988 U.S. Dist. LEXIS 17601 ................ 10

*Delgado v. Smith,* 861 F.2d 1489 (11th Cir. 1988), *cert. denied,* 492 U.S. 918,
    109 S.Ct. 3242 (1989) ................................................... 1

*George v. Camacho*, 119 F.3d 1393 (9th Cir. 1997) ................................. 13

*Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993) ............................ 13

*Hoyle v. Priest*, 59 F.Supp.2d 827 (W.D. Ark. 1999) ................................ 1

*Meyer v. Grant*, 486 U.S. 414 (1988) .............................................. 5

*Montero v. Meyer,* 861 F.2d 603 (10th Cir. 1988), *cert denied*, 492 U.S. 921,
    109 S.Ct. 3249 (1989) ............................................... 1, 5

*Padilla v. Lever*, 429 F.3d 910 (9th Cir. 2005) ................................. *passim*

*Reynolds v. Sims*, 377 U.S. 533 (1964) ........................................ 11, 12

*United States v. Berks County, Pennsylvania,*
    250 F.Supp.2d 525 (E.D. Pa. 2003) ................................... 11, 12

*United States v. Metropolitan Dade County, Florida*,
    815 F.Supp. 1475 (S.D. Fla. 1993) .................................... 10, 12

**State Cases**

*Costa v. Superior Court* (2006) 39 Cal.Rptr.3d 470 ............................. 7, 8

*Schmitz v. Younger* (1978) 21 Cal.3d 90 ......................................... 4

**Federal Statutes**

28 C.F.R. § 5519(a) ............................................................ 6

**State Statutes**

Cal. Elec. Code,

    § 8020 et seq. ............................................................ 6

    § 9118 ................................................................... 5

*Melendez et al. v. Board of Supervisors et al.*
MELENDEZ PLAINTIFFS' OPPOSITION TO MADRIGAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. C 06-1730 JW

# INTRODUCTION

Plaintiffs in *Madrigal v. County of Monterey* seek a preliminary injunction to restrain the County from holding an election on the General Plan Amendment Initiative on the *sole ground* that the Initiative petitions allegedly violated the Voting Rights Act because they were not printed in Spanish, as well as English.

Certain significant underlying facts and events are not in dispute. First, all parties acknowledge that before a divided panel of the Ninth Circuit issued its decision in late November of last year in *Padilla v. Lever*, 29 F.3d 910 (9th Cir. 2005), **no court anywhere in the country had ever held** that a privately drafted and circulated recall, initiative, or referendum petition was subject to Section 203 of the Voting Rights Act and had to be printed in multiple languages pursuant to that Act. **To the contrary**, in 1988, two different Courts of Appeals had independently held that the language minority provision of the Voting Rights Act ***did not apply to initiative petitions*** in Colorado and Florida, and the United States Supreme Court denied petitions for certiorari each time. *Montero v. Meyer*, 861 F.2d 603 (10th Cir. 1988), *cert denied,* 492 U.S. 921, 109 S.Ct. 3249 (1989); *Delgado v. Smith*, 861 F.2d 1489 (11th Cir. 1988), *cert denied*, 492 U.S. 918, 109 S.Ct. 3242 (1989). A District Court in Arkansas likewise concluded in 1999 that "signing an initiative petition is not tantamount to voting in an election" and "does not fall within the purview of the Voting Rights Act." *Hoyle v. Priest*, 59 F.Supp.2d 827, 834 (W.D. Ark. 1999). Indeed, in 2004, the District Court in the *Padilla* case itself had specifically held that a recall petition in California is not governed by section 203 of the Voting Rights Act because it was not "provided by" the county elections officials and was not material or information "relating to the electoral process," and the Ninth Circuit had denied an appeal from that ruling seeking to enjoin the election on the recall at issue in that case. *See Padilla*, 429 F.3d at 914 & n.4.

Second, it is also undisputed that Plaintiffs had submitted their Notice of Intent to the County Registrar, had received a title and summary — in English only — from County Counsel, and had begun the process of circulating their Initiative petition in this case ***over a month before*** the panel issued its decision in *Padilla*. Although the exact number of signatures that Plaintiffs had gathered on the petition by the time the *Padilla* decision came down is not known, it is clear that most, if not all, of the necessary signatures had already been gathered (Plaintiffs submitted almost 50% more signatures — almost 4,000 in raw

1

*Melendez et al. v. Board of Supervisors et al.*
MELENDEZ PLAINTIFFS' OPPOSITION TO MADRIGAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. C 06-1730 JW

numbers — than they needed for qualification), and Plaintiffs could not at that point have started the process over and still have qualified the Initiative for the June ballot.

