FREDRIC D. WOOCHER (SBN 96689)
MICHAEL J. STRUMWASSER (SBN 58413)
BRYCE A. GEE (SBN 222700)
STRUMWASSER & WOOCHER LLP
100 Wilshire Boulevard, Suite 1900
Santa Monica, California 90401
Telephone:    (310) 576-1233
Facsimile:    (310) 319-0156
E-mail: fwoocher@strumwooch.com

J. WILLIAM YEATES (SBN 84343)
KEITH G.WAGNER (SBN 210042)
JASON R. FLANDERS (SBN 238007)
LAW OFFICE OF J. WILLIAM YEATES
3400 Cottage Way, Suite K
Sacramento, CA 95825
Telephone:    (916) 609-5000
Facsimile:    (916) 609-5001
E-mail: byeates@enviroqualitylaw.com

*Attorneys for Plaintiffs*
*Rancho San Juan Opposition Coalition, et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE COUNTY OF MONTEREY INITIATIVE MATTER, and<br><br>IN RE MONTEREY REFERENDUM. | CASE NO.  C 06-01407 JW<br>CASE NO.  C 06-01730 JW<br>CASE NO.  C 06-02202 JW<br>CASE NO.  C 06-02369 JW<br><br>*MELENDEZ* PLAINTIFFS' AND *RANCHO SAN JUAN OPPOSITION COALITION* PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT<br><br>Judge: Hon. James Ware<br>Ctrm:  8<br>Date:  February 27, 2007<br>Time:  9:00 a.m. |

**CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    INITIAL PROCEEDINGS IN THE INITIATIVE CASES . . . . . . . . . . . . . . . . . . . . . . 4

    B.    INITIAL PROCEEDINGS IN THE REFERENDUM CASES . . . . . . . . . . . . . . . . . . 6

    C.    THE EN BANC DECISION IN *PADILLA v. LEVER* AND SUBSEQUENT EVENTS . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.    COUNTY'S ADMISSION THAT THE INITIATIVE SHOULD BE SUBMITTED TO A VOTE OF
THE ELECTORATE HAS RESOLVED THE ONLY FEDERAL ISSUE IN THE INITIATIVE
ACTION AND HAS ELIMINATED THE GROUNDS FOR REMOVAL, REQUIRING THAT THE
*MELENDEZ* ACTION BE REMANDED TO STATE COURT . . . . . . . . . . . . . . . . . . . 11

II.    THE NINTH CIRCUIT'S EN BANC DECISION IN *PADILLA v. LEVER* AND CONGRESS'
RECENT RE-AUTHORIZATION OF THE VOTING RIGHTS ACT HAVE CONCLUSIVELY
RESOLVED THE ONLY ISSUE IN THE REFERENDUM CASES, REQUIRING COUNTY
DEFENDANTS TO SUBMIT THE REFERENDUM TO A VOTE OF THE PEOPLE IN THE
UPCOMING JUNE ELECTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.    THE NINTH CIRCUIT'S EN BANC DECISION IN *PADILLA v. LEVER* APPLIES TO
ALL PRIVATELY INITIATED, FUNDED, AND CIRCULATED PETITIONS —
INCLUDING THE REFERENDUM PETITION IN THIS CASE — BECAUSE SUCH
PETITIONS ARE NOT "PROVIDED BY" THE STATE . . . . . . . . . . . . . . . . . . . 14

    B.    IN RE-AUTHORIZING THE VOTING RIGHTS ACT, CONGRESS AFFIRMATIVELY
DECLARED THAT PRIVATELY CIRCULATED PETITIONS ARE NOT SUBJECT TO
THE ACT'S MINORITY LANGUAGE PROVISIONS . . . . . . . . . . . . . . . . . . . . 22

    C.    THE ATTORNEY GENERAL'S GUIDELINES DO NOT STATE THAT INITIATIVE,
REFERENDUM, OR RECALL PETITIONS ARE COVERED BY SECTION 203 OF THE
VOTING RIGHTS ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    D.    *RANGEL* PLAINTIFFS' REQUEST TO CONVENE A THREE-JUDGE PANEL IS NOT
SUPPORTED BY ANY STATUTE OR CASE LAW, AND IT WOULD NOT APPLY TO
THE REMOVED *RSJOC* LAWSUIT IN ANY EVENT . . . . . . . . . . . . . . . . . . . 26

    E.    THE COURT SHOULD ISSUE AN INJUNCTION REQUIRING COUNTY DEFENDANTS
TO SUBMIT THE DULY QUALIFIED REFERENDUM MEASURE TO A VOTE OF THE
ELECTORATE AT THE JUNE 5, 2007, ELECTION . . . . . . . . . . . . . . . . . . . 30

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

i

# TABLE OF AUTHORITIES

## Federal Cases

*Allen v. State Board of Elections*, 393 U.S. 544 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Cavanagh v. Brock*, 577 F. Supp. 176 (E.D.N.C. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Delgado v. Smith*, 861 F.2d 1489 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . 8, 19, 26, 28

*Dougherty County Board of Education v. White*, 439 U.S. 32 (1978) . . . . . . . . . . . . . . . 23

*Elrod v. Burns*, 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Galvez v. Kuhn*, 933 F.2d 773 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gerena-Valentin v. Koch*, 523 F. Supp. 176 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . 28

*Hilton v. South Carolina Public Railways Commission*, 502 U.S. 197 (1991) . . . . . . . . . 23

*Hoyle v. Priest*, 59 F. Supp. 2d 827 (W.D. Ark. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re County of Monterey Initiative Matter*, 427 F. Supp. 2d 958 (N.D. Cal. 2006) . . . . . *passim*

*Massachusetts Council of Construction Employers, Inc. v. White*,
    495 F. Supp. 220 (D. Mass. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Montero v. Meyer*, 492 U.S. 921 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Montero v. Meyer*, 861 F.2d 603 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . 8, 19, 26, 28

*News-Texan, Inc. v. City of Garland, Texas*, 814 F.2d 216 (5th Cir. 1987) . . . . . . . . . . . . . 12

*Padilla v. Lever*, 429 F.3d 910 (9th Cir. 2005),
    *withdrawn*, 446 F.3d 963 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 8, 16, 20, 21

*Padilla v. Lever*, 463 F.3d 1046 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Presley v. Etowah County Commission*, 502 U.S. 491 (1992) . . . . . . . . . . . . . . . . . . . . . 25

*Reno v. Bossier Parish School Board*, 520 U.S. 471 (1997) . . . . . . . . . . . . . . . . . . . . . . . 26

*Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002) . . . . . . . . . . . . . 31

## State Cases

*Associated Home Builders etc. v. City of Livermore*, 18 Cal. 3d 582 (1976) . . . . . . . . . . . 1, 31

*Brosnahan v. Brown*, 32 Cal. 3d 236 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ii

*Mervynne v. Acker*, 189 Cal. App. 2d 558 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Rossi v. Brown*, 9 Cal. 4th 688 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**Docketed Cases**

*Bonilla v. Barnett*, No. 06-375 (E.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Chincay v. Vergil*, No. 06-1637 (C.D. Cal. Apr. 11, 2006) . . . . . . . . . . . . . . . . . . 3, 15, 28

*City and County of San Francisco v. Civil Service Commission of the City*
    *and County of San Francisco*, No. 02-03462, 2002 WL 1677711
    (N.D. Cal. July 24, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

*Heredia v. Santa Clara County*, No. 06-04718, 2006 WL 2547816
    (N.D. Cal. Sept. 1, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 28

*Imperial v. Castruita*, No. 05-08940 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Melendez v. Board of Supervisors*, Case No. M78308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Federal Statutes**

28 C.F.R. § 55.19(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 1443(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 7, 8, 12, 29

42 U.S.C. § 1973aa-1a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

42 U.S.C. § 1973aa-1a(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

42 U.S.C. § 1973aa-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 28

H.R. Rep. No. 109-478, 2006 WL 1403199 (May 22, 2006) . . . . . . . . . . . . . . . . . . . . . . . 22

S. Rep. No. 94-295, *as reprinted in* 1975 U.S.C.C.A.N. 774 . . . . . . . . . . . . . . . . . 22, 23, 30

**State Statutes**

Cal. Const., art. II, sec. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Cal. Elec. Code,

§ 8101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

§ 9118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

§ 9145 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 30

§ 10227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

**Miscellaneous**

F.R.C.P. 41(a)(1)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

# INTRODUCTION

In California, the citizens' reserved power of the initiative and referendum is "one of the most precious rights of our democratic process," and it is "the duty of the courts to jealously guard this right of the people." (*Associated Home Builders etc. v. City of Livermore*, 18 Cal.3d 582, 591 (1976).) Pending before the Court are cross-motions for summary judgment in two sets of consolidated cases arising from the Monterey County Board of Supervisors' refusal to submit to a vote of the people two citizen-sponsored measures — "The Monterey County Quality of Life, Affordable Housing, and Voter Control Initiative" (the "General Plan Initiative" or the "Initiative") and the "Referendum Against Resolution No. 05-305" (the "Referendum") — that were duly certified for the ballot by the County Registrar more than a year ago. This Court had previously upheld the Board of Supervisors' refusal to place the Initiative and Referendum on the ballot based upon Judge Pregerson's panel opinion in *Padilla v. Lever*, which held that Section 203 of the federal Voting Rights Act ("VRA") required recall petitions in covered jurisdictions in California to be printed and circulated in both Spanish and English.

Much has changed since this Court's earlier rulings, however. Most significantly, on September 19, 2006, the Ninth Circuit Court of Appeals, sitting en banc, emphatically rejected the holding and reasoning of Judge Pregerson's panel opinion, ruling by a *14-to-1 vote* that the VRA *does not apply* to recall petitions that are initiated, circulated, and paid for by private proponents, even when the proponents are required to draft the petitions in a specific form that is mandated and approved by the State. With the withdrawal and reversal of Judge Pregerson's short-lived panel opinion, it is now uncontroverted that *every court to consider the issue* has concluded that Section 203 of the VRA does not apply to citizen-sponsored recall, initiative, or referendum petitions, and in the more than 30 years that have passed since Section 203 was added to the Voting Rights Act in 1975, no city, county, or state *anywhere in the country* — with the possible exception of Monterey County in this case — has taken the position that the VRA requires an initiative or

1

referendum petition to be translated into and circulated in any language other than English. Indeed, in re-authorizing the Voting Rights Act for an additional 25 years last Summer, Congress itself expressly confirmed that "petitions that are initiated and distributed by private citizens" are "exclu[ded] . . . from Section 203's requirements." Accordingly, any legitimate dispute over the applicability of the Voting Rights Act to the Initiative and Referendum at issue in these cases has now been resolved: The VRA does not require privately initiated, drafted, and circulated petitions to be translated into Spanish and other minority languages.