Third, no one disputes that if the General Plan Amendment Initiative were permitted to appear on the upcoming June election ballot, the County election officials will be translating and providing all of the materials relating to the Initiative — the ballots, the arguments for and against the measure, the County Counsel's Impartial Analysis, and the text of the proposed initiative — in both English and Spanish, *in full compliance with the Voting Rights Act*. Spanish-speaking citizens will thus have every opportunity to engage in a "full and robust debate" on the merits or demerits of the proposed Initiative in connection with *the actual election* on the measure.

Finally, although the parties very strenuously disagree about whether the *Padilla* decision and opinion should be held to apply to initiative petitions in the State of California, it is undeniable that *the specific holding and ruling* in that case addressed only *recall* petitions. As a consequence, neither the California Attorney General, the Secretary of State, nor — to Plaintiffs' knowledge — any other county elections official in the state has, even since *Padilla* came down, issued a title and summary in any language other than English or required an initiative or referendum petition to be printed or circulated in Spanish. If this Court were to accept the *Madrigal* plaintiffs' argument, then, it would be *the first in the entire country* to hold that initiative petitions are subject to section 203 of the FVRA and, if the Court's ruling were not applied prospectively only, it would create massive chaos and confusion *on the eve of the imminent June election*, when scores of citizen-sponsored initiatives that had not been circulated in languages other than English are poised to be voted on as a fundamental component of our democratic process. The decision would have an equally unsettling impact on the dozens of state and local initiatives — some 50 statewide initiatives alone — that have begun circulating in the hope of qualifying for the November ballot.

Under these circumstances, Plaintiffs submit that *regardless of this Court's determination as to whether initiative petitions should be deemed to fall within the coverage of the FVRA*, the *Madrigal* Plaintiffs' motion for a preliminary injunction enjoining the election on the General Plan Amendment Initiative should be denied. Contrary to Madrigal's claims, that would not be an "illegal election." The Voting Rights Act contains no provision setting forth any particular remedy for a violation

2

of section 203 of the Act. Rather, the courts are expected to fashion a remedy, if necessary, based upon traditional equitable principles. In the present case, those principles dictate that the election on the General Plan Amendment Initiative be allowed to proceed in compliance with the FVRA, so that Plaintiffs and the thousands of Monterey County voters who signed the Initiative petition — including ***thousands of Latino citizens*** who, like Plaintiff Melendez, support the proposed general plan amendments — will not be denied the right to exercise their constitutionally protected initiative power.

## ARGUMENT

**I. THE PANEL DECISION IN *PADILLA* DID NOT APPLY TO INITIATIVE AND REFERENDUM PETITIONS AND IT SHOULD NOT BE EXTENDED TO APPLY TO THE INITIATIVE PETITIONS IN THIS CASE**

The parties have all properly identified the central issues in this case: (1) Should the panel's decision in *Padilla* be extended to apply not only to the recall petitions that were at issue in that case, but to initiative (and referendum?) petitions as well; and (2) If the FVRA is found by this Court to cover initiative petitions, does that finding require that the election on the General Plan Amendment Initiative in this case cannot go forward, even though all of the materials distributed to the voters for that election will be distributed in both English and Spanish.

Plaintiffs will not make any effort in this brief to re-argue *Padilla*'s decision on the merits, even though certain aspects of the majority's analysis are highly questionable. To the extent *Padilla* is the law of the Ninth Circuit, this Court is of course bound to follow it.[1] But that does not mean that this Court must likewise *extend* it to apply to a context that was not before the Court of Appeals in *Padilla*.

As noted in Plaintiffs' brief in support of their request for injunctive relief, it is very significant that the panel majority in *Padilla* did not ***disagree*** with the decisions of the Tenth and Eleventh Circuit Courts

---

[1] Plaintiffs do question, however, what consideration should be given to the fact that the mandate in *Padilla* has not yet issued because petitions for rehearing and rehearing en banc have been pending for more than three months. Clearly, something is up within the Ninth Circuit, and the Court could well issue an order at any moment vacating the panel decision and setting the case for hearing before the full Court of Appeals. Moreover, it is Plaintiffs' understanding that because the mandate has not yet issued, the decision is not final with respect to the parties in the *Padilla* case itself. It would therefore be quite anomalous for the decision to be deemed applicable and binding upon everyone ***but the very parties in that case***. Plaintiffs are not suggesting that this Court can disregard the panel decision in *Padilla* just because petitions for rehearing and rehearing en banc are still pending, but Plaintiffs do believe that this circumstance suggests that courts should act with great caution in extending that ruling to any situations that are not directly governed by the decision and should not grant any relief that would needlessly harm other parties in the event the panel's decision were overturned.