In fact, even the Monterey County Board of Supervisors and the Spanish-speaking plaintiffs in this action no longer take the position that Section 203 of the VRA applies to privately circulated initiative petitions. In a recent development with important implications for the disposition of these cases, on January 16, 2007, the Board of Supervisors — after having insisted for the past year that it would be *illegal* for the County to submit the General Plan Initiative to a vote of the people — suddenly reversed course and adopted a resolution calling for a countywide election to be held on June 5, 2007, at which the General Plan Initiative is supposed to be submitted to the voters. Immediately thereafter, the *Madrigal* plaintiffs announced that they were also dropping their Voting Rights Act objection to the Initiative, and they have now formally dismissed their lawsuit seeking to prohibit the County from holding an election on the General Plan Initiative. Not coincidentally, both of these actions occurred **only after** the Board of Supervisors finally completed its own comprehensive amendment of the County General Plan, which it plans to place on the same June ballot in the form of a competing proposal to the Initiative.

Regardless of what motivated these events, the County and the *Madrigal* plaintiffs have conceded by their recent actions that there is no longer any good-faith basis for them to contest the validity of the General Plan Initiative under the Voting Rights Act. In particular, the Board of Supervisors is no longer "refusing to do any act on the ground that it would be inconsistent with [a federal law providing for equal rights]," and there is thus no basis for federal removal jurisdiction

2

1    over the *Melendez* action pursuant to 28 U.S.C. § 1443(2).  In the absence of any claim of a

2    "colorable conflict" between state law and the VRA, continued removal is improper and the

3    *Melendez* case must be remanded forthwith to the Monterey County Superior Court for issuance of

4    the appropriate judgment on the *Melendez* plaintiffs' state-law causes of action. *See City and County*

5    *of San Francisco v. Civil Service Commission of the City and County of San Francisco*, No. 02-

6    03462, 2002 WL 1677711 (N.D. Cal. July 24, 2002).

7
        Despite their evident acknowledgment that Section 203 of the VRA does not apply to
8
9    *initiative* petitions, the County and the same Spanish-speaking plaintiffs who voluntarily dismissed

10   the *Madrigal* case nevertheless continue to assert that privately initiated, drafted, and circulated

11   *referendum* petitions are somehow covered by Section 203 and must be translated into Spanish.[1] As

12   is discussed in greater detail below, that argument is no longer at all tenable in light of the Ninth

13   Circuit's en banc decision in *Padilla v. Lever* and Congress' explicit re-affirmation of its intent to

14   exclude privately initiated and distributed petitions from Section 203's requirements.  Indeed, even

15   before the re-authorization of the Voting Rights Act and while Judge Pregerson's now-overruled

16   panel opinion in *Padilla* was the controlling law in this Circuit, District Judge Audrey B. Collins had

17   held that *referendum* petitions — unlike recall and initiative petitions — were not subject to

18   Section 203 of the VRA because they could not under any reasonable meaning of the statutory

19   language be deemed to be "provided" by the State.  *Chincay v. Vergil*, No. 06-1637 (C.D. Cal.

20   Apr. 11, 2006).  There is thus no basis for the County's continuing refusal to place the Referendum

21   on the ballot for a vote of the people, and this Court should grant the *Rancho San Juan Opposition*

22   *Coalition* plaintiffs' motion for summary judgment and order the Monterey County Board of

23   Supervisors either to repeal Resolution No. 05-305 in its entirety or to submit it to the county's

24

25

26

27   _____

28       [1]This is the claim made by the plaintiffs in *Rangel v. County of Monterey* (Case No. C 06-02202 JW).  Both of the plaintiffs in the *Rangel* case — Sabas Rangel and Maria Buell — were also plaintiffs in the now-dismissed *Madrigal* action.  Moreover, their attorney — Joaquin Avila — was also co-counsel for them in the *Madrigal* case.

3

1    voters at the upcoming June 5, 2007, election.

2                              **STATEMENT OF FACTS**

3    A.    **INITIAL PROCEEDINGS IN THE INITIATIVE CASES**

4         On January 26, 2006, then-Monterey County Registrar of Voters Tony Anchundo[2] certified

5    that "The Monterey County Quality of Life, Affordable Housing, and Voter Control Initiative"

6    submitted by Plaintiffs William Melendez et al. (the "*Melendez* plaintiffs") contained sufficient

7    signatures to qualify for the June 6, 2006, primary election ballot.  On February 28, 2006, however,

8    the Monterey County Board of Supervisors voted not to place the Initiative on the ballot.  The

9    *Melendez* plaintiffs filed suit the next day in Monterey County Superior Court, seeking a writ of

10   mandate and injunction to compel the Board of Supervisors to comply with its ministerial duty under

11   California law either to adopt the qualified Initiative without alteration or to submit it to the voters

12   at the June primary election, as well as a judicial declaration that the Board had violated its duties

13   under the California Constitution and Elections Code by refusing either to adopt the duly certified

14   Initiative or to submit it to a vote of the people.  (*Melendez v. Board of Supervisors*, Case

15   No. M78308.)

16        On March 7, 2006, before the Superior Court could hold a hearing in the matter, County

17   Defendants removed the *Melendez* case to this Court pursuant to 28 U.S.C. § 1443(2), which permits

18   a defendant to remove a civil action from state to federal court if that action is "[f]or any act under

19   color of authority derived from any law providing for equal rights, or for refusing to do any act on

20   the ground that it would be inconsistent with such law."  In their Notice of Removal, the County

21   alleged that "[o]ne of the primary reasons that Defendants declined to place this measure on the

---

[2] In April 2006, shortly after these cases were filed, Defendant Anchundo resigned from office as the Monterey County Registrar of Voters.  Mr. Anchundo subsequently pleaded "no contest" to 43 criminal charges, including 25 counts of forgery, 14 counts of misapplication of funds, three counts of embezzlement and falsification of accounts by a public officer, and one count of grand theft.  Defendant Anchundo's position as Registrar of Voters is currently being filled on an interim basis by Acting Registrar of Voters Claudio Valenzuela.

4

---

1  ballot was because, based upon a recent decision of the Ninth Circuit in *Padilla v. Lever*, 429 F.3d

2  910 (2005), the measure apparently violates provisions of Section 203 (42 U.S.C. § 1973aa-1a) [of

3  the] Federal Voting Rights Act of 1965 ('FVRA'), which requires that 'other materials or

4  information relating to the electoral process' be translated into Spanish in Monterey County." Notice

5  of Removal, ¶ 4.

6        Upon its removal to this Court, the *Melendez* action (Case No. C 06-01730) was related to,

7  and was ultimately consolidated with, another action — *Madrigal v. County of Monterey* (Case

8  No. C 06-01407) — in which three Spanish-speaking plaintiffs sought an injunction prohibiting the

9

10  County from placing the General Plan Initiative on the ballot and a declaration that the Initiative was

11  invalid under Section 203 of the VRA because the petitions had been printed and circulated only in

12  English.  Recognizing the urgency of the matter due to the imminence of the June primary election,

13  this Court scheduled a hearing on the *Melendez* and *Madrigal* plaintiffs' respective motions for

14  preliminary injunctions for March 21, 2006, and ordered that the trial on the merits of the federal

15  issue be consolidated with and advanced to that hearing.

16        On March 23, 2006, this Court issued a Declaratory Judgment and Permanent Injunction

17  declaring the General Plan Initiative invalid under Section 203 of the Voting Rights Act, and

18  permanently enjoining the County Defendants from taking any further action to process, certify,

19  adopt, or place the Initiative on a ballot for County voters.  *In re County of Monterey Initiative*

20  *Matter*, 427 F.Supp.2d 958, 964-65 (N.D. Cal. 2006).  In the accompanying Order Re: Motions for

21

22  Injunctive Relief and Declaratory Judgments, the Court explained that "the issue of the applicability

23  of the Voting Rights Act to voter-initiated and County processed electoral notices has recently been

24  addressed by the Ninth Circuit" in *Padilla v. Lever*.  427 F.Supp.2d at 960.  Relying upon the

25  rationale of the panel's opinion in the *Padilla* case, and finding "no meaningful distinction" between

26  the recall and initiative processes for purposes of the applicability of the Voting Rights Act, *id.* at

27  961, this Court concluded that because of "the extensive County involvement in the initiative

28

1  process" — most critically, because "such petitions are reviewed by County agencies, which have

2  some authority to require changes to their contents in order to bring them into compliance with state

3  law" — the petitions "satisfied the 'provided by' prong of Section 203" and, as a result, "the

4  Initiative involved in this case was presented to the voting public for signature in violation of the

5  Voting Rights Act because it was printed and circulated only in English and not also in Spanish."

6  *Id.* at 963-64.[3]

7

8       The *Melendez* plaintiffs filed an immediate appeal from this Court's ruling and sought an

9  emergency injunction from the Ninth Circuit, seeking to have the General Plan Initiative appear on

10  the June 2006 ballot.  The motions panel denied the emergency motion for injunctive relief and,

11  noting that a petition for rehearing en banc was under consideration by the full Ninth Circuit in the

12  *Padilla* case, ordered that briefing in the *Melendez* appeal should be stayed pending the Court of

13  Appeals' resolution of the en banc petition in *Padilla*.  Order (9th Cir. Apr. 4, 2006.)

14      **B.**    **INITIAL PROCEEDINGS IN THE REFERENDUM CASES**

15       On December 6, 2005, Plaintiffs Rancho San Juan Opposition Coalition et al. ("RSJOC")

16  timely filed with the Monterey County Registrar of Voters a Referendum Against Resolution No. 05-

17  305, signed by more than 15,000 County voters, protesting the Board of Supervisors' adoption of

18  a resolution amending certain provisions of the Monterey County General Plan, the Greater Salinas

19  Area Land Use Plan, and the Rancho San Juan Area of Development Concentration Development

20  Guidelines and Principles, which allowed for the development of a new 671-acre golf-residential

21  subdivision in that area.  On January 18, 2006, the Registrar certified the sufficiency of the petition

22

23  to the Board of Supervisors, which ordered that the Referendum measure be placed on the June 6,

24  2006, primary election ballot, as required by California Elections Code section 9145.

25       On March 28, 2006, however, with the scheduled election just 70 days away — the Board

26

27        [3]Having entered judgment against the *Melendez* plaintiffs and in favor of the County in that

28  action, the Court dismissed the *Madrigal* complaint as moot and dismissed without deciding all
claims for relief under California law in the *Melendez* case as moot.  *Id.* at 965.