3

of Appeals holding that the FVRA did not apply to initiative petitions, but that it instead ***distinguished*** the initiative schemes in those cases from the statutory recall scheme in California, explaining that the elections officials in California could be said to have "provided" the recall petitions because they are required under California law to review and ***approve*** both the form and ***content*** of the recall petition ***prior*** to its circulation. 429 F.3d at 923-24 ("Elections officials could have altered the text of the petition or demanded that the Recall Proponents publish it in Spanish as well as English, but chose not to do this and instead approved the petitions in their English-only form."). As the Madrigal plaintiffs themselves acknowledge, "the *critical factor* for the satisfaction of this ["provided by"] prong with respect to recall petitions was the fact that, under California law, such petitions are reviewed by county agencies, which have some *authority to require changes to their contents* in order to bring them into compliance with state law." Madrigal Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction ("Madrigal Memo") at 17 (emphasis added).

California elections officials have no similar opportunity to review and approve either the form or content of ***initiative*** petitions prior to their circulation, and they have ***no authority whatsoever*** to require that changes be made to their contents or to alter the text of the petitions prior to their circulation.[2] This, then — in the Madrigal plaintiffs' own words — is "the critical factor" that distinguishes recall petitions from initiative and referendum petitions in California for purposes of the *Padilla* panel's decision. It is also, of course, one of the factors that led the *Padilla* court to conclude that recall petitions in California were distinguishable from the initiative petitions at issue in *Montero* and *Delgado*. It is likewise one of the factors that this Court should rely upon to conclude that the initiative petition in this case was not "provided by" Monterey County.

---

[2]Madrigal takes issue with the statement in Plaintiffs' opening brief that "the first time an elections official ever sees an initiative petition is after it has been privately circulated and it has been submitted for verification of the signatures on it." Madrigal contends that "[b]efore an initiative petition can ever be circulated among the voters it must be submitted to the arm of the State." (Madrigal Memo at 19 n.7.) Madrigal is wrong: The initiative ***petition*** is never submitted to or reviewed by the government before circulation; the ***text*** of the proposed measure is submitted for title and summary, but not the ***petition*** itself, which is what is circulated to the voters. And, of course, the government has no authority to require that any changes be made to the initiative or even, as is done in Colorado, to make *suggestions* regarding possible changes. To the contrary, the elections officials' duties in this regard are purely ministerial. *See Schmitz v. Younger* (1978) 21 Cal.3d 90 (California Attorney General has ministerial duty to prepare title and summary for proposed initiative despite asserted legal flaws in measure).

4

*Melendez et al. v. Board of Supervisors et al.*
MELENDEZ PLAINTIFFS' OPPOSITION TO MADRIGAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. C 06-1730 JW

The Madrigal plaintiffs note that the elections officials do "provide" initiative proponents with a title and summary for a proposed initiative that must by law be printed on the petition. This, they contend, should be sufficient to bring initiative petitions within the coverage of Section 203 of the Act. This factor, however, does not distinguish initiative petitions in California from their counterparts in Colorado,[3] and reliance on this element of the statutory scheme to apply the FVRA to the entire initiative petition would therefore create a ***direct conflict*** with the Tenth Circuit's decision in *Montero v. Meyer* — something both the court and Madrigal's counsel insisted was not the case. Moreover, it would indeed be manifestly unjust to penalize ***Plaintiffs*** — and to reward the County, which does not want to see this Initiative on the ballot — by enjoining an election on the Initiative solely because ***the County*** failed to provide Plaintiffs with a bilingual title and summary, especially when — as Madrigal acknowledges — Plaintiffs were required by law to include the title and summary on their petitions exactly as they received it from the County. If the County's furnishing of a title and summary is deemed to be covered by section 203, then the appropriate ruling would be to ***order the County*** to provide titles and summaries to initiative proponents in both English and Spanish in the future. The remedy is not to prohibit an election on Plaintiffs' Initiative, after it has been signed by 15,000 county residents.