6

of Supervisors abruptly withdrew the Referendum measure from the June ballot. Citing to the then-applicable panel opinion in *Padilla v. Lever* and to this Court's just-issued decision in *In re County of Monterey Initiative Matter*, the Board expressed its concern that the Referendum petitions — which had been printed and circulated only in English before the panel opinion in *Padilla* was ever released — might likewise violate the VRA. The Board also noted that a federal lawsuit had been filed the previous day — *Rangel v. County of Monterey* (Case No. 06-02202 JW) — seeking declaratory and injunctive relief to prohibit the County from submitting the Referendum to the voters because it had been printed and circulated only in English in alleged violation of the VRA.

Plaintiffs RSJOC immediately filed suit in Monterey County Superior Court (*Rancho San Juan Opposition Coalition v. Board of Supervisors*, Case No. M78760), seeking an order commanding the Board of Supervisors to comply with its ministerial duty under the Elections Code either to repeal Resolution No. 05-305 in its entirety or to submit it to a vote of the people at the next regularly scheduled election. On April 4, 2006, the Monterey County Defendants filed a Notice of Removal pursuant to 28 U.S.C. § 1443(2), asserting once again that "[o]ne of the primary reasons that Defendants declined to place this measure on the ballot was because, based upon a recent decision of the Ninth Circuit in *Padilla v. Lever*, 429 F3d 910 (2005), the manner in which the Referendum proponents circulated the Referendum petition violates provisions of Section 203 (42 U.S.C. § 1973aa-1a) [of the] Federal Voting Rights Act of 1965 ('FVRA'), which requires that 'other materials or information relating to the electoral process' be translated into Spanish in Monterey County.'" *RSJOC* Notice of Removal, ¶ 4. The removed *RSJOC* action was ordered related to the *Rangel* case and assigned to this Court.

Given the timing of the Board of Supervisors' action in removing the Referendum from the June 2006 ballot just weeks before the election, it was too late for the *RSJOC* plaintiffs to obtain any effective judicial relief relating to that election. In July 2006, however, following the Ninth Circuit's granting of the petition for rehearing en banc in *Padilla v. Lever* and its issuance of an order

7

withdrawing the panel opinion, the *RSJOC* plaintiffs moved for a preliminary injunction to compel the Board of Supervisors to place the Referendum on the November 7, 2006, general election ballot. On August 15, 2006, this Court denied RSJOC's motion on the ground that "the law of the Circuit with respect to the applicability of the Voting Rights Act to voter initiated ballot measures is currently before the Ninth Circuit for review." Order Denying Plaintiffs' Motion for a Preliminary Injunction and Staying Action, at 1. Concluding that the Ninth Circuit's en banc review of that issue "has unhinged the law upon which this Court would rely to decide the pending Motion for a Preliminary Injunction," *id.* at 3, the Court denied the motion, "without prejudice to being renewed under changed circumstances." *Id.* On its own motion, the Court stayed all further proceedings in the case pending the Ninth Circuit's en banc review of *Padilla. Id.*

**C.   THE EN BANC DECISION IN *PADILLA V. LEVER* AND SUBSEQUENT EVENTS**

A number of significant developments have occurred since this Court first considered and issued its initial decisions in the Initiative and Referendum cases. Most important, on September 19, 2006, after having previously granted rehearing en banc and having ordered the panel opinion in *Padilla v. Lever* to be withdrawn (*see* 446 F.3d 922 (9th Cir. 2006) and 446 F.3d 963 (9th Cir. 2006)), the en banc Ninth Circuit court, by a 14-1 vote, held that Section 203 of the VRA does ***not*** apply to recall petitions initiated, circulated, and paid for by private proponents, even when the proponents are required to draft the petitions in a form specified by the State and county: "We conclude, as did the district court, that the recall petitions circulated by the proponents of the recall were not subject to this provision because they were not 'provided' by Orange County or the State." *Padilla v. Lever*, 463 F.3d 1046, 1050 (9th Cir. 2006) (en banc).

Although the en banc court's opinion explicitly addressed only the question of the applicability of the VRA to the *recall* petitions at issue in that case, the court pointedly noted that its conclusion that the county did not "provide" the privately circulated petitions "is directly supported by the decisions of two of our sister circuits" (*id.*, at 1051) — referring to the decisions

8

*In re County of Monterey Initiative Matter* (Case Nos. C 06-01407 JW, C 06-01730 JW)
*In re Monterey Referendum* (Case Nos. C 06-02202 JW, C 06-02369 JW)
*MELENDEZ*'s AND *RSJOC*'s MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT

1   in *Montero v. Meyer*, 861 F.2d 603, 609-10 (10th Cir. 1988), and *Delgado v. Smith*, 861 F.2d 1489,

2   1496 (11th Cir. 1988), both of which held that *initiative petitions* are not subject to the minority-

3   language provisions of the VRA.  Indeed, as the Ninth Circuit emphasized in *Padilla*, "No circuit

4   authority to the contrary has been cited to us, and we have found none."  463 F.3d at 1051-52.

5       Notwithstanding the en banc court's decision in *Padilla*, the Monterey County Board of

6   Supervisors continued to take the position that the Initiative and Referendum measures in the present

7   cases were invalid under the VRA, and it refused to submit either measure to a vote of the electorate.

8   The *Melendez* and *RSJOC* plaintiffs were therefore forced to press forward with this litigation.  In

9   the *RSJOC* and *Rangel* Referendum actions, following a case management conference held on

10  October 24, 2006, this Court consolidated the related cases for the purpose of cross-motions for

11  summary judgment on the issue of whether Section 203 of the VRA required the Referendum

12  petitions to have been translated into Spanish, scheduling a hearing on the motions for December 11,

13  2006, and captioning the cases as *In re Monterey Referendum*.  While this was occurring, the

14  *Melendez* plaintiffs filed a motion in the Court of Appeals to summarily reverse and remand the *In

15  re County of Monterey Initiative Matter* to this Court in light of the en banc decision in *Padilla v.

16  Lever*, citing the need for an expedited resolution of the matter so that the General Plan Initiative

17  could be submitted to a vote of the people without further delay.

18       On November 20, 2006, just as the parties' briefing of their cross-motions for summary

19  judgment in the Referendum cases was being completed in this Court, the Ninth Circuit issued an

20  order granting the *Melendez* plaintiffs' Motion for Remand, vacating this Court's March 23, 2006,

21  order and declaratory judgment in *In re County of Monterey Initiative Matter*, and remanding the

22  appeal to this Court for further consideration in light of the en banc decision in *Padilla v. Lever*.

23  Order (9th Cir. Nov. 20, 2006).  Upon receipt of the Ninth Circuit's order, County Defendants filed

24  a motion to consolidate the Initiative and Referendum cases so that a single hearing could be held

25  on cross-motions for summary judgment regarding the applicability of the VRA to both measures.

9

Explaining that "the cases involve nearly identical questions of law," the County argued that consolidation "would be in the interest of economy of the Court's and the parties' time" and "would advance the County's goal of arriving at a uniform set of rules, adjudicated in the courts, that the County could follow."  County Defendants' Motion for Consolidation, at 2-4.  On December 27, 2006, after vacating the December 11th hearing in the Referendum cases in order to consider the County's motion, the Court ordered the Initiative and Referendum cases to be consolidated for the specific purpose of "cross-motions for summary judgment in light of the Ninth Circuit's *en banc* ruling in *Padilla v. Lever* and on the issue of whether the convening of a three judge court is necessary."  A new hearing date for all motions was specially set for February 27, 2007.

As the parties were conferring upon a suitable briefing schedule for the cross-motions for summary judgment in accordance with the Court's December 27, 2006, order, the next significant events bearing on these cases occurred.  On January 16, 2007, in a complete reversal of the position that the County had taken for the past year, and only weeks after asking this Court to delay the summary judgment hearing in the *In re Monterey Referendum* action so that it could be consolidated with the *In re County of Monterey Initiative Matter*, the Board of Supervisors suddenly abandoned its contention that submitting the General Plan Initiative to a vote of the electorate would violate the Voting Rights Act.  Instead, the Board of Supervisors adopted a resolution calling for a countywide election to be held on June 5, 2007, for the purpose of submitting the General Plan Initiative to the voters of Monterey County.  *See* Resolution No. 07-021, attached as Exh. A to the Declaration of Fredric D. Woocher in Support of *Melendez* Plaintiffs' and *RSJOC* Plaintiffs' Motion for Summary Judgment ("Woocher Decl.").  At the same time, the *Madrigal* plaintiffs informed the *Melendez* plaintiffs that they were voluntarily dismissing their lawsuit challenging the validity of the Initiative under the VRA pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).  *See* Stipulation for Voluntary Dismissal in *Madrigal v. County of Monterey* (granted Feb. 6, 2007).

As matters now stand, then, there is no longer any contention — from either the County

10

*In re County of Monterey Initiative Matter* (Case Nos. C 06-01407 JW, C 06-01730 JW)
*In re Monterey Referendum* (Case Nos. C 06-02202 JW, C 06-02369 JW)
*Melendez*'s and *RSJOC*'s Memorandum of Points & Authorities ISO Motion for Summary Judgment

1   Defendants in the *Melendez* action or the plaintiffs in the now-dismissed *Madrigal* action — that the

2   General Plan Initiative violates the Voting Rights Act and that it cannot lawfully be submitted to a

3   vote of the people because the petitions were printed and circulated only in English.  The only

4   outstanding issue in the Initiative cases is therefore what the proper disposition of the *Melendez* case

5   should be.  *See* Stipulation and Order Regarding Briefing Schedule on Summary Judgment Motions

6   (Feb. 6, 2006), at 2.  In the Referendum cases, however, the parties continue to dispute the validity

7   of the Referendum petitions under the Voting Rights Act, and the merits of that issue — as well as

8   the issue of whether a three-judge court must be convened — are addressed in the following sections.