Another distinction between initiative petitions and the recall petitions at issue in *Padilla* is that, as the *Padilla* court acknowledged, recall petitions "serve no other purpose than to trigger an election." 429 F.3d at 919. That is not the case with initiative petitions, which only trigger ***a choice by the governing body*** whether to adopt the proposed measure or to submit it to a vote of the people. *See, e.g.,* Cal. Elec. Code § 9118 (upon receipt of certified initiative petition, board of supervisors shall *either* adopt the measure without alteration or submit it to the voters at next election). One cannot say, then, as one could

---

[3] As Plaintiffs pointed out in their opening brief, Colorado issues all initiative proponents a title, submission clause, and summary ***prior*** to the circulation of the initiative. As the United Supreme Court described the process in *Meyer v. Grant*, 486 U.S. 414, 416 (1988) (emphasis added):

> "Under Colorado law, proponents of an initiative measure must submit the measure to the State Legislative Council and the Legislative Drafting Office for review and comment. The draft is then submitted to a three-member title board, which prepares a title, submission clause, and summary. *After approval of the title, submission clause, and summary*, the proponents of the measure then have six months to obtain the necessary signatures . . . . If the signature requirements are met, the petitions may be filed with the Secretary of State, and the measure will appear on the ballot at the next general election."

5

1   with the recall petition, that an initiative petition is a "registration or voting notice[], form[], instruction[],
2   assistance, or other material[] or information relating to the electoral process, including ballots."  The
3   initiative petition certainly does not constitute a prerequisite to voting or any impose any sort of condition
4   on the exercise of that right.  In fact, it may well not have anything to do with an election at all!

5   Both Madrigal and the court in *Padilla* note that the U.S. Attorney General's voluntary guidelines
6   for implementing section 203 include "petitions" among the category of "written materials" covered by the
7   section.  *See Padilla*, 429 F.3d at 919-20 (citing 28 C.F.R. § 55.19(a).  In context, however, it is clear
8   that the guidelines are referring to ***nominating petitions***, which indeed are provided to candidates by the
9   state and whose every word is prescribed by statute.  *See* Cal. Elec. Code § 8020 et seq.  In that context,
10  it makes perfect sense for the Voting Rights Act to be interpreted to require the State to make nomination
11  petitions available in both English and Spanish, so that candidates can obtain qualifying signatures from
12  English-limited voters and so that those voters can directly participate in the electoral process itself by
13  helping to nominate someone for office.  ***Initiative petitions***, however, are not provided by the State in
14  the same manner as nominating petitions.

15  The nominating petition context actually provides a good demonstration of the inappropriateness
16  of the relief that the Madrigal plaintiffs seek in this case.  Let us assume that the FVRA requires the State
17  to "provide" nominating petitions to all candidates in both English and Spanish.  Under California law, if I
18  were to run for the Board of Supervisors, I would need to gather "not less than 20 nor more than 40"
19  signatures on my nominating petitions.  If the County Registrar only gave me nominating petitions printed
20  in English, and I then went to 20 of my close friends, none of whom speak Spanish, and collected their
21  signatures on the nominating petitions that were printed only in English, ***would I have violated the Voting***
22  ***Rights Act***, such that I should be ***disqualified as a candidate*** in the upcoming election?  To merely ask
23  the question demonstrates the absurdity of such a result.  ***Yet that is exactly what the Madrigal***
24  ***plaintiffs are saying should happen in this case***: Plaintiffs' General Plan Amendment Initiative should
25  be disqualified from the ballot because ***the County*** did not provide Plaintiffs with initiative petitions in both
26  English and Spanish, and Plaintiffs proceeded to gather all of the necessary signatures using only the English
27  language petitions.  ***The remedy the Madrigal Plaintiffs seek is just as absurd as the***
28  ***disqualification remedy in the nominating petition hypothetical***.  In both instances, the proper

6

remedy is to require the County to provide bilingual petitions in the future, not to penalize those who qualified for the ballot using the English-only petitions they were given.

### II. ENJOINING THE ELECTION ON PLAINTIFFS' INITIATIVE IN THIS CASE BECAUSE THE PETITIONS WERE PRINTED ONLY IN ENGLISH WOULD NOT MEANINGFULLY FURTHER THE LAUDABLE PURPOSES OF THE VOTING RIGHTS ACT, BUT WOULD ONLY SERVE TO DENY THE THOUSANDS OF CITIZENS WHO SIGNED THE PETITIONS THEIR CONSTITUTIONAL RIGHTS

The Madrigal Plaintiffs contend that they are entitled to injunctive relief because they will be irreparably harmed if the General Plan Amendment Initiative is placed on the June ballot. They repeat the mantra that because the initiative petitions were not printed in Spanish, voters who were not English-proficient were not able to "fully participate in the circulation process." Upon closer inspection, however, Madrigal's arguments in this regard do not stand up to scrutiny.