9

10                                              **ARGUMENT**

11  **I.      THE COUNTY'S ADMISSION THAT THE INITIATIVE SHOULD BE SUBMITTED TO A
            VOTE OF THE ELECTORATE HAS RESOLVED THE ONLY FEDERAL ISSUE IN THE
12          INITIATIVE ACTION AND HAS ELIMINATED THE GROUNDS FOR REMOVAL,
            REQUIRING THAT THE *MELENDEZ* ACTION BE REMANDED TO STATE COURT**
13

14          Apparently recognizing (finally) that they have no legal justification for continuing to deny

15  the residents of Monterey County their constitutional right to vote on the General Plan Initiative,

16  County Defendants have — at least for the moment — agreed to submit the Initiative to the voters.

17  Although County Defendants had for the past year insisted that it would be "illegal" to hold an

18  election on the Initiative because the VRA purportedly required that the petitions be translated into

19  Spanish, the Board of Supervisors suddenly reversed course last month, unanimously voting on

20  January 16, 2007, to hold an election on June 5, 2007, for the purpose of submitting the General Plan

21  Initiative to the voters of Monterey County pursuant to California Elections Code section 9118.  *See*

22  Resolution 07-021, Woocher Decl., Exh. A.  Almost simultaneously with the County's action, the

23  plaintiffs in *Madrigal v. County of Monterey* dropped their objection to holding an election on the

24  Initiative, as well, dismissing their lawsuit challenging the validity of the Initiative petitions under

25  the Voting Rights Act.  *See* Stipulation for Voluntary Dismissal in *Madrigal v. County of Monterey*

26  (granted Feb. 6, 2007).

27

28          Because both the *Madrigal* plaintiffs and the County have abandoned their claims that the

                                                    11

Initiative petitions are invalid under the VRA, this Court no longer has subject matter jurisdiction over the Initiative cases.  All that remains of the *In re County of Monterey Initiative Matter* is the *Melendez v. Board of Supervisors* lawsuit, which was originally filed in the Monterey County Superior Court and alleges only state-law claims.  The *Melendez* action was removed by County Defendants based solely upon 28 U.S.C. § 1443(2), which permits removal to federal court when a state official is sued for "refusing to do any act on the ground that it would be inconsistent with" a federal law providing for equal rights.  *See In re County of Monterey Initiative Matter*, 427 F. Supp. 2d at 959-60.  In addition, the courts require that for section 1443(2) to apply, defendants must "show a 'colorable conflict' between state and federal law leading to [their] refusal to follow plaintiff's interpretation of state law because of a good faith belief that to do so would violate federal law."  *City and County of San Francisco v. Civil Service Commission of the City and County of San Francisco*, 2002 WL 1677711, at *4.

At the time they removed the *Melendez* action, County Defendants alleged that 28 U.S.C. § 1443(2) was satisfied in that "[o]ne of the primary reasons that Defendants declined to place this [Initiative] measure on the ballot was because, based upon a recent decision of the Ninth Circuit in *Padilla v. Lever*, 429 F.3d 910 (2005), the measure apparently violates provisions of Section 203 (43 U.S.C. § 1973aa-1a) [of the] Federal Voting Rights Act of 1965."  *See Melendez* Notice of Removal, ¶ 4.  However, because the Board of Supervisors is no longer refusing to submit the Initiative measure to a vote on the ground that it would be inconsistent with the VRA to do so, the original basis for the Court's jurisdiction under section 1443(2) does not exist.  *Cf. Galvez v. Kuhn*, 933 F.2d 773, 775 n.4 (9th Cir. 1991) (recognizing that courts must consider challenges to subject matter jurisdiction at any time the jurisdictional defect may appear).  As the court in *City and County of San Francisco v. Civil Service Commission of the City and County of San Francisco* explained in ordering the removed suit in that case to be remanded to state court, removal under section 1443(2) requires that the lawsuit be based upon the defendant's "refusal to act": "By its express language,

1   the remand suit must challenge a failure to act or enforce state law (by defendant)." 2002 WL

2   1677711, at *4. If there is no such refusal or failure to act by the defendant based upon an asserted

3   inconsistency with federal law, the action must be remanded to state court. *See, e.g., News-Texan,*

4   *Inc. v. City of Garland, Texas,* 814 F.2d 216, 218 (5th Cir. 1987) (ordering remand of an action

5   removed under section 1443(2) for lack of "colorable conflict" between state and federal law leading

6   to defendants' refusal to act); *Massachusetts Council of Constr. Employers, Inc. v. White,* 495

7   F.Supp. 220, 222 (D.Mass.1980) ("At any rate, the 'refusal' clause is unavailable in this case, where

8   the defendants' actions, rather than their inaction, are being challenged.").

9

10         Accordingly, the *Melendez v. Board of Supervisors* action must be remanded to the Monterey

11   County Superior Court for the appropriate resolution of plaintiffs' state-law causes of action and for

12   the final disposition of that case in accordance with California law.

13   **II.**     **THE NINTH CIRCUIT'S EN BANC DECISION IN *PADILLA V. LEVER* AND CONGRESS'**

14             **RECENT RE-AUTHORIZATION OF THE VOTING RIGHTS ACT HAVE CONCLUSIVELY**
             **RESOLVED THE ONLY ISSUE IN THE REFERENDUM CASES, REQUIRING COUNTY**

15             **DEFENDANTS TO SUBMIT THE REFERENDUM TO A VOTE OF THE PEOPLE IN THE**
             **UPCOMING JUNE ELECTION**

16         Despite County Defendants' commendable, albeit much delayed, acknowledgment that the

17   VRA does not apply to privately drafted and circulated initiative petitions, they nevertheless continue

18   to refuse to submit the Referendum measure to a vote of the electorate on the ground that the

19   Referendum petitions should have been translated into Spanish under Section 203 of the VRA. Not

20   only is the County's position in this regard impossible to square with its own actions with respect

21   to the General Plan Initiative, but its legal argument is, on the merits, entirely at odds with the Ninth

22   Circuit's en banc decision in *Padilla v. Lever,* as well as with Congress' unambiguous description

23   of the intended scope of Section 203 in the House Committee Report accompanying enactment of

24   the Fannie Lou Hamer, Rosa Parks, and Coretta Scott King Voting Rights Reauthorization and

25   Amendments Act of 2006. These recent authorities make it *absolutely clear* that Section 203 of the

26   VRA does not apply to *any* privately initiated, drafted, and circulated petitions, whether the petitions

27

28

13

1    relate to proposed recalls, initiatives or referenda.

2    **A.    THE NINTH CIRCUIT'S EN BANC DECISION IN *PADILLA V. LEVER* APPLIES**
**TO ALL PRIVATELY INITIATED, FUNDED, AND CIRCULATED PETITIONS —**
3    **INCLUDING THE REFERENDUM PETITION IN THIS CASE — BECAUSE SUCH**
**PETITIONS ARE NOT "PROVIDED BY" THE STATE**
4

5        As noted above, by an emphatic 14-to-1 vote (with only Judge Pregerson himself dissenting),

6    the Ninth Circuit en banc court rejected both the specific holding *and the reasoning* of Judge

7    Pregerson's panel opinion in *Padilla v. Lever*, ruling instead that privately initiated and circulated

8    recall petitions are *not* subject to the multilingual requirements of Section 203 of the VRA: "We

9    conclude, as did the district court, that the recall petitions circulated by the proponents of the recall

10   were not subject to this provision because they were not 'provided' by Orange County or the State."

11   463 F.3d at 1050.[4]

12

13       There can be no serious dispute that the en banc court's ruling applies not only to recall

14   petitions, but to *all* "petitions initiated, circulated and paid for by private proponents," even "when

15   the proponents are required to draft the petitions in a form specified by the State and county." *Id.*

16   at 1048 (framing the "question presented by this appeal"). The primary rationale for the en banc

17   court's ruling — that it is the *private proponents*, not the State or County, who "provide" the

18   petitions when they initiate, draft, circulate, and fund them — applies as much, if not more, to

19   referendum and initiative petitions as it does to recall petitions. As the Ninth Circuit explained:

20           "It is true that California regulates recall petitions in some detail. The
21       petitions must follow a format provided by the Secretary of State, and must use a
         minimum type size. The petition must also include a copy of the Notice of Intention,
22       the statement of grounds for recall, and the answer of the targeted officer if the
         officer submitted one. But these regulations do not mean that the petitions are
23

24   _____

25   [4]Section 203 provides in pertinent part:

26           "*Whenever any State or political subdivision* subject to the prohibition of
         subsection (b) of this section *provides* any registration or voting notices, forms,
27       instructions, assistance, or other materials or information relating to the electoral
         process, including ballots, *it shall provide* them in the language of the applicable
28       minority group as well as in the English language . . . ." 42 U.S.C. § 1973aa-1a(c)
         (emphasis added).

*In re County of Monterey Initiative Matter* (Case Nos. C 06-01407 JW, C 06-01730 JW)
*In re Monterey Referendum* (Case Nos. C 06-02202 JW, C 06-02369 JW)
*MELENDEZ*'S AND *RSJOC*'S MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT

*provided* by the State or subdivision. The form is regulated by the State, but the proponents fill out the petition, supply the grounds of recall, and have the petitions printed at their own expense. The fact that, under Cal. Elec. Code § 11041(a), the Secretary of State 'provides' the format does not mean that the State 'provides' the petitions themselves within the meaning of the Voting Rights Act." *Id.* at 1051 (emphasis in original; citations omitted).

The en banc court explicitly rejected the plaintiffs' argument that the State should be considered to "provide" the petitions because the election officials are charged under state law with ascertaining whether "the proposed form and *wording* of the petition meets the requirements of [the Elections Code]." *Id.* (emphasis in original). As the Ninth Circuit concluded: "It is not reasonable to hold that this regulatory process transforms ***petitions privately initiated, drafted, and circulated by the proponents*** into petitions 'provided' by the County for purposes of the Voting Rights Act. *Id.* (emphasis added).

Judge Reinhardt's concurring opinion likewise acknowledges that it is the private proponents, not the state or its subdivision, who "provide" a petition when the petition is "funded, drafted, printed, and circulated" by them, even if they must adhere to a specified format in doing so:

> "The plain meaning of the language of the Voting Rights Act compels me to concur in the result reached by the majority, because neither the State of California nor the County of Orange 'provided' the recall petition at issue in this case. Rather, as the majority holds, *the petition was funded, drafted, printed, and circulated — i.e., provided — by the private proponents* of the recall, although in conformance with the relevant provisions of the California Elections Code." *Id.* at 1053 (Reinhardt, J., concurring) (emphasis added).

Like recall petitions, referendum and initiative petitions cannot under any reasonable interpretation of the statutory language be considered to have been "provided" by the state. It is thus not surprising that every other court in the country to have addressed this issue — including other district courts in California — has concluded that referendum and initiative petitions are not "provided" by the state, and therefore are not covered by Section 203's translation requirements.