Plaintiff Madrigal, for example, contends that she does not speak English well enough to understand the complexities of the Initiative, and that when she was asked to sign the initiative and was told that the Initiative would help create more jobs in the County, she went ahead and signed it. Madrigal alleges that "[h]ad the Initiative been printed and presented to her in Spanish, [she] would have been able to read and understand the Initiative, and would not have signed it." Madrigal Memo at 9.

Even if Ms. Madrigal's statements were accepted as true, the remedy of disqualification of the Initiative from the ballot would not prevent her from suffering any harm, much less irreparable harm. It is undisputed that the Initiative was certified as having been signed by at least 12,587 registered voters — almost **4,000 more than needed** to qualify for the ballot. Even if Ms. Madrigal is to be believed that she would not have signed the Initiative petition had it been printed in Spanish, nobody contends or has suggested that there are anything close to 4,000 limited English-proficient voters who mistakenly signed the petitions.[4] As the California Supreme Court recently emphasized in *Costa v. Superior Court* (2006) 39 Cal.Rptr.3d 470, in assessing whether an asserted procedural defect in an initiative petition is sufficient to warrant withholding the qualified measure from the ballot, the courts must ask whether, "*as a realistic and*

---

[4] It is noteworthy that Ms. Madrigal makes no claim that she was taken advantage of due to her language difficulties or that she was misled into signing the Initiative petition by false statements from the circulator — a claim that the plaintiffs in *Padilla* made. Ms. Madrigal asserts only that she was told that the Initiative would help create more jobs in the County — a statement that Plaintiffs believe to be entirely true — and she was provided the same information as any English-speaking voter.

7

*Melendez et al. v. Board of Supervisors et al.*
MELENDEZ PLAINTIFFS' OPPOSITION TO MADRIGAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. C 06-1730 JW

*practical matter . . .* it would be []appropriate to preclude the electorate from voting on a measure on the basis of such a discrepancy or defect." *Id.* at 488 (emphasis in original). In the present case, there is no "realistic and practical" possibility that the failure to provide Spanish translations of the Initiative petition resulted in the Initiative's erroneous qualification for the ballot.

Equally fundamentally, there must be a point at which prospective petition signers take some responsibility for their own actions. If Ms. Madrigal believed that she did not have enough information in Spanish to permit her to understand the Initiative's "import or purpose," she had the ready option of simply declining to sign it. It might be a different situation if it were shown that a large number of Spanish-speaking citizens were affirmatively misled or tricked into signing the petitions based upon misrepresentations by the circulators, but that is neither the allegation in this case nor the truth of what occurred.[5] There is utterly no basis to deprive the thousands of voters who knowingly and willfully signed the Initiative petition of their constitutional right of petition simply because Ms. Madrigal now alleges that she regrets having agreed to sign the Initiative petition without having taken the time to understand it more clearly.

Similarly, Plaintiff Rangel alleges that after becoming aware in late 2005 that the Initiative petition was in circulation, he "attempted to participate in the County's electoral process by informing himself of the character and content of the Initiative," but "because he could not locate a single copy of the Initiative petition that was printed and circulated in Spanish, he was ultimately prevented from participating in that process." Madrigal Memo at 9-10.

It is hard to discern exactly what Mr. Rangel is complaining about. As a voter in the County — whether English-speaking or Spanish-speaking — he had no right to obtain a copy of the Initiative petition, regardless of what language it was printed in. If the proponents of the Initiative wanted to, they could have attempted to gather all the signatures they needed secretly, in the dead of night, or by invitation only. The right of initiative is the right of citizens to petition their government for redress of grievances. It is a peculiarly ***private right***. The proponents of an initiative can choose to gather signatures from whomever

---

[5]The truth is that Plaintiffs went out of their way to provide flyers and other materials in Spanish so that they could enlist and involve the Latino community in their cause. In the weekend that Plaintiffs have had to prepare this brief, we have not been able to gather those materials and provide testimonial evidence detailing exactly what was done in that regard, but if this case were to proceed to trial on Madrigal's claims, Plaintiffs would do so. In the absence of that actual evidence, Plaintiffs submit this "offer of proof" as to what the evidence would establish.

8

1  *they* choose. As the nomination petition example discussed above demonstrates, even if the petitions were
2  printed in Spanish, the initiative proponents were not obliged to circulate them to any Spanish-speaking
3  voters, but could have chosen to limit themselves to communities and prospective signers who only spoke
4  English. As Justice Camby's dissenting opinion in *Padilla* points out, that would be a completely
5  counterproductive strategy for proponents seeking to gather as many signatures as possible and to attract
6  the maximum support for their measure, but it is certainly within their rights to do so. That Mr. Rangel was
7  allegedly unable to locate a copy of the Initiative petition in Spanish is not really something that the FVRA
8  addresses.