In *Chinchay v. Verjil*, No. 06-1637 (C.D. Cal. Apr. 11, 2006), for instance, U.S. District Judge Audrey B. Collins held that referendum petitions drafted and circulated by private citizens were not required to be translated into Spanish or other foreign languages under the VRA because

15

they could not be deemed to be "provided" by the state under California's statutory scheme — a ruling that is especially noteworthy because it was made even before the Ninth Circuit had issued its en banc decision in *Padilla*, during the time when Judge Pregerson's original panel opinion was the controlling law of this Circuit.[5] Judge Collins reasoned that "[t]o expand the application of the state-'provided' electoral process to referenda would be to 'strain[] the meaning of these statutory terms' beyond what this Court deems to be Congress's, or the Ninth Circuit's, intent." Order Regarding Plaintiffs' Motion for Preliminary Injunction, Woocher Decl., Exh. B, at 19 (quoting *Padilla v. Lever*, 429 F.3d 910, 926 (9th Cir. 2005) (Canby, J., dissenting), *opinion withdrawn*, 446 F.3d 963 (9th Cir. 2006)). As Judge Collins concluded upon reviewing California's statutory provisions governing the preparation, circulation and qualification of referendum petitions, "of the three types of citizen-sponsored petitions reviewed here, the referendum petition process includes the least amount of state involvement," for "aside from generally regulating the format, the state is not involved in any way with referendum petitions prior to their circulation for signature, in contrast to both recall and initiative petitions. Thus a given referendum petition is neither submitted to, reviewed by nor supplemented in any way by the state until *after* it has been circulated and all signatures have been collected, instead remaining until that time 'wholly created and controlled by

---

[5] It is also notable that in the same decision in which Judge Collins held that *referendum* petitions in California were *not* covered by Section 203 of the VRA, she also concluded, based upon the reasoning of the panel decision in *Padilla*, that *initiative* petitions *were* subject to Section 203 and must be translated into the required minority languages. After the panel opinion in *Padilla* had been withdrawn by the en banc court, however, Judge Collins reconsidered and reversed this aspect of her ruling with respect to initiatives, explaining that "no other decision by *any* Court of Appeals has applied Section 203 of the VRA to citizen-sponsored measures such as recall, initiative and referendum petitions." Order Re: Defendants-in-Intervention's Motion for Reconsideration and Motion to Dismiss, Woocher Decl., Exh. C, at 27-28 (emphasis in original; citations omitted).

Likewise, after the withdrawal of the *Padilla* panel decision, but *before* the en banc court had issued its decision, U.S. District Court Judge Ronald Whyte of the Northern District of California on September 1, 2006, rejected a similar claim that initiative petitions fell within Section 203's coverage, finding instead that plaintiffs "cannot demonstrate a likelihood of success on the merits of their claim that the initiative was promoted in a way that runs afoul of section 203 of the Voting Rights Act" and "cannot overcome the fact that two other circuits have decided the section 203 issue adversely to their position and are persuasive in their reasoning." *Heredia v. Santa Clara County*, No. 06-04718, 2006 WL 2547816, at *2 (N.D. Cal. Sept. 1, 2006).

---

*In re County of Monterey Initiative Matter* (Case Nos. C 06-01407 JW, C 06-01730 JW)
*In re Monterey Referendum* (Case Nos. C 06-02202 JW, C 06-02369 JW)
MELENDEZ'S AND RSJOC'S MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT

1    private parties.'" *Id.*, Woocher Decl., Exh. B, at 18-19 (quoting *Padilla v. Lever*, 429 F.3d at 923)

2    (emphasis in original).[6]

3        In addition to the fact that recall petitions are not "provided" by the state, the *Padilla* en banc

4    court cited various "practical reasons" in support of its "inevitable interpretation of the statute" (463

5    F.3d at 1052), all of which apply equally, if not more so, to referendum and initiative petitions.  For

6    example, the en banc opinion noted that proponents of recall petitions "have an incentive to gather

7    as many signatures as they can, but they are under no legal duty to do so, just as they are under no

8    duty to launch a recall process at all."  *Id*.  The en banc court thus found that "when the Voting

9    Rights Act creates no duty to present a petition to the plaintiffs in the first place, it is difficult to see

10   why the Act requires the petition to be translated into their language."  *Id*.  This reasoning holds true

11   for all types of petitions, including referendum and initiative petitions such as those at issue here,

12   as the *Melendez* and *RSJOC* plaintiffs were similarly under no duty to launch their petition drives

13   or to present their Referendum or Initiative petitions to any particular persons, and they therefore

14   were under no duty to translate those petitions into any particular individuals' language.

15       Similarly, the en banc court was concerned that a requirement to translate petitions into

16   multiple languages "is far more likely to be used as a sword than a shield," by parties bringing suit

17   "to stop an election for which sufficient signatures had been collected."  *Id*.  Again, that concern

18

19

20

21   _____

        [6]The Court will recall that the aspect of the recall petition process that led Judge Pregerson
22   to conclude that recall petitions were "provided" by the State despite the fact that they were initiated,
     drafted, and circulated by private parties was that the elections officials were required under
     California's statutory scheme to review *and approve* the content of the petitions *prior to* their
23   circulation.  *See* 463 F.3d at 1061 (Pregerson, J., dissenting) ("California law prohibits *any* private
     party from circulating a recall petition until the petition receives state approval. . . . This state
24   approval, together with the extensive state regulation of the form of the petitions is sufficient state
     involvement to trigger application of the bilingual requirements and to conclude that the state
25   'provided' the Recall Petition within the meaning of the Voting Rights Act.").  Of course, not a
     single other judge on the Ninth Circuit agreed with Judge Pregerson's analysis in this regard.  But
26   *referendum* petitions would not even satisfy *Judge Pregerson's* criteria, for as Judge Collins noted
     — and in marked contrast to the process prescribed for recall petitions — election officials ***never
27   even see*** a referendum petition until ***after*** it has been circulated and every one of the signatures has
     been affixed to it.  Neither the County nor the *Rangel* plaintiffs can adequately explain how state or
28   county officials could be considered to "provide" a petition that they have never seen and may not
     even be aware of until after it has been signed by the voters and submitted for certification.

1    applies equally to a translation requirement imposed upon referendum and initiative petitions.

2    Indeed, County Defendants and the *Rangel* plaintiffs in this case have done *precisely* what the en

3    banc court feared — they have sought to prevent an election on the duly qualified Referendum

4    measure, for which *substantially more signatures than necessary* were collected, on the ground that

5    the petitions should have been translated into Spanish and made available for signing by *even more*

6    people.  In fact, unlike the plaintiffs in *Padilla*, the *Rangel* plaintiffs *do not even allege* that anyone

7    mistakenly signed the Referendum petitions in this case because they were not translated into

8    Spanish; rather, they simply want to use the absence of any Spanish translation as a "sword" to stop

9

10   an election on a petition for which more than sufficient signatures have been gathered.

11       Finally, the en banc court in *Padilla* found that imposing a translation requirement "is very

12   likely to have a chilling effect on the petition process itself," for "[t]he expense and trouble of

13   fulfilling the translation requirements are likely to deter proponents who otherwise would launch

14   petitions.  When that happens, then application of § 1973aa-1a will have had a perverse effect: it will

15   have prevented, rather than promoted, participation in the electoral process."  *Id.* at 1053.  A

16   translation requirement for referendum and initiative petitions would undoubtedly have an *even*

17   *greater* "chilling effect" on the petition process than is the case with recall petitions, because

18   referendum and initiative petitions are typically very lengthy (in contrast to the simple one- or two-

19   page recall petition), thereby significantly increasing the "expense and trouble" of translating them

20

21   into as many as five different languages under the VRA.  Indeed, the Monterey County Elections

22   Department recently estimated that the cost of translating a County resolution into Spanish for

23   inclusion in a referendum petition would be approximately $50,000 — a significant, and likely

24   insuperable, burden for most community-funded, grassroots organizations such as the *RSJOC*

25   plaintiffs in this case.  *See* January 16, 2007, County Counsel Report, Woocher Decl., Exh. D, at 31.

26   And for referendum petitions, of course, the drafting, translating, printing, and signature-gathering

27   circulation process must all be completed within *30 days*, making it all but *impossible* for proponents

28

                                              18

---

1  to satisfy a requirement that petitions be translated into as many as five different foreign languages

2  under the VRA within that short time frame.[7]

3      In sum, all of the reasons cited by the en banc court in *Padilla* for concluding that

4  Section 203 of the Voting Rights Act does not cover privately initiated, drafted, circulated, and

5  funded recall petitions apply fully to referendum and initiative petitions, as well.  Indeed, the court

6  in *Padilla* made clear that its analysis extended beyond the recall context by expressly citing *with

7  approval* to the Tenth and Eleventh Circuits' decisions in *Montero v. Meyer*, 861 F.2d 603 (10th Cir.

8

9  ────────────────

10   [7]Judge Collins highlighted this very concern in her ruling rejecting the extension of Judge
Pregerson's panel opinion in *Padilla* to referendum petitions:

11

12      "Moreover, the Court finds that the wholesale application of the [panel
opinion]'s reasoning in *Padilla* to referenda is also problematic due to two important
differences between referenda and initiatives or recalls — namely, the thirty day time

13   limit and the often lengthy materials that must be included with a referendum
petition.  In fact, California courts have required that all exhibits to an ordinance

14   must be attached to the referendum petition, a requirement that even Plaintiffs
concede could present a logistical problem for translation.  And while the Ninth

15   Circuit has stressed the importance of broadly construing the remedial terms of the
VRA, an equally crucial point is that such a broad construction need only be

16   undertaken to the extent that it achieves the purpose of maximizing participation in
the electoral process.  Requiring referenda to comply with the bilingual provisions

17   of the VRA, however, exceeds the purpose of such construction, and may in fact
erode such purpose and restrict participation.  To require a referendum proponent to

18   translate an entire referendum petition, which in this case amounts to approximately
350 pages, into one or even several other languages, and then obtain the requisite

19   number of signatures, all within the thirty day time limit, is a nearly insurmountable
task.  In addition, the economic costs would be considerable, depending on the

20   number of languages at issue and, more to the point, would be borne by the citizen-
proponents, not local governments.  The result of imposing such a requirement would

21   effectively nullify the right of citizens in this state to engage in the referendum
process, which cannot be what Congress intended in enacting the VRA."  Order

22   Regarding Plaintiffs' Motion for Preliminary Injunction, Woocher Decl., Exh. B,
at 19-20.

23

24      Judge Collins was absolutely correct that translating an entire referendum petition into even
one, much less as many as five, foreign languages within the 30-day time limit would be a "nearly

25   insurmountable task," as the County must now surely admit.  In collecting the County resolutions
and attachments necessary to prepare a referendum petition against the County's recent adoption of

26   a resolution amending the General Plan, Plaintiff LandWatch Monterey County requested Spanish
translations of these County documents from Acting Monterey County Registrar of Voters Claudio

27   Valenzuela, but was told that the translations were unavailable *and would not be available* until the
end of March 2007 — long after the expiration of the 30-day deadline to submit the referendum

28   petitions.  *See* Declaration of Chris Fitz in Support of *Melendez* Plaintiffs' and *Rancho San Juan
Opposition Coalition* Plaintiffs' Motion for Summary Judgment, ¶¶ 4-5.