9  Moreover, it is not clear exactly what Mr. Rangel is claiming he would have done if he had been
10 able to locate a copy of the Initiative petition in Spanish, and thus, how he was harmed by his failure to do
11 so. Unlike Ms. Madrigal, he does not claim that he was injured by having mistakenly signed the petition.
12 Evidently, he claims an injury merely from being excluded from "participating in" the circulating process —
13 which, as we discuss above, he really has no "right" to be involved in.[6] It is difficult to understand,
14 however, how it is that preventing an election on the Initiative — thereby excluding Mr. Rangel once again
15 from participating in the electoral process — will remedy this asserted violation of his rights.

16 Finally, Plaintiff Maria Buell alleges that she speaks both Spanish and English fluently, but that she
17 was somehow deprived of the right to effectively oppose the Initiative because many of her fellow members
18 of the public who speak only Spanish were unable to become fully or properly informed about it. Madrigal
19 Memo at 10.[7] The short answer to Ms. Buell's complaint is that if she wanted Spanish-speakers to learn
20 more about the Initiative, she could have translated it for them and provided it to them. She was just as
21 capable as Plaintiffs of translating the Initiative into Spanish. If she wanted to recruit more people to her

---

23 [6]If Mr. Rangel's objection is that he was unable to mount a "counter signature-gathering campaign,"
24 that is as far-fetched as the suggestion that the Initiative only qualified for the ballot as a result of mistaken signatures from Spanish-speaking voters. There were many English-speaking voters, including Plaintiff
25 Maria Buell, who could have mounted a counter campaign, but no one did so.

26 [7]Ms. Buell has submitted a declaration in which she purports to speak from personal knowledge about many of the events surrounding the circulation and submission of the Initiative in this case and
27 "common knowledge" about how petition signatures are used later in campaigns. Plaintiffs hereby object to Ms. Buell's declaration as lacking foundation. The "common knowledge" that she purports to opine on
28 is absolutely mistaken. Initiative proponents are prohibited by law from using the signatures they gather on the petitions for any purpose other than qualifying the initiative for the ballot.

9

opposition campaign, *she* should be the one who spends the money and takes the time to do so, not the initiative proponents. They are both private parties with limited resources.

As with the other Madrigal plaintiffs' complaints, there is also no reason why prohibiting an election from being held on the Initiative responds or remedies in any way the harm that Ms. Buell claims to have suffered. ***The voting materials in connection with the election will all be printed and distributed in Spanish***, so Ms. Buell will now get exactly what she claims to have wanted all along. There is nothing "illegal" about the election that would be held on the Initiative, for it will be held in full compliance with the Voting Rights Act.

### III. EVEN IF THIS COURT WERE TO EXTEND THE PADILLA DECISION TO APPLY TO INITIATIVE PETITIONS, THE APPROPRIATE REMEDY UNDER THE VOTING RIGHTS ACT IS NOT TO PROHIBIT THE IMPENDING ELECTION ON THE QUALIFIED INITIATIVE PETITIONS

Even if *Padilla* were to extend to initiative petitions, and even if *Padilla* could be applied retroactively, the *Madrigal* plaintiffs would not be entitled to the drastic remedy they seek of preventing a vote on a duly qualified and certified initiative petition. They cite no authority that supports denying the electorate the right to vote on the General Plan Initiative; nor does anything in the FVRA or *Padilla* support such extraordinary relief.[8]

Indeed, even when faced with clear, adjudged, and even admitted, violations of the FVRA, courts are loathe to enjoin impending elections and rarely, if ever, will invalidate the results of elections that have already occurred. Instead, courts prefer to fashion equitable remedies that seek to counter the effects of such FVRA violations while still protecting the precious voting rights of the people. For instance, in *United States v. Metropolitan Dade County, Florida*, 815 F. Supp. 1475 (S.D. Fla. 1993), the court found, on plaintiff's motion for a temporary restraining order, that the defendant county had violated Section 203

---

[8] Citing *Badillo v. City of Stockton*, No. S-87-1726, 1988 U.S. Dist. LEXIS 17601, the *Madrigal* plaintiffs erroneously suggest that the Court can grant their request for a preliminary injunction without a showing of irreparable harm. (Pls. Mem. Re: Preliminary Injunction, at pp. 11 n.4.) The court in that case enjoined the implementation of a new electoral system that would have likely caused minority voter dilution in violation of the FVRA. Because section 1973 of the FVRA expressly provided that such a violative electoral system could not be implemented, the court held that a plaintiff need not establish irreparable harm to obtain injunctive relief to prevent implementation. *Badillo*, 1988 U.S. Dist. LEXIS 17601, at *25. Nothing in that case, nor in the FVRA, however, authorizes, or even permits, granting injunctive relief ***to prevent an initiative measure from being voting on***, much less relieves a plaintiff from demonstrating irreparable harm to justify such extraordinary relief.