19

1988), and *Delgado v. Smith*, 861 F.2d 1489 (11th Cir. 1988), both of which held that privately

circulated ***initiative petitions*** were not subject to Section 203 of the VRA:

> "Our conclusion that the County did not 'provide' the recall petitions . . . is
> directly supported by the decisions of two of our sister circuits. The Tenth Circuit
> held in *Montero v. Meyer*, 861 F.2d 603, 609-10 (10th Cir. 1988), that initiative
> petitions were not subject to the requirements of § 1973aa-1(c) because they were not
> provided by the State. The Eleventh Circuit came to a similar conclusion in *Delgado
> v. Smith*, 861 F.2d 1489, 1496 (11th Cir. 1988). No circuit authority to the contrary
> has been cited to us, and we have found none." *Padilla v. Lever*, 463 F.3d at 1051-
> 52.

Notwithstanding the clear import of the en banc ruling in *Padilla* as applying fully to ***all***

citizen-sponsored petitions, County Defendants nevertheless continue to deny the citizens of

Monterey County their constitutional right to vote on the instant Referendum measure, apparently

still clinging to the now-conclusively-rejected contention that the Referendum petitions violate

Section 203 of the VRA. In their prior briefs filed in this Court following issuance of the en banc

decision in *Padilla*, County Defendants and the *Rangel* plaintiffs argued that referendum petitions

are significantly *different* from the recall petitions at issue in the *Padilla* appeal in that the

government supposedly "provides" the ***resolution or ordinance*** that is the subject of the referendum

and requires that it be "attached" to the petition.[8]   This fact, however, provides no basis for

distinguishing referendum petitions from recall petitions. More importantly, it provides no basis for

distinguishing the *ratio decendi* of the en banc ruling in *Padilla*.

By selectively quoting from one passage of the en banc opinion, the County and the *Rangel*

plaintiffs try to pretend that the court's decision that recall petitions are not covered by Section 203

of the VRA was based solely on its conclusion that election officials did not supply the "actual

---

[8]This newfound position represents a complete flip-flop from their previous assertions that
the reasoning of Judge Pregerson's panel opinion in *Padilla* should be *extended* to cover the
Referendum petitions at issue here because of all the *similarities* between the recall and referendum
processes. Indeed, at the time County Defendants withdrew the qualified Referendum from the
June 6, 2006, ballot, they explicitly stated that they did so based upon the *panel*'s decision in *Padilla
v. Lever*, 429 F.3d 910 (9th Cir. 2005), *withdrawn*, 446 F.3d 963 (9th Cir. 2006), which pertained
solely to recall petitions. *See RSJOC* Notice of Removal, ¶ 4.

wording" of the recall petition and did not determine its contents.  But the en banc court only discussed whether election officials dictate the actual wording and contents of a recall petition in the context of *rejecting* Padilla's argument that the County should be deemed to "provide" a recall petition because it specifies and approves "the form and wording of the proposed petition."  *See Padilla*, 429 F.3d at 1051 ("The plaintiffs argue that, because the election officials are charged under state law with ascertaining whether 'the proposed form and *wording* of the petition meets the requirements of this chapter[,]' they are dictating the content of the petitions to the degree that the petitions may be said to be 'provided' by the County.") (citation omitted; emphasis in original).[9] Nothing in the *Padilla* en banc decision holds, or even implies, that if elections officials had in fact supplied the actual wording of the recall petition or had determined its contents, the en banc court would have reached the opposite conclusion — the faulty premise upon which County Defendants' argument relies.  Rather, as discussed above, it is clear that the *primary rationale* for the en banc court's ruling was that *the recall petitions themselves* could not be considered to be "provided" by the County because, regardless of whether the County dictated their form and wording, the petitions were "initiated, circulated and paid for by private proponents."  *Padilla*, 463 F.3d at 1048. That is equally true of referendum petitions.

Moreover, even on its own terms, County Defendants' and the *Rangel* Plaintiffs' argument is silly.  A referendum petition, after all, is the means by which private citizens exercise their constitutional right to **protest** the adoption of a particular resolution or ordinance.  *See* Cal. Const., art. II, sec. 9, subd. (a) ("The referendum is the power of the electors to approve or reject statutes or parts of statutes . . . .").  To suggest that the County "provides" the referendum petition merely because the title and text of the law that is being challenged must be attached to the private proponents' petition *turns the entire petition process on its head*.  The County may well "provide"

---

[9]This, as noted above (see note 6, *supra*), was also the primary rationale upon which Judge Pregerson had relied in concluding that the recall petitions could be considered to be "provided" by the state or county.

1    the ordinance that is the subject of the referendum, but it by no means provides the referendum

2    *petition* itself, which is what triggers coverage under Section 203.

3          **B.**    **IN RE-AUTHORIZING THE VOTING RIGHTS ACT, CONGRESS AFFIRMATIVELY DECLARED THAT PRIVATELY CIRCULATED PETITIONS ARE NOT SUBJECT TO THE ACT'S MINORITY LANGUAGE PROVISIONS**

4

5         As the en banc court in *Padilla* recognized, "the ultimate determination [as to whether

6    petitions must be translated into foreign languages] is what Congress meant by imposing

7    requirements on materials 'provided' by the State or its subdivision." 463 F.3d at 1052. If "[t]he

8    language and structure of the statute" were not sufficient to "compel" what the *Padilla* court

9    determined was the "inevitable interpretation of the statute" as not applying to citizen-sponsored

10   petitions (*id.*), Congress itself made its intent unmistakably clear last year in re-authorizing

11   Section 203 of the Voting Rights Act for an additional 25 years. The House Judiciary Committee's

12   May 22, 2006, Report for the Fannie Lou Hamer, Rosa Parks, and Coretta Scott King Voting Rights

13   Reauthorization and Amendments Act of 2006 expressly states that privately initiated and distributed

14   petitions are "excluded" from the coverage of Section 203:

15

16        "[L]anguage assistance that facilitates equal participation in the voting

17   process so language minority citizens are able to cast effective ballots *does not require private citizens to make privately prepared and distributed materials available in the covered languages*. In recognizing the *exclusion of petitions that are initiated and distributed by private citizens* from Section 203's requirements, the Committee restates its position that Section 203 is intended to remedy the 'denial of the right to vote of such minority group citizens . . . [that is] directly related to the unequal educational opportunities afforded them, resulting in high illiteracy and low voting participation.' *To impose Section 203's requirements on private citizens whose actions are outside governmentally administered voting systems would have the effect of penalizing private citizens for injuries caused by States.* Section 203's assistance is a remedy for the past and present failures of States and jurisdictions to remedy educational disparities, putting language minority citizens on an equal footing in exercising the right to vote." H.R. Rep. No. 109-478, at 59, 2006 WL 1403199 (May 22, 2006) (emphasis added; full Report is also available online at <http://judiciary.house.gov/media/pdfs/109-478.pdf>).[10]

18

19

20

21

22

23

24

25

26   _____

27      [10]The legislative history of the 2006 Re-Authorization of the VRA is fully consistent in this regard with the various House and Senate reports from the earlier legislation pertaining to Section 203, which likewise reflect a clear congressional intent to make the minority language translation requirement only "applicable to *states and political subdivisions*," and not to private citizens. *See,*

28

*In re County of Monterey Initiative Matter* (Case Nos. C 06-01407 JW, C 06-01730 JW)
*In re Monterey Referendum* (Case Nos. C 06-02202 JW, C 06-02369 JW)
*MELENDEZ*'s AND *RSJOC*'s MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT

1    In expressing its intent to "exclu[de] petitions that are initiated and distributed by private

2    citizens from Section 203's requirements," Congress did not in any way limit this exclusion to any

3    particular type of citizen-initiated petition. Rather, it broadly stated that *all* "privately prepared and

4    distributed" petitions — whether recall, initiative, or referendum petitions — do not need to be made

5    available in the covered languages.  Indeed, Congress went even further, explaining that because

6    Section 203 was enacted as "a remedy for the past and present *failures of States and jurisdictions*

7    to remedy educational disparities," imposing the translation requirement on private citizens would

8    "have the effect of *penalizing* them for injuries caused by States."  (Emphasis added.)[11]

9

10   In sum, the plain text of the statute, the clear and unequivocal language of the statute's

11   legislative history, the uniform practice of jurisdictions throughout the country, and every relevant

12

13   ――――――――――

     *e.g.,* S. Rep. No. 94-295, at 9, *as reprinted in* 1975 U.S.C.C.A.N. 774, 775 (emphasis added); *id.* at

14   48 ("For a period of 10 years, ***state and local officials*** are prohibited from providing English-only
     registration and election materials if (i) more than five percent of citizens of voting age in the

15   jurisdiction are of a single language minority and (ii) the illiteracy rate of the language minority
     group citizens is higher than the national illiteracy rate for all persons of voting age." (emphasis

16   added); *id.* at 30 ("The failure of ***states and local jurisdictions*** to provide adequate bilingual
     registration and election materials and assistance") (emphasis added); *id.* at 39 ("***states and local***

17   ***jurisdictions*** have been disturbingly unresponsive to the problems of [language] minorities.")
     (emphasis added).

18

19   [11]Perhaps as significant as what Congress ***has said*** about its intent in enacting Section 203
     is what it ***has not said or done*** in that regard.  In the more than 30 years since Section 203 was

20   enacted, the Department of Justice — despite having brought dozens of cases enforcing the language
     minority provisions of the VRA — ***has never once*** brought an administrative or judicial enforcement

21   action challenging the validity of a recall, initiative, or referendum petition that was circulated only
     in English. During this same time period, as noted above, two different Courts of Appeals ruled that

22   privately circulated initiative petitions were not covered by the Act.  Yet Congress has now re-
     authorized the VRA *three times* to extend Section 203's duration and to modify certain of its

23   provisions, and each time it has left Section 203(c)'s language untouched.  Congress' acquiescence
     in *Montero*'s and *Delgado*'s interpretation of Section 203, as well as in the uniform practice of states

24   and local jurisdictions to permit private citizens to circulate recall, initiative, and referendum
     petitions only in English, evinces its apparent agreement that privately circulated petitions are not

25   covered by Section 203. *See Dougherty County Board of Education v. White*, 439 U.S. 32, 38 (1978)
     ("Had Congress disagreed with [the courts'] broad construction of § 5, it presumably would have

26   clarified its intent when re-enacting the statute in 1970 and 1975."); *Hilton v. South Carolina Pub.*
     *Railways Comm'n*, 502 U.S. 197, 202 (1991) (Congress' failure to correct a prior decision of the

27   court when it had the opportunity to do so should be interpreted as congressional "acceptance of our
     earlier holding," particularly "when the legislature, in the public sphere, and citizens, in the private

28   realm, have acted in reliance on a previous decision, for in this instance overruling the decision
     would dislodge settled rights and expectations or require an extensive legislative response.").