10

of the FVRA by failing to provide a voter information pamphlet to voters in multiple languages. *Id.* at 1478. Despite this finding of an FVRA violation, the court ***did not enjoin or postpone*** the upcoming election, holding that such "drastic steps are neither required nor appropriate at this juncture." *Id.* at 1479. Reasoning that "[w]here an impending election is imminent and the election machinery is already in progress, a Court may take into account equitable considerations when prescribing immediate relief," the court instead required that the defendant county to either print and distribute to voters a Spanish-language version of the pamphlet or display poster-sized enlargements of a Spanish-language version of the pamphlet at each precinct in the county. *Id.* at 1478-79.

Likewise, the court in *United States v. Berks County, Pennsylvania*, 250 F. Supp. 2d 525 (E.D. Pa. 2003), refused to enjoin an imminent election even though it found, on a motion for a preliminary injunction, that the defendant county had violated numerous provisions of the FVRA, by, among others, allowing hostile and unequal treatment of Hispanic and Spanish-speaking voters by poll workers, refusing to employ bilingual poll workers, and refusing to provide bilingual written- election materials. *Id.* at 535-40, 541-42. These violations had taken place in four separate elections, and they were likely to occur in an upcoming election. *Id.* at 531, 541-42. Nevertheless, the court there again ***did not enjoin or postpone*** that upcoming election; ***nor did the court invalidate the results*** of the prior elections where these violations occurred. Rather, the court opted to appoint a special master to "to work with the parties and their counsel in ascertaining the detailed relief that is necessary and appropriate" to assure compliance with the FVRA. *Id.* at 542.

As the United States Supreme Court has said, "under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in ***withholding the granting of immediately effective relief*** in a legislative apportionment case, even though the existing apportionment scheme was found invalid." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964) (emphasis added). The Court further admonished:

> "In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to ***avoid a disruption of the election process*** which might result from requiring precipitate changes that could make ***unreasonable or embarrassing demands on a State*** in adjusting to the requirements of the court's decree.

11

> As stated by MR. JUSTICE DOUGLAS, concurring in *Baker v. Carr*, 'any relief accorded can be fashioned in the light of well-known principles of equity.'" *Id.* (emphasis added).

Here, there is no question of the imminence of the upcoming June 6, 2006, statewide primary election, a mere two-and-one-half-months away, which requires the Court to apply these equitable principles to allow the election on the General Plan Initiative to proceed. Otherwise, it is conceivable that nearly every initiative measure across the state would be subject to removal from the ballot, thereby creating a disruption of the election process of enormous proportions.

Just as in *Metropolitan Dade County, Florida* and *Berks County, Pennsylvania*, this Court should therefore abstain from enjoining election on the proposed measure. Indeed, like in those cases, such an injunction is unnecessary because the Court can fashion other, more equitable remedies, such as requiring County election officials to translate and provide all materials relating to the Initiative, such as the ballots, the arguments for and against the measure, the County Counsel's Impartial Analysis, and the text of the proposed initiative, in both English and Spanish, in compliance with Section 203 of the Voting Rights Act. This remedy would protect Spanish-speaking voters' ability to participate in the electoral process, while still preserving the constitutionally protected right of the people to initiative and petition. The Court should therefore deny the *Madrigal* plaintiffs' request for a preliminary injunction.

Further, this Court should refuse to apply *Padilla* retroactively for the reasons stated in Plaintiffs' previous briefs. In seeking retroactive application of the rule formulated in *Padilla*, Defendants and the *Madrigal* Plaintiffs ask the Court to take the "gotcha" principle to a new dimension. They argue that this Court should invalidate Plaintiffs' initiative petition, even though, at the time of circulation, that initiative petition fully complied with the law, as well as the standard practice of circulating initiative petitions only in English.[9]

---

[9] Defendants and the *Madrigal* Plaintiffs, in concert, disingenuously argue that the rule established by *Padilla* "has in fact been settled law since 1986 when the Ninth Circuit ruled in the *Zaldivar v. City of Los Angeles* case." (*Madrigal* Pls. Br. at p. 24; see also Defs. Br. at p. 10.) They are flat wrong; in fact, until the decision in *Padilla*, it was settled law that recall petitions were not subject to Section 203(c) of the FVRA.