1   judicial precedent — including, most significantly, the Ninth Circuit's recent en banc decision in

2   *Padilla v. Lever* — establish that privately circulated petitions like the Referendum petition in this

3   case are not subject to Section 203 of the VRA.

4        **C.**    **THE ATTORNEY GENERAL'S GUIDELINES DO NOT STATE THAT**

5               **INITIATIVE, REFERENDUM, OR RECALL PETITIONS ARE COVERED BY**
               **SECTION 203 OF THE VOTING RIGHTS ACT**

6

7        Contrary to arguments that have previously been made by County Defendants and the *Rangel*

8   plaintiffs, the Attorney General's guidelines for implementing Section 203 ***do not*** support an

9   interpretation of the VRA as applying to referendum petitions.   Those guidelines provide, in

10  pertinent part:

11        "Types of materials.  It is the obligation of the jurisdiction to decide what
        materials must be provided in a minority language. A jurisdiction required to provide

12        minority language materials is only required to publish in the language of the
        applicable language minority group materials distributed to or provided for the use

13        of the electorate generally.  Such materials include, for example, ballots, sample
        ballots, informational materials, and *petitions*."  28 C.F.R. § 55.19(a) (emphasis

14        added).

15        An identical argument was already made to, and rejected by, the en banc court in *Padilla*,

16  which explained: "We are not convinced this regulation encompasses recall petitions initiated,

17  drafted and circulated by citizens.  Moreover, we have been directed to no instances in which the

18  Department of Justice has attempted to impose translation requirements on recall petitions in the

19  several decades that § 1973aa-1a has been in existence." 463 F.3d at 1052.  Rather, as RSJOC noted

20  in responding to this argument when the *Rangel* plaintiffs first trotted it out in opposition to their

21  motion for preliminary injunction, the regulation's reference to "petitions" most likely refers to

22  *nomination* petitions, the only type of petitions that directly relate to the electoral process (being

23  issued only *after* an election has been called for) and the only type of petitions that are actually

24  "provided" by the state. *See, e.g.,* Cal. Elec. Code, § 8101 ("All forms required for nomination and

25  election to all congressional, state, county and political party central committee offices *shall be*

26

27

28

1   *furnished only by the county elections official.*") (emphasis added).[12]

2   In any event, as the en banc court held in *Padilla*, "the ultimate determination is what

3   Congress meant by imposing requirements on materials 'provided' by the State or its subdivision.

4   That term simply ***cannot reasonably be construed to apply to recall petitions initiated, drafted and***

5   ***circulated by private citizens.***" *Id.* (emphasis added); *see also id.* (finding that the "language and

6   structure of the statute compel our decision" "that § 1973aa-1(a) does not apply to recall petitions

7   in this case."). As such, interpreting Section 203 as applying to initiative, referendum, and recall

8   petitions "initiated, drafted and circulated by private citizens" — even if that were what the Attorney

9   General in fact intended — would be unreasonable, and such an interpretation must be rejected.

10  *Presley v. Etowah County Commission*, 502 U.S. 491, 508 (1992) ("Deference does not mean

11  acquiescence. As in other contexts in which we defer to an administrative interpretation of a statute,

12

13  _____

14  [12]Plaintiffs have no quarrel with an interpretation of Section 203 that would require county elections officials to provide *nomination* petitions in minority languages upon a candidate's request.

15  Nominating petitions differ from initiative, referendum, and recall petitions in several critical respects. Most notably, in contrast to initiative, referendum, and recall petitions — which are drafted

16  and printed entirely by private individuals — nominating petitions (at least in states like California) are actually drafted and printed by the elections officials and are thus "furnished" by the state. *See*

17  Cal. Elec. Code, § 8101; *id.*, § 10227. Candidates for office pick up the printed nomination petitions directly from the elections official's office, and the only thing that is added to them are the voters'

18  signatures. Thus, nominating petitions arguably fulfill the statutory requirement that they be "provided by" the state or political subdivision. That is not the case with initiative and referendum

19  petitions, which are neither prepared by the elections officials nor received from them.

20  Similarly, again in contrast to initiative, referendum, and recall petitions, nominating petitions are directly "related to the electoral process," the other statutory condition for coverage

21  under Section 203. Indeed, ***nominating*** petitions are only provided and circulated ***after*** an election has already been scheduled; they do not "trigger" the election. Unlike initiative, referendum, and

22  recall petitions, then, nominating petitions are not merely a pre-cursor or a preliminary step that may ***ultimately*** result in an election; they are instead an integral part of the "electoral process" itself.

23

24  Finally, it is one thing to say that the government must make nominating petitions *available* in Spanish to candidates who want to use them, and quite another to *disqualify* a candidate from the

25  ballot because he gathered all of the necessary signatures on forms printed only in English and did not believe he needed to circulate any Spanish-language nominating petitions in order to qualify for

26  a place on the ballot. In the context of nomination petitions, it would be absurd to disqualify a candidate for not circulating his or her nominating petitions in Spanish, yet that is *exactly* what

27  County Defendants and the *Rangel* plaintiffs insist should occur in the present case: Because RSJOC gathered all of the signatures they needed to qualify the Referendum on English-only petitions and

28  did not circulate any petitions in Spanish, they argue, the Referendum should be disqualified from the ballot.

*In re County of Monterey Initiative Matter* (Case Nos. C 06-01407 JW, C 06-01730 JW)
*In re Monterey Referendum* (Case Nos. C 06-02202 JW, C 06-02369 JW)
MELENDEZ'S AND RSJOC'S MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR SUMMARY JUDGMENT

1  we do so only if Congress has not expressed its intent with respect to the question, and then only if

2  the administrative interpretation is reasonable."); *accord, Reno v. Bossier Parish School Board*, 520

3  U.S. 471, 483 (1997).

4       For this very reason, the courts of appeals in *Montero* and *Delgado* likewise refused to give

5  any weight to the inclusion of the word "petition" in the Attorney General's guidelines in concluding

6  that Section 203 did not apply to initiative petitions.  As the court in *Montero* recognized, "deference

7  granted to an administrative interpretation cannot result in a construction of a statute beyond its

8  limits."  *Montero*, 861 F.2d at 609.  Therefore, "[b]ecause the Act applies only to voting and

9 

10  registration, [the Attorney General's guidelines] cannot be construed to apply to other activities."

11  *Id.*; *see also Delgado*, 861 F.2d at 1494 ("Since we find the interpretation of the state officials more

12  consistent with the language and clear intent of the statutes, the guidelines are not persuasive.").

13     **D.**    **THE *RANGEL* PLAINTIFFS' REQUEST TO CONVENE A THREE-JUDGE PANEL**
               **IS NOT SUPPORTED BY ANY STATUTE OR CASE LAW, AND IT WOULD NOT**

14              **APPLY TO THE REMOVED *RSJOC* LAWSUIT IN ANY EVENT**

15       Finally, this Court should reject the *Rangel* plaintiffs' belated request to convene a three-

16  judge court to preside over this action.  After litigating these cases for more than eight months, the

17  *Rangel* plaintiffs have suddenly discovered that they supposedly filed their action in the wrong court,

18  and that their federal Voting Rights Act claim should really be heard by a three-judge court.  *See*

19  *Rangel* Plaintiffs' Memorandum re: Request for the Convening of a Three Judge Court.  The *Rangel*

20 

21  plaintiffs' request for this unusual procedure appears to be nothing more than another attempt to

22  further delay a ruling on the merits in this action.

23       On its face, there is no basis for the *Rangel* plaintiffs' suggestion that a three-judge court

24  must be convened to decide the issue of Section 203's applicability to referendum petitions.  The

25  *Rangel* plaintiffs admit that there is no statute (or case, for that matter) that expressly supports their

26  position, but they contend that Section 204 of the VRA, 42 U.S.C. § 1973aa-2, which requires an

27  enforcement action instituted ***by the Attorney General in the name of the United States*** to be

28 

26

---

1    determined by a three-judge court and appealed directly to the Supreme Court, should nevertheless

2    be held to also apply to a civil action filed *by a private individual* to enforce Section 203.  Needless

3    to say, the *Rangel* plaintiffs can muster   no authority supporting such a broad expansion of

4    Section 204; indeed, on its face, the clear and unambiguous language of the statute does not permit

5    such an interpretation:

6              "Whenever the *Attorney General* has reason to believe that a State or
7         political subdivision (a) has enacted or is seeking to administer any test or device as
         a prerequisite to voting in violation of the prohibition contained in section 1973aa of
8         this title, or (b) undertakes to deny the right to vote in any election in violation of
         section 1973aa-1 or 1973aa-1a of this title, he may institute *for the United States, or*
9         *in the name of the United States,* an action in a district court of the United States,
         in accordance with sections 1391 through 1393 of Title 28, for a restraining order,
10        a preliminary or permanent injunction, or such other order as he deems appropriate.
         *An action under this subsection* shall be heard and determined by a court of three
11        judges in accordance with the provisions of section 2284 of Title 28 and any appeal
         shall be to the Supreme Court." 42 U.S.C. § 1973aa-2 (emphasis added).

13        The present action, of course, is not an action under section 204 of the VRA instituted by the

14   Attorney General for or in the name of the United States, and Section 204 is thus plainly inapplicable

15   here by its own terms.  Indeed, no court anywhere in the country has ever adopted the *Rangel*

16   plaintiffs' untenable construction of Section 204.  To the contrary, as the *Rangel* plaintiffs concede,

17   the Solicitor General made a similar argument in an *amicus* brief filed in support of the petition for

18   certiorari in *Montero v. Meyer*, in which the Solicitor General argued that the district and appellate

19
20   courts lacked jurisdiction and that the Court should therefore grant the petition for writ of certiorari,

21   vacate the decision of the court of appeals, and remand the case for the convening of a three-judge

22   court. *The United States Supreme Court, however, rejected this argument by denying certiorari.*

23   *See Montero v. Meyer*, 492 U.S. 921 (1989).