For instance, the District Court in *Padilla* "concluded that the Recall Petition was ***not governed by section 203 of the Voting Rights Act*** because it was not 'provided by' the Orange County elections officials and because it was not material or information 'relating to the 'electoral process.'" *Padilla*, 429

12

1  Citing *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993), the *Madrigal* Plaintiffs argue
2  that the three-pronged retroactivity test followed by the Ninth Circuit in *George v. Camacho*, 119 F.3d
3  1393 (9th Cir. 1997), is no longer applicable. The *Madrigal* Plaintiffs are wrong. *Harper* did not bar that
4  retroactivity test in every circumstance, but rather only held that this test did not apply "***[w]hen this Court***
5  ***applies a rule of federal law to the parties before it***." *Id.* at 97 (emphasis added). It is undisputed
6  that the new rule announced in *Padilla* was ***not applied to the parties that were before the court in***
7  ***Padilla***. Despite the fact that the recall petitions at issue in that case were circulated in English only, the
8  recall election was allowed to proceed. Indeed, the Ninth Circuit had previously refused to intervene to
9  stop the disputed recall election, denying the *Padilla* plaintiffs' Emergency Motion for Injunctive Relief to
10 enjoin the recall election from going forward. *Id*. at 914 n.4. *Harper*'s limitation of the retroactivity test
11 applied by the court in *George v. Camacho* — in 1997, four years after *Harper* allegedly ruled that test
12 inapplicable — therefore does not apply in the circumstance of this case, and this Court should employ the
13 three-pronged test to conclude that the decision in *Padilla* should not invalidate the General Plan
14 Amendment Initiative.

15                                    **CONCLUSION**

16  In sum, neither by its own terms nor by implication from its reasoning and analysis does the panel's
17 2-1 majority opinion in *Padilla* apply to initiative petitions and require that they be printed and circulated
18 in Spanish as well as English. To the contrary, the "settled law" throughout California and the country has
19 been that initiative petitions are not covered by section 203 of the Voting Rights Act. That was undeniably
20 the state of the law when Plaintiffs circulated their Initiative petition in this case.

21  Under these circumstances, even if the Court were to conclude that initiative petitions *in the future*
22 should be printed either entirely or partially in languages other than English, there is no basis for denying
23 Plaintiffs and the thousands of other Monterey County voters who signed the Initiative petition their

---

25 F.3d at 914 (emphasis added). Further, in practice, none or nearly none of the recall (or initiative) petitions circulated in California, before or after 1986, were translated into multiple languages. Defendants and the
26 *Madrigal* Plaintiffs fail to explain why — if *Zaldivar v. City of Los Angeles* settled this issue in 1986 — a federal district court and elections officials across California and the Ninth Circuit both came to the
27 opposite conclusion; indeed, in numerous briefs before the District Court and Ninth Circuit, the *Padilla* plaintiffs' own counsel, Mr. Avila (who represents the *Madrigal* Plaintiffs here), repeatedly referred to
28 *Zaldivar*'s discussion of the Voting Rights Act as "dictum," and not "settled law." *See, e.g.,* Plaintiffs-Appellants' Opening Brief in *Padilla* at 20.

13

*Melendez et al. v. Board of Supervisors et al.*
MELENDEZ PLAINTIFFS' OPPOSITION TO MADRIGAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. C 06-1730 JW

constitutional right to vote on the proposed measure. The Madrigal plaintiffs' motion for a preliminary injunction to prevent an election on the qualified Initiative should be denied.

DATE: March 20, 2006                    Respectfully Submitted,

                                              STRUMWASSER & WOOCHER LLP
                                              Fredric D. Woocher
                                              Michael J. Strumwasser

                                              LAW OFFICE OF J. WILLIAM YEATES
                                              J. William Yeates
                                              Keith G. Wagner
                                              Jason R. Flanders


                                              By        / s /
                                                             Fredric D. Woocher

                                              *Attorneys for Petitioners and Plaintiffs*
                                              *William Melendez, Ken Gray, Jyl Lutes,*
                                              *Carolyn Anderson, and Landwatch Monterey*

14

*Melendez et al. v. Board of Supervisors et al.*
MELENDEZ PLAINTIFFS' OPPOSITION TO MADRIGAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
Case No. C 06-1730 JW