24        Moreover, every court to be confronted with a private party's challenge to the validity of a

25   recall, initiative, or referendum petition under Section 203 of the VRA — including *the Ninth*

26   *Circuit* in *Padilla v. Lever*, 463 F.3d 1046 and *this Court* in *In re County of Monterey Initiative*

27   *Matter*, 427 F. Supp. 2d 958 (N.D. Cal. 2006) — has proceeded to hear the private action in the

28

1  district court, with the appeal being taken in normal course to the court of appeals, not directly to the

2  Supreme Court. *See, e.g., Montero v. Meyer*, 861 F.2d 603 (10th Cir. 1988); *Delgado v. Smith*, 861

3  F.2d 1489 (11th Cir. 1988);  *Heredia v. Santa Clara County*, No. 06-04718, 2006 WL 2547816

4  (N.D. Cal. Sept. 1, 2006); *Hoyle v. Priest*, 59 F. Supp. 2d 827 (W.D. Ark. 1999); *Gerena-Valentin*

5  *v. Koch*, 523 F. Supp. 176 (S.D.N.Y. 1981); *Cinchay v. Verjil*, No. 06-01637 (C.D. Cal. 2006);

6  *Bonilla v. Barnett*, No. 06-375 (E.D. Cal. 2006); and *Imperial v. Castruita*, No. 05-08940 (C.D. Cal.

7  2006).  In sum, *never* has a three-judge court been convened to hear such a private action.[13]

8

9      Citing *Allen v. State Board of Elections*, 393 U.S. 544 (1969) — which did not involve a

10  Section 203 claim — the *Rangel* plaintiffs nevertheless argue that because three-judge courts

11  consider private actions brought under an entirely different section of the VRA, Section 5, this

12  extraordinary requirement should apply equally to Section 203 actions. But *Allen*'s rationale applies

13  only to Section 5 actions, and it actually undercuts the *Rangel* plaintiffs' argument here.  As the

14  Court in *Allen* held, "congressional enactments providing for the convening of three-judge courts

15  must be *strictly construed*," because doing so "places a burden on our federal court system, and may

16  often result in a delay in a matter needing swift initial adjudication."  393 U.S. at 562 (emphasis

17  added).  Courts therefore "have been reluctant to extend the range of cases necessitating the

18  convening of three-judge courts."  *Id.*  The Supreme Court, however, found that a three-judge court

19  was warranted under *Allen*'s circumstances because actions brought under Section 5 have "the

20  potential for disruption of state election procedures," as they "may result in an injunction enjoining

21  the implementation of state enactments and the suspension of election procedures."  *Id.* at 562-63.

22

23      In the present action, these considerations counsel *against* convening a three-judge court,

24

25

26  [13]Although *Rangel* Plaintiffs are now contending that Section 204 of the VRA, 42 U.S.C
    § 1973aa-2, is the basis for the Court's jurisdiction to hear their challenge under Section 203, 42
27  U.S.C. § 1973aa-1a, *that was not the basis for jurisdiction that they cited in their Complaint*.
    Rather, they alleged: "This court has original jurisdiction under 28 U.S.C. §§ 1331 (federal
28  question), 1343(a)(3) and (4) (civil rights), and 2201 and 2202 (declaratory relief). This action arises
    under 42 U.S.C. §§ 1973aa-1a, 1983, and 1988." *Rangel* Complaint, ¶8.

28

1   because the "disruption of state election procedures" that concerned the Court in *Allen* occurred long

2   ago, when the County Defendants decided (unilaterally) to remove the Referendum measure from

3   the ballot and to cancel the scheduled election upon it.  Far from disrupting and suspending state

4   election procedures, then, adjudicating the merits of Section 203's applicability to privately

5   circulated referendum petitions as swiftly as possible in these consolidated cases will result in

6   *reinstating* the Referendum measure to the ballot and allowing the suspended state election

7   procedures to proceed.

8        In any event, even if there were any merit to the *Rangel* plaintiffs' request to convene a three-

9   judge court for a private action brought under Section 203 of the VRA, their request would apply

10  only to *one* of the two lawsuits that have been consolidated for purposes of this hearing — the

11  *Rangel* complaint seeking an injunction to prevent the Referendum measure from being submitted

12  to Monterey County's voters.  The *RSJOC* lawsuit, Case No. C 06-02369 JW, was not brought under

13  either Section 203 or Section 204 of the VRA, the jurisdictional provisions that the *Rangel* plaintiffs

14  contend require a three-judge court to be convened.  Rather, as discussed above, the *RSJOC* lawsuit

15  was initiated *in state court*, raising only state-law claims, and was *removed* to this Court by the

16  County Defendants pursuant to 28 U.S.C. § 1443(2), which provides that state officers can remove

17  an action to federal court if they are sued or prosecuted "for refusing to do any act on the ground that

18  it would be inconsistent with" any law providing for equal rights.  It is thus *28 U.S.C. § 1443(2)* —

19  not Section 203 or 204 of the VRA — that provides the statutory basis for this Court's jurisdiction

20  to hear the *RSJOC* action, and *a three-judge court is not required* to hear an action removed to

21  federal court under 28 U.S.C. § 1443(2) based upon the invocation of a federal *defense* implicating

22  the Voting Rights Act.  *See Cavanagh v. Brock*, 577 F.Supp. 176, 180 n.3 (E.D.N.C. 1983).

23  Accordingly, even if this Court were to accept the *Rangel* plaintiffs' request to convene a three-judge

24  court, the Court would have to order the *Rangel* action and the *RSJOC* action to be *un*consolidated,

25  and would then have to refer only the *Rangel* action to a three-judge panel, while *retaining* and

29

1    deciding the *RSJOC* action itself.

2        Accordingly, *RSJOC* plaintiffs respectfully request that this Court follow the uniform

3    precedent of the applicable case law — not the rejected suggestion in an 18-year-old amicus brief

4    — and reject the *Rangel* plaintiffs' belated and meritless request to convene a three-judge court.

5

6 **E.    THE COURT SHOULD ISSUE AN INJUNCTION REQUIRING COUNTY DEFENDANTS TO SUBMIT THE DULY QUALIFIED REFERENDUM MEASURE TO A VOTE OF THE ELECTORATE AT THE JUNE 5, 2007, ELECTION**

7

8        Since there are no outstanding state law issues, and the County's ***only*** ground for removing

9    the qualified Referendum from the June 2006 ballot was its federal claim that the Referendum

10    petitions violated the Voting Rights Act, upon rejecting that defense, this Court should order that the

11    County resolution challenged in the Referendum petition (Resolution No. 05-305) must either be

12    repealed by the Board of Supervisors or placed on the June 5, 2007, election ballot in accordance

13    with California Elections Code section 9145. Time is now of the essence, as it is imperative that the

14    Referendum be voted upon at the upcoming June 2007 election because the next regularly scheduled

15    election will not take place until 2008.

16        County Defendants' continuing refusal to submit the Referendum measure to a vote of the

17    electorate — despite the fact that the Referendum petitions were certified as sufficient more than a

18    year ago — has denied and, unless this Court intervenes, will continue to deny *RSJOC* Plaintiffs and

19    the more than 15,000 registered voters of Monterey County who signed the Referendum petitions

20    their First Amendment rights to petition the government for redress of their grievances. This is a

21    right that has been repeatedly characterized by the California Supreme Court and the Courts of

22    Appeal as "one of the most precious rights of our democratic process," which is to be protected and

23    upheld whenever possible:

24

25        "The initiative and referendum are not rights 'granted to the people, but . . . power[s] reserved by them. Declaring it 'the duty of the courts to jealously guard this right of the people' [citation], the courts have described the initiative and referendum as articulating 'one of the most precious rights of our democratic process' [citation]. [I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right not be improperly annulled. If doubts

26

27

28

30

---

can reasonably be resolved in favor of the use of this reserve power, courts will preserve it." *Rossi v. Brown*, 9 Cal. 4th 688, 695 (1995) (*quoting Associated Home Builders etc., Inc. v. City of Livermore*, 18 Cal. 3d 582, 591 (1976)); *accord, Brosnahan v. Brown*, 32 Cal. 3d 236, 241 (1986); *Mervynne v. Acker*, 189 Cal. App. 2d 558, 563-64 (1961).

The Ninth Circuit has likewise recognized that infringement of such First Amendment rights "even for minimal periods of time, ***unquestionably constitutes irreparable injury*** . . . ." *Sammartano v. First Judicial District Court*, 303 F.3d 959, 973 (9th Cir. 2002) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (internal quotations omitted, emphasis added).

Moreover, until the Referendum is submitted to a vote of the people, not only the *RSJOC* Plaintiffs and County Defendants, but *all of Monterey County and its citizens* will remain in legal limbo as to the effectiveness of the resolution that is being challenged here. *See* Elec. Code § 9145 ("If the board of supervisors does not entirely repeal the ordinance against which a petition is filed, the board shall submit the ordinance to the voters either at the next regularly scheduled county election occurring not less than 88 days after the date of the order, or at a special election called for that purpose not less than 88 days after the date of the order. The ordinance ***shall not become effective*** unless and until a majority of the voters voting on the ordinance vote in favor of it." (emphasis added)). Until the Referendum is submitted to a vote, the property owner proposing the development will not know the legal status of his development rights, an issue that is already the source of threatened and existing state court litigation.

It is therefore imperative — both in the interests of protecting the constitutional rights of the *RSJOC* Plaintiffs and the thousands of other supporters of the Referendum and, as a practical matter, in order to bring resolution to this important land use issue for all residents of Monterey County — that the Court issue an injunction ordering the Board of Supervisors either to repeal Resolution No. 05-305 in its entirety or to submit the resolution to a vote of the Monterey County electorate in the upcoming June 5, 2007, election.

31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Summary Judgment, remanding the *Melendez v. Board of Supervisors* action to the Monterey County Superior Court for the appropriate resolution of the state-law causes of action, denying the declaratory and injunctive relief requested by the *Rangel* plaintiffs, and issuing the declaratory and injunctive relief requested by the RSJOC plaintiffs ordering County Defendants either to repeal Resolution No. 05-305 in its entirety or to place the Referendum on the June 5, 2007, ballot for a vote of the Monterey County electorate.

DATE: February 7, 2007                    Respectfully submitted,

STRUMWASSER & WOOCHER LLP
Fredric D. Woocher
Michael J. Strumwasser
Bryce A. Gee


By     _____/s/_____
              Fredric D. Woocher

*Attorneys for Plaintiffs Melendez, et al. and Rancho San Juan Opposition Coalition, et al.*

32